IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PHYLLIS MICHELE HOWELL *on behalf of The North Highland Company Employee Stock Ownership and 401(k) Plan, and on behalf of a class of all other persons similarly situated*, et al., <br><br>    Plaintiffs, <br><br>                    v. <br><br>ARGENT TRUST COMPANY, *et al.*, <br><br>    Defendants. | Civil Action No. 1:22-cv-03959-SDG |

**OPINION AND ORDER**

This ERISA action is before the Court on Plaintiffs' motion to stay until 30 days after they have exhausted their administrative remedies [ECF 38]. For the following reasons, the motion is **DENIED**.

**I.    Background**

The origin of Plaintiffs' claims has a complicated history. For immediate purposes, the following well-pleaded facts alleged in the Complaint are relevant. Plaintiffs are all participants in The North Highland Company Employee Stock Ownership and 401(k) Plan (the Plan).[1] They assert claims on behalf of the Plan and other similarly situated Plan participants.[2]

---

1    ECF 1, ¶¶ 28–30.

2    *Id.* at 1–2.

Defendant Argent Trust Company was the discretionary trustee of the Plan during the relevant time period.[3] Also during that period, Defendants Dan Reardon, Alex Bombeck, Beth Schiavo, and Lauren Childers (collectively, the Individual Defendants) were officers or directors of North Highland Holding Company, Inc. (Oldco) or its successor.[4] The remaining Defendants are discussed below as they come into the picture.

At the beginning of 2016, the Plan owned 100% of Oldco's stock.[5] As an S-Corp owned by the Plan, Oldco enjoyed generous tax subsidies.[6] Plaintiffs assert that ERISA prohibits such S-Corps from diverting the benefits of those subsidies to their executives.[7] Defendants allegedly sought to avoid ERISA's constraints and capture the benefits of the subsidies for the Individual Defendants. Defendants

---

[3]  *Id.* ¶ 31.

[4]  *Id.* ¶¶ 50–53.

   While not entirely clear from the pleading, the correct name of the entity may be The North Highland Company, Inc., a Defendant. The North Highland Company LLC was the successor to The North Highland Company, Inc. *Id.* ¶¶ 37–39, 42–43. No entity named The North Highland Holding Company, Inc. is a party to this litigation.

[5]  *Id.* ¶ 2.

[6]  *Id.* ¶ 3.

[7]  *Id.*

purportedly did this through a reorganization transaction that diluted the Plan's economic interests.[8]

Plaintiffs allege that the Individual Defendants, with Argent's agreement, reorganized Oldco on October 1, 2016 (the importance of this date will become clear below).[9] Specifically, the Plan exchanged its shares of Oldco for shares in Defendant North Highland ESOP Holdings, Inc. (Newco).[10] At the same time, the Individual Defendants, again with Argent's agreement, allegedly created Defendant North Highland Holding Co., LLC (Holding LLC) and moved Oldco's operating assets into Holding LLC.[11] The Plan received units in Holding LLC.[12] The Individual Defendants were then able to convert "synthetic" equity into real equity in Holding LLC through the conversion of (1) options in Oldco into options in Holding LLC and (2) warrants and debt in Oldco into units of Holding LLC.[13] As a result, Plaintiffs contend the Plan went from owning 100% of the common

---

[8] *Id.* ¶ 4.

[9] *Id.* ¶ 6.

[10] *Id.*

[11] *Id.*

[12] *Id.*

Although the Complaint is not entirely consistent on this point, it appears that the Plan received units in Holding LLC through its ownership of shares in Newco. *See, e.g., id.* ¶¶ 8, 10.

[13] *Id.* ¶ 7.

stock of Oldco to indirectly owning 80% of the equity in Holding LLC.[14] The other 20% of Holding LLC was owned by the Individual Defendants and others.[15]

Plaintiffs allege that this scheme diluted the Plan's equity interests, diminished its control in the assets, and allowed the Individual Defendants (with Argent's "blessing") to further dilute the Plan's equity stake over time.[16] By the end of 2020, the Plan's ownership interest in Holding LLC had dropped to 42%.[17] Further, in 2021, Argent caused Newco to sell all of its interest in Holding LLC to Holding LLC itself. In exchange, the Plan received a cash payment and promissory note that matures in 2023.[18] Plaintiffs allege that the Plan did not receive fair market value for this transaction.[19]

Plaintiffs assert sixteen causes of action for violations of ERISA, including engaging in prohibited transactions and breaches of fiduciary duty.[20] Plaintiffs do not, however, plead that they exhausted their administrative remedies.[21] They

---

[14]  *Id.* ¶ 8.

[15]  *Id.* ¶¶ 8, 10.

[16]  *Id.* ¶ 8.

[17]  *Id.* ¶ 12.

[18]  *Id.* ¶ 14.

[19]  *Id.* ¶ 16.

[20]  *Id.* ¶¶ 133–367.

[21]  *See generally* ECF 1.

now move the Court to stay this action pending the completion of the administrative review of their claims.[22] Defendants oppose the motion.[23]

## II. Discussion

The only issue here is whether the Court should stay this case while Plaintiffs exhaust their administrative remedies.[24] Plaintiffs assert that a stay is required because the statute of limitations has expired on some of their claims. If the Court dismisses this action pending administrative exhaustion, they will not be able to replead those claims that are time-barred.[25] Plaintiffs initiated this action on September 30, 2022, the last possible day for them to assert claims related to the October 1, 2016 reorganization given the six-year limitations period.[26] Plaintiffs did not initiate administrative review of their claims until October 4, 2022.[27]

Defendants respond that the Eleventh Circuit requires exhaustion before a plaintiff may pursue an ERISA suit.[28] According to Defendants, Plaintiffs have failed to state a claim because they did not (and could not) plead exhaustion.[29]

---

[22] ECF 38.

[23] ECF 43.

[24] ECF 44, at 1.

[25] *See generally* ECF 38.

[26] ECF 38, at 2.

[27] *Id.* at 3.

[28] ECF 43-1, at 1–2.

[29] *Id.* at 2.

Defendants contend that Plaintiffs' own delay does not provide a sufficient basis to stay this case.[30] The Court agrees.

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (quoting *Counts v. Amer. Gen'l Life & Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997)); *see also Perrino v. So. Bell Tel. & Telegraph*, 209 F.3d 1309, 1315 (11th Cir. 2000) (same), *superseded by statute on other grounds as stated in Scott v. Cox Media Grp.*, No. 6:20-CV-1179-CEM-GJK, 2021 WL 3082892, at *2 (M.D. Fla. Mar. 31, 2021). The Court can excuse exhaustion when (1) resort to administrative remedies would be futile or the remedy inadequate; or, (2) the plaintiff has been denied meaningful access to the administrative review scheme. *Id.* (citation omitted); *Perrino*, 209 F.3d at 1316.

Plaintiffs do not argue that they meet either of these exceptions to exhaustion. The only explanations for their decision to wait until the last possible day to file their federal claims is that they did not have a copy of the Plan document and did not retain counsel until September 6, 2022.[31] Plaintiffs do not state, however, when or whether they even asked for a copy of the Plan. They have

---

[30] *Id.* at 8–11.

[31] *Id.* at 2–3.

provided no explanation for their delay in seeking administrative review.[32] Even in their reply brief, Plaintiffs provide no further justification for their inexplicable delay in seeking relief.[33]

Plaintiffs have not argued that pursuing administrative remedies would be futile. Nor would bare allegations of futility suffice in any event. *Bickley*, 461 F.3d at 1330 (rejecting speculative claim of futility where the plaintiff "did not even attempt to pursue the administrative procedure available" before filing suit); *Springer v. Wal-Mart Assocs.' Group Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990) (noting that "bare allegations of futility are no substitute for the 'clear and positive' showing of futility required before suspending the exhaustion requirement") (cleaned up) (citation omitted). Even when the putative defendants are the same ones who would be the decision-makers in the administrative process, the futility requirement is not met: "[T]he futility exception protects participants who are denied meaningful access to administrative procedures, not those whose claims would be heard by an interested party." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008); *Springer*, 908 F.2d at 901 ("If futility were established by the mere fact that the plan administrator who makes initial benefits decisions and the

---

32  *See generally* ECFs 38, 44.
33  ECF 44.

trustees who review appeals share common interests or affiliations, the exhaustion of internal administrative remedies would be excused in virtually every case.").

The cases on which Plaintiffs rely are not to the contrary. In *Moorer v. Demopolis Waterworks and Sewer Board*, the Court of Appeals concluded that the district court should have stayed rather than dismissed a case in which it abstained from exercising jurisdiction under the *Colorado River* doctrine because of a parallel state-court proceeding. 374 F.3d 994 (11th Cir. 2004) (per curiam). Some of the reasons cited in *Moorer* for staying a case instead of dismissing it are similar to the arguments Plaintiffs now make. *See, e.g., id.* at 998 ("A stay is preferred because it lessens the concerns associated with statute of limitations . . . ."). But *Colorado River* abstention is a narrow enough doctrine that *Moorer* is distinguishable on its facts. Moreover, well-developed binding case law in this Circuit requires exhaustion.

In *Lanfear v. Home Depot, Inc.*, even though the case had been initiated in the District Court for the Eastern District of New York (where there was no requirement for exhaustion before filing suit) and then transferred to the Northern District of Georgia, the Court of Appeals rejected the plaintiffs' contention that they should not have been required to exhaust. 536 F.3d at 1223–24. Ultimately, that court remanded to the district court to determine in the first instance whether the plaintiffs' federal case should have been stayed rather than dismissed so that they could pursue administrative remedies. *Id.* at 1225.

n

On remand, the district court stayed the proceedings:

> In part this is because the case originated in a federal court in the Eastern District of New York, where exhaustion of remedies is not required before filing an ERISA case. In part it is based on the Court's concern that the claims of at least some of the named Plaintiffs could be barred by the statute of limitations if the case is dismissed without prejudice with leave to refile.

Civ. A. No. 1:07-cv-197-ODE, 2009 WL 10668650, at *2 (N.D. Ga. Jan. 23, 2009). Plaintiffs here therefore argue that a "[s]tay pending exhaustion is necessary."[34] But that misconstrues the limited holding in *Lanfear*.

This Court does not read the decision on remand as holding that, whenever a plaintiff's claims may be barred if the federal case is dismissed pending exhaustion, then the case should be stayed. Such a reading would effectively excuse the exhaustion requirement in any case where a plaintiff unreasonably delayed in pursuing administrative remedies—contrary to the Eleventh Circuit's strict application of the exhaustion requirement in ERISA cases. *Perrino*, 209 F.3d at 1315 ("[W]e strictly enforce an exhaustion requirement on plaintiffs bringing ERISA claims in federal court with certain caveats reserved for exceptional circumstances.") (footnote omitted). Rather, the Court reads *Lanfear* as an exercise of the court's discretion to stay the case because barring the plaintiffs' claims when

---

[34] ECF 38, at 5.

they did not exhaust prior to filing suit *in a jurisdiction that does not require exhaustion* would have been inequitable under the circumstances. There is nothing inequitable about declining to stay *this* case simply because Plaintiffs inexplicably ran themselves up against the six-year limitations period.

### III. Conclusion

Plaintiffs' Motion to Stay [ECF 38] is **DENIED**. Within 7 days of this Order, the parties are **DIRECTED** to inform the Court whether this action should be dismissed without prejudice.

**SO ORDERED** this 21st day of September, 2023.

Steven D. Grimberg
United States District Court Judge