## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

**PHYLLIS MICHELE HOWELL, SIMON REISERT, and CAROLE SPEIGHT,** on behalf of The North Highland Company Employee Stock Ownership and 401(k) Plan, and on behalf of a class of all other persons similarly situated,

        **Plaintiffs,**

    **vs.**

**ARGENT TRUST COMPANY, NORTH HIGHLAND ESOP HOLDINGS, INC., NORTH HIGHLAND COMPANY, INC., THE NORTH HIGHLAND HOLDING CO., LLC, DAN REARDON, ALEX BOMBECK, BETH SCHIAVO, and LAUREN CHILDERS,**

**Defendants.**

Civil Action No. 1:22-cv-3959-SDG

**FIRST AMENDED**

**CLASS ACTION COMPLAINT**

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Phyllis Michele Howell, Simon Reisert, and Carole Speight ("Plaintiffs"), by their undersigned attorneys, on behalf of The North Highland

Company Employee Stock Ownership and 401(k) Plan (the "Plan" or the "ESOP"), and any successor trusts, and similarly situated participants in the Plan, and their beneficiaries, upon personal knowledge, the investigation of their counsel, their counsel's knowledge and experience in ESOPs and the practices of ESOP trustees and their advisors, including specifically the practices of Argent Trust Company ("Argent"), and upon information and belief as to all other matters, file this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1), and allege as follows against (1) Argent, the trustee for the Plan, (2) North Highland ESOP Holdings, Inc., (3) The North Highland Company, Inc.; (4) The North Highland Holding Co., LLC, (5) Dan Reardon, (6) Alex Bombeck, (7) Beth Schiavo and (8) Lauren Childers (hereafter the various North Highland entitles are collectively referred to as "North Highland" or "the North Highland Enterprise" and the defendants are collectively referred to as "Defendants") in this Complaint:

1.      Argent, Reardon, Bombeck, Shiavo, and Childers (the last four the "Individual Defendants"), evaded Internal Revenue Code ("IRC") caps on executive compensation, deprived the ESOP and its participants of corporate control, and diluted the equity interests of the ESOP and its participants while seizing the primary benefits of the massive tax subsidies provided by Congress for the benefit of the Individual Defendants at the expense of North Highland's employee-owners.

2.      At the beginning of 2016, the ESOP owned 100% of the stock of North Highland Holding Company, Inc. ("North Highland Oldco"). North Highland Oldco was an S Corp.

3.      ESOP-owned S Corps enjoy generous tax subsidies. Georgia-based ESOP-owned S Corps operate free of federal and state income tax, effectively increasing net income by 30% or more to encourage employee ownership. To ensure such taxpayer-financed companies operate primarily for the benefit of employee-owners, ERISA prohibits such S Corps from diverting the economic benefits of tax subsidies to executives by capping executive equity ownership, both actual and synthetic. *See generally* IRC § 409(p). These rules also apply to ESOP-owned LLCs. Rev. Rul. 2004-4, 26 CFR 1.409(p)-1T.

4.      The Defendants sought to avoid the constraints of IRC 409(p) and divert the generous tax subsidies from the employee-owners to the Individual Defendants by creating a shell S Corp intermediary between the ESOP and the operating company, a newly-created LLC. By awarding equity in the underlying LLC, in which the ESOP had no direct ownership, to the Individual Defendants, Argent, who was supposed to act solely in the interests of the ESOP and the employee-owners, and the Individual Defendants diluted the economic interests of the ESOP and diverted the massive taxpayer subsidies from benefiting the employee-owners.

5.    Argent also ceded material control over the enterprise by allowing the operations to drop down into the LLC and caused a prohibited transaction when the ESOP's shares in North Highland Oldco were converted into shares of a new holding company, an affiliated employer, which in turn acquired units in the LLC, also an affiliated employer.

6.    On and around October 1, 2016, the Individual Defendants, with Argent's agreement, recapitalized and reorganized North Highland Oldco (the "Recapitalization"). Under the Recapitalization, the ESOP exchanged all shares in the North Highland Oldco for approximately 4.8 million shares of North Highland ESOP Holdings, Inc., a newly formed S-Corporation ("North Highland Newco"). Simultaneously, the Individual Defendants, with Argent's agreement, created a new LLC, North Highland Holding Co., LLC ("North Highland LLC") to hold substantially all the operating assets of the company and the ESOP received units in the LCC.

7.    At the same time, all 3.1 million issued and outstanding options of North Highland Oldco converted into options exercisable into Class A-1 units of North Highland LLC. Of those converted options, approximately 1.2 million were exercised or forfeited on the Recapitalization date, resulting in the issuance of approximately 500,000 A-1 units to persons other than the ESOP. Additionally, certain warrants and debt in North Highland Oldco were converted to approximately

400,000 units of North Highland LLC. The holders of the options and warrants included Individual Defendants, who converted synthetic equity to real equity in the Recapitalization, conferring greater economic value and control rights on them.

8.    As a result of the Recapitalization, the ESOP went from owning 100% of the common stock of North Highland Oldco on September 30, 2016, to owning 80% of the equity in North Highland LLC indirectly via a shell S Corp, North Highland Newco, a few days later. The remaining 20% in North Highland LLC was owned by the Individual Defendants and others. The ESOP was not compensated for this dilution of its equity interests and its diminished control. The Trustee did not commission a fair market value analysis of the Recapitalization to ensure the ESOP received no less than fair market value for its stock in North Highland Oldco.

9.    Further, the Defendants did not allow ESOP participants to vote on the Recapitalization, which was required under section 13.1 of the ESOP plan document. In this way, Defendants breached their fiduciary duties to the ESOP and its participants by failing to follow the terms of the plan document.

10.    The Recapitalization also allowed the employer to evade its redemption obligations by essentially transferring that liability to the ESOP. Under ordinary circumstances, the employer is responsible for redeeming stock tendered by plan participants who have ceased employment. North Highland Newco had no assets other than units in North Highland LLC and it had no cash flow. It had no cash flow

because the managers of North Highland LLC never authorized distributions to the unit holders except for tax distributions to North Highland LLC members who were executives and board members. So, when participants in the ESOP redeemed shares the Board of Directors for North Highland Newco, who were also the board of managers for North Highland LLC, caused North Highland Newco to sell units in North Highland LLC to finance the redemption obligation.

11.     There is no plausible business reason to undertake this kind of corporate Recapitalization other than to allow company executives to receive more equity than permissible under IRC § 409(p). And that's exactly what happened. The ESOP went from owning 100% of the equity to only 42.3% as of the Redemption Transaction. Executives and directors went from owning zero percent of the equity to 57.7 percent over four years.

12.     Because the ESOP did not own North Highland LLC directly, owning shares in North Highland Newco, whose only assets were A-1 units in North Highland LLC, the Individual Defendants, with Argent's blessing, set about diluting the ESOP's equity stake further under the fiction that 409(p) caps on executive ownership of equity in ESOP-owned S Corps did not apply because the equity flowing to the Individual Defendants came from North Highland LLC, not the S Corp owned by the ESOP.

13.    By December 31, 2019, the ESOP's ownership had been diluted to 50%.

14.    By December 31, 2020, the ESOP's ownership had been diluted to 42%.

15.    The ESOP was not compensated for the dilution of its equity stake. From 2016 to 2021, the Individual Defendants and Argent caused North Highland LLC to award the Individual Defendants and others equity in the LLC, effectively transferring 58% of North Highland from the ESOP to the Individual Defendants and others. The ESOP was not compensated for this massive transfer of equity to parties in interest.

16.    On March 31, 2021, Argent caused North Highland Newco to sell all its units of North Highland LLC to North Highland LLC (the "Redemption Transaction"). The ESOP received $15,000,000 in cash and a promissory note for $19,172,000 that matures in 2023 or earlier (the "Redemption Note"). North Highland Newco's Board, which included some of the Individual Defendants, authorized the Redemption Transaction in anticipation of terminating the ESOP. Argent approved the Redemption.

17.    On April 1, 2021, North Highland Newco's Board directed Argent, the ESOP Trustee, to fully discharge the ESOP loan payable by transferring to the New

S-Corp unallocated ESOP shares with a value equal to the outstanding balance on the existing ESOP loan.

18.    Argent, who was supposed to act solely in the interests of the ESOP and its participants, agreed to dilute the ESOP's equity for the benefit of the Individual Defendants and caused the ESOP to sell its stock at less than fair market value.

19.    This lawsuit seeks to recover for the ESOP and its participants, current and former employees of North Highland, the ESOP's losses. Among other things, Plaintiffs seek recovery of the difference between what the ESOP received in the Redemption Transaction and what the ESOP would have received but for the improper dilution of its equity stake in the preceding years, that is the difference between $34,171,535 (what the ESOP received in cash and a promissory note) and the fair market value of 100% of the equity, which was no less $72,208,248—a difference of at least $38 million.

20.    Defendants at all pertinent times owed to the ESOP and its participants fiduciary obligations as set forth in ERISA. These obligations are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982); *see also George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 852 (N.D. Ill. 2011). As Justice Cardozo explained,

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held

> to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.

*Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928). Among the duties required of fiduciaries is the duty of loyalty to plan participants and beneficiaries. This duty requires that the fiduciary's decisions "must be made with an eye single to the interest of the participants and beneficiaries." *Donovan*, 680 F.2d at 271 (*citing, among other authorities*, Restatement (Second) of Trusts § 170 (1959)).

21.    Plaintiffs are participants in the ESOP, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who held vested shares of North Highland in their accounts in the ESOP on or after October 1, 2016.

22.    Plaintiffs exhausted the Plan's administrative review process with respect to the claims raised in this Complaint. After unilaterally deciding to delay their response by 90 days, on May 8, 2023, the ESOP Committee, the entity designated by the ESOP plan document to decide claims, denied Plaintiffs' administrative claim. Ex. 1. Plaintiffs appealed the claim denial and on September 5, 2023, Defendant ESOP Committee issued their decision denying Plaintiffs' appeal under the Plan's administrative review process and, thereby, exhausting the administrative review process. See Ex. 1 at 10 ("This decision marks the conclusion of the Plan's claims procedures.").

23.    The ESOP Committee was hopelessly conflicted. First, its members serve at the pleasure of the North Highland Newco board of directors, several of whom are defendants in this lawsuit. It strains credulity that employees would have the fortitude to hold senior executives and board members liable. The ESOP Committee's counsel, Groom Law Group, was also conflicted. Argent is the Trustee defendant in this lawsuit. Groom advised the ESOP Committee on Plaintiffs' claims, which rest primarily on finding Argent liable for various violations of ERISA. But Groom also represents Argent in several pending lawsuits, including *Cedeno v. Argent Trust Co*., No. 20-9987 (S.D.N.Y.); *Lloyd v. Argent Trust Co*., No. 22-4129 (S.D.N.Y.); *Robertson v. Argent Trust Co*., No. 21-1711 (D.Az.); *Harrison v. Envision Mgtm. Holdings, Inc. Board of Directors et al*, No. 21-304 (D. Co*.); Bowers v. Russell, et al*., No. 22-10457 (D. Mass.); and *Hernandez v. Argent Trust Co*., No. 22-48 (S.D.N.Y.).  Groom also represents the North Highland Defendants in this litigation despite providing legal advice to the ESOP Committee about Plaintiffs' administrative claim. Groom, then, was conflicted in its representation of the ESOP Committee. Groom couldn't possibly serve as unconflicted counsel to the ESOP Committee when it assessed Argent's liability because Groom represented Argent in several similar ESOP lawsuits at the same time, nor could it provide unconflicted counsel to the ESOP Committee when it assessed the North Highland entities' liability for the ESOP Committee during the administrative appeal.

24.     Although Defendants insist in the administrative denials that Plaintiffs' next step is to initiate arbitration, the Plan's arbitration agreement is not enforceable with respect to Plaintiffs' claims and statutory right to relief. In particular, the Plan includes a "Class Action Waiver" which prohibits any recovery "which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, Participant or Beneficiary other than the Claimant."

25.     However, Plaintiffs have a statutory right to seek, and do seek, relief on behalf of the Plan as provided in 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable relief as the Court may deem appropriate.

26.     Plaintiffs also seek additional remedies permissible under ERISA which would have the effect of providing additional benefits or monetary or other relief to the Plan and other North Highland employees, Participants and Beneficiaries.

27.     Because the purported prospective waiver of these statutory rights renders the Class Action Waiver unenforceable, and because the Plan specifies that the Class Action Waiver is not severable from the Arbitration Procedure, the Arbitration Procedure is void.

28.     This action is brought under Sections 404, 405, 406, 409, and 502(a) of ERISA, 29 U.S.C. §§ 1104, 1105, 1106, 1109, and 1132(a), for losses suffered by

the ESOP and for restoration to the ESOP of improper profits received by the ESOP's fiduciaries and parties in interest to the detriment of the ESOP's participants and beneficiaries and in violation of ERISA.

## JURISDICTION AND VENUE

29.    This action arises under Title I of ERISA, 29 U.S.C. §§ 1001–1191c, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to require the Defendants to make good to the Plan losses resulting from their violations of ERISA, to restore to the Plan any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

30.    This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

31.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District in Atlanta, Georgia, some of or all the breaches and violations giving rise to the claims occurred in this District, and the Plan's trustee, Defendant Argent, is found in this District.

## **PARTIES**

32.     Plaintiff Phyllis Michele Howell is and was a participant, as defined in 29 U.S.C. § 1002(7), in the Plan at all relevant times. Plaintiff Howell resides in Clemmons, North Carolina. She was vested in her account in the Plan. She was previously employed as an Administrative Assistant. She was employed by the North Highland Enterprise from 2011 to 2018.

33.     Plaintiff Simon Reisert is and was a participant, as defined in 29 U.S.C. § 1002(7), in the Plan at all relevant times. Plaintiff Reisert resides in Los Angeles, California. He was vested in his account in the Plan. He was previously employed as a Manager and Principal and Client Lead. He was employed by the North Highland Enterprise from 2011 to 2018.

34.     Plaintiff Carole Speight is and was a participant, as defined in 29 U.S.C. § 1002(7), in the Plan at all relevant times. Plaintiff Speight resides in Tampa, Florida. She was vested in her account in the Plan. She was previously employed as an Administrative Receptionist. She was employed by the North Highland Enterprise from 2008 to 2019.

35.    Argent Trust Company[1] was the discretionary trustee to the ESOP. It represented the ESOP in the Recapitalization and Redemption and had a duty to ensure the ESOP's equity was not diluted.

36.    Argent was granted, *inter alia*, a variety of powers including (i) to make payments from the ESOP Trust to participants as directed; (ii) to begin, maintain, or defend any litigation necessary in connection with the investment, reinvestment, and the holding of the assets of the ESOP Trust and the administration of the ESOP Trust; (iii) to provide written reports to the North Highland ESOP Committee (the "Committee") concerning the ESOP Trust's financial records and net worth of the ESOP Trust; (iv) to retain agents, attorneys, actuaries, accountants, appraisers, valuation firms, and independent financial advisors for any purpose, (v) to invest in North Highland, and to select an independent appraiser to assist the trustee in determining the fair market value of the ESOP's investment in North Highland; (vi) to attend shareholder meetings of North Highland and act as the shareholder of record for the benefit of the ESOP; and (vii) to perform any and all other acts in its judgment that are considered necessary and appropriate for the ESOP.

---

[1] In 2014 Argent Trust Company acquired the fiduciary services line of business from Reliance Trust. Prior to that acquisition, North Highland utilized the predecessor, Reliance Trust, as the ESOP's discretionary trustee.

37.    Argent also assumed fiduciary responsibility for determining whether the terms and conditions of the Recapitalization and Redemption were prudent under ERISA and fair to the Plan from a financial point of view.

38.    Because of these responsibilities and its position as trustee of the ESOP, Argent was at all relevant times a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because it was the ESOP's "discretionary trustee" within the meaning of 29 U.S.C. § 1103(a) and because it exercised discretionary authority or discretionary control respecting management of the ESOP, and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

39.    Argent was required to discharge its duties solely in the interests of Plan participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying the reasonable expenses of administering the ESOP Trust. Argent was also required to discharge its duties with the care, skill prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims. Argent was also required to discharge its duties in accordance with the documents and instruments governing the ESOP Trust and the Plan insofar as those documents and instruments

are consistent with the provisions of ERISA. Argent was also required to not cause the Trust to engage in any prohibited transaction prohibited by either the ESOP Trust Agreement, ERISA, or the Code.

40.    Argent was at all relevant times a party in interest to the Plan under 29 U.S.C. § 1002(14)(A).

41.    Argent is located at 1100 Abernathy Rd, 500 Northpark, Suite 550, Atlanta, GA 30328.

42.    North Highland Oldco was sponsor of the Plan under 29 U.S.C. § 1002(16)(B) until October 1, 2016.

43.    North Highland Oldco was also the "named fiduciary" and "plan administrator" as those terms are defined in 29 U.S.C. § 1102(a) and 29 U.S.C. § 1002(16)(A), respectively.

44.    North Highland Oldco was a party in interest to the Plan under 29 U.S.C. § 1002(14)(A) and (C).

45.    North Highland Oldco was located at 3333 Piedmont Road, NE, Suite 1000, Atlanta, Georgia 30305.

46.    North Highland Oldco as a corporate entity, could act on its own without any human counterpart. In this regard, North Highland Oldco acted through its Board of Directors.

47.    North Highland Newco was the "named fiduciary" and "plan administrator" as those terms are defined in 29 U.S.C. § 1102(a) and 29 U.S.C. § 1002(16)(A), respectively after September 30, 2016.

48.    North Highland Newco was at all relevant times a party in interest to the Plan under 29 U.S.C. § 1002(14)(A) and (C).

49.    North Highland Newco was a party to the Recapitalization transactions where it provided for the ESOP to purchase its shares using the proceeds of a loan payable to it. During the 2016 Recapitalization, North Highland Newco recapitalized, causing the Plan to exchange all its shares for units of North Highland LLC.

50.    North Highland Newco is located at 3333 Piedmont Road, NE, Suite 1000, Atlanta, Georgia 30305.

51.    North Highland LLC was at all relevant times a party in interest to the Plan under 29 U.S.C. § 1002(14)(A) and (C) because its employees participated in the Plan.

52.    North Highland LLC is located at 3333 Piedmont Road, NE, Suite 1000, Atlanta, Georgia 30305.

53.    The Plan's Form 5500s filed with the United States Department of Labor state the Plan's assets are invested in North Highland Newco stock which in turns owns units in North Highland LLC.

54.    The North Highland entities acted though their Boards of Directors or equivalent governing body.

55.    Defendant Dan Reardon joined North Highland in 1997 and served as CEO from 2005 to 2021, when he transitioned into being North Highland's Executive Chair. He has been a member of the Board of Directors for the entire relevant period and served as Chairman of the Board of Directors of North Highland ESOP Holdings Inc. and Manager of The North Highland Holding Company, LLC.

56.    In his capacity as CEO of North Highland ESOP Holdings, Inc., Reardon executed the agreement transferring sponsorship of the Plan to North Highland ESOP Holdings Inc. as part of the 2016 Transaction.

57.    Defendant Reardon was also the sole executor of the North Highland Holding Company LLC Limited Liability Company Agreement, dated as of September 30, 2016, and the Employee Transfer Agreement dated September 29, 2016, among other documents related to the 2016 Transaction.

58.    In his capacity as Manager of The North Highland Holding Company, LLC, Reardon authorized and approved the issuance of new units of the LLC, including the ESOP's conversion of units.

59.    Defendant Reardon engaged Argent to serve as Trustee of the ESOP component of the Plan and Trust in connection with the termination of the ESOP component of the Plan and to identified members of Management.

60.     Defendant Rearson executed the documents necessary to undertake the Transactions at issue in this lawsuit.

61.     Alex Bombeck was named CEO of North Highland in 2021 and moved into that role on January 1, 2022. In addition, Bombeck has been a member of the Board of Directors of North Highland since May, 2018.

62.     Beth Schiavo joined North Highland in January, 2016 as Chief Financial Officer (CFO). She was responsible for overseeing the ESOP.

63.     Lauren Childers became Managing Director and replaced Schiavo as CFO at North Highland in 2018. She was responsible for overseeing the ESOP. She continues to serve in that role.

64.     Childers was primarily responsible for the preparation of the projections provided to Argent and their consultant, Stout Risius Ross, for ESOP valuation purposes and for purposes of Stout Risius Ross' "Analysis of Transaction Fairness" provided to Argent. Defendant Reardon also provided input and oversight with respect to those projections and the ESOP Valuation.

65.     Upon information and believe, the Individual Defendants exercised discretion and control over plan assets through the transactions outlined in this Complaint and through their efforts and role in undermining the value and valuation of the ESOP's assets.

66.    As such, during the Class Period, the Committee Defendants were/are fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A)(i) because they (1) exercised discretionary authority or discretionary control respecting management of the Plan and (2) exercised authority or control respecting management or disposition of its assets.

## FACTUAL ALLEGATIONS

### North Highland's Employee Stock Ownership Plan

67.    At all times relevant to this Complaint, the ESOP was sponsored by one of the various North Highland entities.

68.    While ESOP sponsorship has changed in name, at all relevant times herein, control of the ESOP was vested in the Board of the Directors of North Highland ESOP Holdings, Inc.

69.    At all relevant times, the ESOP was administered at 3333 Piedmont Road, NE, Suite 1000, Atlanta, Georgia 30305.

70.    The Plan was intended to be an employee stock ownership plan, or ESOP, under 29 U.S.C. § 1107(d)(6) that was intended to meet the requirements of Sections 401(a) and 4975(e)(7) of the Code and related regulations. Specifically, the Plan is an "individual account plan" or "defined contribution plan" within the

meaning of 29 U.S.C. § 1002(34) and an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2).

71.    Under the Plan's eligibility requirements nearly all employees of the North Highland Enterprise, with limited exceptions, were eligible to be participants in the Plan.

72.    The ESOP was formed in 1997 to serve as a purchaser of shares the founders of North Highland wished to sell.

73.    Over time, the ESOP's ownership interest in North Highland grew as the founders and others wished to sell additional shares to the ESOP.

74.    In December 2007, the ESOP became the sole shareholder and The North Highland Company, Inc. was converted from a C to an S corporation.  At that time, the last 45% ownership interest was sold to the ESOP for approximately $30 million and the ESOP became the sole shareholder of North Highland Oldco.

75.    Forming the ESOP, and the transactions that followed, allowed North Highland, and its founders and other shareholders, to receive annual tax benefits exceeding $6 million per year.

76.    In December 2007, when the ESOP became the 100% owner of North Highland, the value of North Highland exceeded $66 million, and as of December 31, 2015, North Highland was valued at $69,726,915.

77.    In January 2016, North Highland hired Beth Schiavo as Chief Financial Officer ("CFO"). Schiavo was placed in charge of the ESOP despite little or no training with ESOPs. At the time, North Highland had annual revenue of approximately $350 million.

78.    In 2018, Lauren Childers replaced Schiavo as CFO and likewise was tasked with, among other things, overseeing the ESOP.

79.    After the 2016 Recapitalization, units of North Highland LLC were given to various executives, including Individual Defendants, of North Highland. As a result, the Company's financial success, heavily subsidized by taxpayers, inured largely to the benefit of North Highland executives, including Individual Defendants, and the value of the ESOP's equity stake declined over time.

80.    As of December 31, 2016, the ESOP's value had been reduced to $68,083,884.

81.    At the end of 2017, the ESOP's value had been reduced to $59,882,995.

82.    At the end of 2018, the ESOP's value was reduced again, now to $36,987,597.

83.    At the end of 2019, the ESOP's value was reduced again, now to $32,710,978.

84.    At the end of 2020, the ESOP's value was reduced again, this time to $32,293,647.

85.    Between October 1, 2016 and December 31, 2020, the per-share value of the North Highland Newco stock, the ESOP's only asset, dropped from $14.65 to $14.40, while the value of the North Highland LLC units doubled.

86.    The North Highland Newco stock, and North Highland LLC units, are not, and were not at any time, readily tradable on an established securities market.

## Valuation of Stock Held by the Plan

87.    Defendants engaged an outside entity to perform valuations for the stock held by the ESOP.

88.    The ESOP's fiduciaries were required to provide all information relating to North Highland valuation necessary for purposes of providing an estimate of value and in providing the estimate, and the valuation firm would rely, without any independent verification on the accuracy, completeness, and fairness of all information furnished by the fiduciaries without any independent appraisals.

89.    As of December 31, 2016, North Highland Newco stock was valued at $14.66 per share.

90.    As of the Redemption in 2021, North Highland LLC units were valued at $18.55 per unit.

## The 2016 Recapitalization

91.    In 2016, Defendants began planning the Recapitalization that would allow the Individual Defendants and others to convert synthetic equity to millions of

dollars in real equity at the expense of the ESOP. Immediately before the Recapitalization, the ESOP owned 100% of the stock in North Highland Oldco. Soon after, it owned 80% of the equity via a shell S Corp—North Highland Newco. As part of the Recapitalization, the ESOP lost operational control of North Highland because it had no direct stake in North Highland LLC. Among other things, this allowed the Individual Defendants to award themselves millions of dollars in units in North Highland LLC that would not have been permitted under IRC § 409(p) had the ESOP owned the LLC directly – materially diluting the ESOP's equity stake in the enterprise. Indeed, through this scheme substantially all the economic benefits from generous taxpayer subsidies flowed to the Individual Defendants and others, instead of the ESOP and North Highland employees.

92.     Although Chartwell, the advisor retained by North Highland Oldco's board of directors to review options leading up to the 2016 Recapitalization, recognized that other alternatives would be better for shareholders (meaning the ESOP), they instead recommended the 2016 Recapitalization specifically to grant the Board a continuous power to "actively control[]" the dilution of the ESOP's ownership interest every year.

93.     Another stated reason for the recommendation was to minimize tax consequences for executives, including the individual defendants.

94.    Argent did not commission its own fair market value or fairness analysis. Instead, Argent relied on a fairness opinion prepared by Chartwell which was working for the counter-parties to the ESOP, the board and company executives, in the Recapitalization. Even Chartwell recognized that the purpose of the Recapitalization was to provide meaningful equity stakes to executives and board members and that there were conflicts of interest where the executives and board members were undertaking a stratagem to increase their equity at the expense of the ESOP. Argent should have recognized these conflicts and the projected dilution of the ESOP and commissioned an independent analysis of the Recapitalization. Instead, it went along with the Recapitalization without undertaking any meaningful diligence or analysis.

95.    The ESOP Participants were not given the opportunity to vote on the Recapitalization.

96.    Section 13.1 of the Plan Document required that Participants and Beneficiaries be given the right to direct the Trustee as to the manner in which to vote their shares with respect to the approval or disapproval of any recapitalization or similar transaction.

**Loss of Value Since 2016**

97.    The ESOP had a "Loss of Value Since 2016" as a deliberate consequence of the 2016 Recapitalization.

98.     Any award of LLC Units, and distributions made to Unit holders, lowered the ESOP's equity value by diverting monies that should have flowed to the employee-owners to the Individual Defendants and others.

99.     As fiduciaries to the ESOP, Argent had a duty to protect the ESOP from such losses and management self-enrichment. They did not.

100.    Reardon, Bombeck, Schiavo and Childers benefitted from the award of units of North Highland, LLC at the direct expense of the ESOP.

101.    The Individual Defendants benefited at the expense of the ESOP by acquiring units of North Highland LLC and dividends thereon that materially diluted the ESOP's equity interest.

102.    The Individual Defendants used the discretion vested in them as senior executives to award themselves units in North Highland LLC. This gave them functional control and discretion over ESOP assets.

103.    It would have been obvious to prudent and non-conflicted fiduciaries that the value of the ESOP's investment in North Highland was being diluted.

104.    Thus, Defendants failed to protect the ESOP from the Loss of Value from 2016 to the present.

105.    Defendants failed to protect the ESOP by having prudent and loyal fiduciaries appointed.

106.   Defendants failed to file suit in their fiduciary capacity representing the ESOP's shareholder rights in North Highland Newco and North Highland LLC. Wary of biting the hands that feed it, Argent allowed the massive diversion of equity value to the Individual Defendants. And the Individual Defendants, knowing Argent served as trustee for the ESOP at their pleasure, abused their positions of authority to enrich themselves at the expense of the ESOP. A prudent and loyal fiduciary to the ESOP in similar circumstances would have brought one or more derivative actions to remedy the failures as outlined above and would not have concluded that such derivative actions were likely to harm North Highland, the ESOP, or any other relevant entity. Such derivative actions would have been successful, as demonstrated by the allegations herein. Such derivative actions would have recovered the substantial losses to the ESOP's trust caused by the allegations described above.

### The 2021 ESOP Redemption

107.   After rewarding the Individual Defendants with units of the LLC and diluting the ESOP's equity stake from 100% to 42%, the Individual Defendants, with Argent's blessing, completed their takeover of North Highland.

108.   On March 31, 2021, North Highland Newco sold all its units of North Highland LLC to North Highland LLC (the "Redemption"). The ESOP received $15,000,000 in cash and a promissory note for $19,172,000 that matures in 2023 or

earlier (the "Redemption Note"). The S Corp Board authorized the Redemption in anticipation of terminating the ESOP.

109.   On April 1, 2021, North Highland Newco's Board directed Argent to fully discharge the ESOP loan payable by transferring from the ESOP to North Highland Newco unallocated stock in the company equaling the value of the outstanding balance on the existing ESOP loan.

110.   As the trustee for and fiduciary to the ESOP, it was Argent's duty to ensure any transactions between the ESOP and North Highland entities were fair and reasonable, for the exclusive benefit of the ESOP's participants and beneficiaries, consistent with ERISA's fiduciary duties, that the ESOP would receive no less than fair market value for the stock, and that no prohibited transaction would occur involving ESOP assets.

111.   When valuing the ESOP's equity stake in North Highland, Argent and its advisors failed to determine the fair market value of the ESOP's equity in good faith, causing the ESOP to receive less than fair market value for its equity. d Argent failed to account for the fact that the ESOP's equity stake would have been much higher but for the massive equity dilution that it had allowed the Individual Defendants to pursue over the preceding years. Indeed, had the ESOP not been diluted it would have owned all the equity and commanded a control premium at sale without any discount for lack of marketability, which discount was applied here.

## ERISA'S FIDUCIARY STANDARDS AND PROHIBITED

## TRANSACTIONS

### Fiduciary Status under ERISA

112.   Congress enacted ERISA to establish "minimum standards ... assuring the equitable character of [benefit] plans and their financial soundness." 29 U.S.C. § 1001(a). ERISA requires that "authority to control and manage the operation and administration of the plan" be vested in one or more named fiduciaries, and that these fiduciaries abide by "standards of conduct, responsibility, and obligation" to protect the plan's participants and beneficiaries. *Id*. §§ 1001(b), 1102(a).

113.   ERISA defines fiduciary status as not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets. *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Pursuant to ERISA, 29 U.S.C. § 1002(21)(A), a person is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation ..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A) thus "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and

authority over the plan, *see id.,* thus expanding the universe of persons subject to fiduciary duties." *Mertens,* 508 U.S. at 262, 113 S.Ct. 2063; *see also, Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1087 (N.D. Ill. 2004).

114.   A person, thus, assumes fiduciary status in three ways under ERISA: first, as a named fiduciary in the instrument establishing the employee benefit plan, ERISA §§ 402(a)(1)–(2), 29 U.S.C. §§ 1102(a)(1)–(2); second, by becoming a named fiduciary pursuant to a procedure specified in the plan instrument, ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2); third, as a "functional fiduciary" under the broad authority, control, or advice provisions of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). *Perez v. Bruister*, 823 F.3d 250, 259 (5th Cir. 2016), *citing Jordan v. Fed. Express* Corp., 116 F.3d 1005, 1014 n. 16 (3rd Cir.1997). As such, an individual may be a fiduciary as to plan functions for which the plan affords him no discretionary authority if he nonetheless exercises discretion over plan assets and specifically is the "final decision-making authority regarding the Plan." *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 473 (S.D.N.Y. 2005).

115.   Employers assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA. *Amato v. Western Union Int'l, Inc*., 773 F.2d 1402, 1416–17 (2d Cir.1985). Employers who also function as plan administrators and therefore manage, administer, and dispose of ERISA plan assets must separate their ERISA

fiduciary "hat" where they act with the discretion recognized in ERISA 29 U.S.C. § 1002(21)(A) from their employer "hat" which encompasses traditional corporate business decisions. *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000) ("ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions.")(citations omitted).

116.    Fiduciary acts, for example, include the management and administration of the plan, the management and disposition of plan assets, the dispensation of investment advice, and making benefits determinations, but do not encompass actions that involve the termination of an employer-employee relationship. *Varity Corp. v. Howe*, 516 U.S. 489, 505, 116 S. Ct. 1065, 1074, 134 L. Ed. 2d 130 (1996) (making intentional representations about the future of plan benefits in that context is an act of plan administration that is subject to ERISA fiduciary duties); *see Sutton v. BellSouth Telecommunications, Inc.*, 189 F.3d 1318, 1321 (11th Cir. 1999) (holding that corporate managerial decisions, including a termination decision, is not governed by ERISA because they do not involve discretionary acts regarding plan administration).

117.    When a corporate officer or director of an ESOP-owned company uses the power and discretion vested in them to award themselves compensation that dilutes the ESOP's equity, they function a fiduciary to the plan.

### ESOP Fiduciaries

118.    In the context of ESOP transactions, members of an employer's board of directors are subject to ERISA fiduciary duties to the extent they have responsibility over the ESOP and over the management or disposition of its assets. *See Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 920–21 (D. Haw. 2019). This has specifically been the DOL's position with respect to directors and controlling shareholders who sit on the board or effectively control the company's ESOP that is the subject of an ESOP transaction breach of fiduciary duty claim. *See id; see also, Acosta v. Reliance Tr. Co.,* No. 17-CV-4540, 2019 WL 3766379, at *9 (D. Minn. Aug. 9, 2019*). ("DOL alleges that, because the Directors 'orchestrated' the final ESOP transaction prior to their appointment of Reliance, and because the Directors knew the ESOP was paying Kuban 'vastly more than fair market value' as part of that transaction, the Directors 'effectively controlled' the ESOP's purchase of Kuban's stock, and thus breached the duties of prudence and loyalty they owed the ESOP as fiduciaries'''); *see also* 29 C.F.R. § 2509.75-8(D-4) ("Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in [29 U.S.C. § 1002(21)(A) ].").

119.    Where board members exercise de facto control over the plan assets, because they dictated on what terms the ESOP transaction will proceed they are fiduciaries with respect to that transaction under the meaning of 29 U.S.C. §

1002(21)(A). *Keach v. U.S. Tr. Co*., 234 F. Supp. 2d 872, 883 (C.D. Ill. 2002) (the test of functional fiduciary status is not simplistic or rooted in formal authority with respect to company board members and must be "flexible enough to take cognizance of the different dynamics in which these transactions can occur"). *See also, Rankin v. Rots,* 278 F. Supp. 2d 853, 872 (E.D. Mich. 2003) ("Because of Conaway's and the Board of Directors' broad authority in regards to the Plan, they simply cannot be dismissed at this time. Rankin has sufficiently alleged Conaway and the Outside Director's fiduciary status").

120.   While the corporate acts of corporate management are not subject to ERISA's fiduciary standards under the "two hat" doctrine, if the alleged misconduct centers on the failure of fiduciaries to take action to protect Plan assets by responding to managerial malfeasance that depleted an ESOP of its value, the misconduct is subject to ERISA's statutory scheme. *Spires v. Sch*., 271 F. Supp. 3d 795, 802–03 (D.S.C. 2017) ("Mismanagement or malfeasance by the executives of an operating company is not in itself a breach of fiduciary duty under ERISA. But in this case, the alleged managerial malfeasance is not the alleged breach of fiduciary duty. The alleged breach of fiduciary duty is the failure of the Plan fiduciaries to take action to protect Plan assets by responding to managerial malfeasance that depleted the Plan assets of most of their value").

**ERISA Fiduciary Duties**

121.    ERISA imposes strict fiduciary duties upon the Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a), states, in relevant part, that:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(A) for the exclusive purpose of

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

…

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

122.    The fiduciary duties under 29 U.S.C. § 1104(a)(1)(A), (B), and (D) are referred to as the duty of loyalty, the duty of prudence, and the duty to follow the plan document and they are the "highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

## Duty of Loyalty

123.    Under 29 U.S.C. § 1103(c)(1), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan

and their beneficiaries and defraying reasonable expenses of administering the plan. This is known as the exclusive purpose rule.

124.   According to the DOL, the "primary responsibility of fiduciaries is to run the plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits and paying plan expenses" (emphasis added). In addition, ERISA fiduciaries "must avoid conflicts of interest" and "may not engage in transactions on behalf of the plan that benefit parties related to the plan, such as other fiduciaries, services providers or the plan sponsor." Thus, the duty of loyalty prohibits fiduciaries from acting in service of their own interests or those of a third party to the detriment of plan participants. Where fiduciaries have conflicting interests that raise questions regarding their loyalty, the fiduciaries "are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Kanawi v. Bechtel*, No. 09-16253 (9th Cir. 2009) (DOL Amicus Brief).

125.   To satisfy 29 U.S.C. § 1104 "when facilitating a transaction involving the sale of plan assets, the fiduciary must conduct an 'adequate inquiry into the proper valuation of shares.'" *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at *6 (C.D. Cal. July 9, 2018) (*citing Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678–79 (7th Cir. 2016)).

126.   Also, in the context of an ESOP transaction, the duty of loyalty "requires that fiduciaries keep the interests of beneficiaries foremost in their minds, taking all steps necessary to prevent conflicting interests from entering into the decision-making process." *Bruister*, 823 F.3d at 261 (5th Cir. 2016), *citing Bussian v. RJR Nabisco, Inc.,* 223 F.3d 286, 298 (5th Cir.2000).

### Duty of Prudence

127.   ERISA "'imposes a "prudent person" standard by which to measure fiduciaries' investment decisions and disposition of assets.'" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 134 S. Ct. 2459, 2467 (2014) (citation omitted). This means that ERISA fiduciaries must discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).

128.   The duty of an ERISA trustee to behave prudently in managing the trust's assets, which in this case consisted of the assets of the ESOP, is fundamental. *Pledger v. Reliance Trust Co.*, 240 F.Supp.3d 1314, 1321 (N.D. Ga. 2017).

129.   The duties charged to an ERISA fiduciary are the "highest known to law." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003)

130.   Courts recognize that case law imposes on an ESOP fiduciary a still more demanding duty of prudence than a typical ERISA fiduciary because an ESOP holds employer stock only, making diversification impossible. *Smith v. Williams,*

819 F.Supp.2d 1264, 1273–74 (M.D. Fl. 2011) *quoting Armstrong v. LaSalle Bank Nat'l Ass'n,* 446 F.3d 728, 732 (7th Cir. 2006).

### Duty to Monitor

131.   Under ERISA § 404(a), an individual with discretion to appoint an ERISA fiduciary has a fiduciary duty to select, retain and monitor those whom they appoint as would a reasonably prudent businessperson. *Chesemore v. All. Holdings, Inc.,* 886 F. Supp. 2d 1007, 1049 (W.D. Wis. 2012), aff'd sub nom. *Chesemore v. Fenkell,* 829 F.3d 803 (7th Cir. 2016) *citing Leigh,* 727 F.2d at 135; *Howell,* 337 F.Supp.2d at 1097–99. In *Leigh,* the Seventh Circuit held that a fiduciary who was "responsible for selecting and retaining their close business associates as plan administrators ... had a duty to monitor appropriately the administrators' actions." 727 F.2d at 135 (citations omitted). In *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.,* 805 F.2d 732 (7th Cir.1986), the Seventh Circuit explained that corporate entities "may well have some duty to monitor" appointed plan administrators, even when the administrators are not close business associates.

132.   The Department of Labor has stated that [a]t reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory

standards, and satisfies the needs of the plan. *Chesemore,* 886 F. Supp. 2d at 1049 citing ERISA Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8 at FR–17.

## Application of ERISA's Fiduciary Duties

133.  Application of the duty of loyalty, duty of prudence, duty to follow the plan documents, the duty to monitor, and the exclusive purpose rule generally require a fiduciary to:

(a)  Act for the exclusive benefit of plan participants and beneficiaries;

(b)  Administer and manage a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor;

(c)  Ensure that plan assets are not transferred to the fiduciaries of a plan for their personal enrichment;

(d)  Ensure all fiduciary decisions they make are prudent;

(e)  Ensure that they follow the terms of all governing plan documents including the plan document and the trust agreement;

(f)  Conduct independent, intensive and thorough investigations into, and continually monitor, matters as to which the fiduciaries have decision-making authority;

(g)  Establish a prudent process by which a fiduciary and his or her co-fiduciaries are able to make objectively reasonable analyses and

decisions concerning matters as to which the fiduciaries have decision-making authority;

(h)     Make good faith and objectively reasonable analyses and decisions concerning matters as to which the fiduciaries have decision-making authority;

(i)     Be an expert in all matters regarding their responsibilities with a plan, and if not, to hire others who are experts;

(j)     Appoint only prudent service providers after engaging in a prudent and thorough process in hiring them that includes consideration of the following:

- o Information about the firm itself: financial condition and experience with retirement plans of similar size and complexity;
- o Information about the quality of the firm's services: the identity, experience, and qualifications of professionals who will be handling the plan's account; any recent litigation or enforcement action that has been taken against the firm; and the firm's experience or performance record; and
- o A description of business practices: how plan assets will be invested if the firm will manage plan investments or how participant investment directions will be handled; and whether the firm has fiduciary liability insurance;

(k)     Prudently monitor an appointed service provider, and remove them if in the best interests of a plan, which should include a process to:

- o Establish and follow a formal review process at reasonable intervals to decide to continue using the current service providers or look for replacements;

- o Ensure the service provider is performing the agreed-upon services;
- o Evaluate any notices received from the service provider about possible changes to their compensation and the other information they provided when hired (or when the contract or arrangement was renewed);
- o Review the service providers' performance;
- o Read any reports provided by the service provider;
- o Ask about policies and practices (such as trading, investment turnover, and proxy voting); and
- o Follow up on participant complaints associated with the service provider;

(l)    Delegate fiduciary responsibility over a plan only to appropriate parties after engaging in a prudent and thorough process of examining their qualifications to hold such a position of trust;

(m)    Prudently monitor an appointed fiduciary and remove them if in the best interests of a plan;

(n)    Prudently exercise stock voting rights which includes, but is not limited to:

- o Appointment of independent members of the board of directors to protect plans participants; and
- o Removal of members of the board of directors for misconduct and injuries to a plan;

(o)    Bring derivative actions to protect a plan and its participants from breaches of fiduciary duty;

(p)    Bring derivative actions to remedy corporate action or inaction giving rise to a derivative claim when a plan's assets include employer stock;

(q)     Truthfully disclose and inform plan participants which encompasses: (1) a duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries;

(r)     Ensure only accurate information is used to calculate the value of stock held by a plan; and

(s)     Document the processes used to carry out their fiduciary responsibilities.

134.    When the assets of a plan are sold or exchanged, including company stock held by a plan, application of the duty of loyalty, duty of prudence, duty to follow the plan documents, the duty to monitor, and the exclusive purpose rule require a fiduciary to:

(a)     Ensure that a plan receives no less adequate consideration for any assets sold or exchanged;

(b)     Secure an independent and thorough assessment of the valuation of employer stock through a financial advisor or legal counsel;

(c)     Undertake an appropriate investigation to determine that a plan and its participants receive no less than adequate consideration for the assets of a plan;

(d)   Pursuant to 29 U.S.C. § 1002(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or the named fiduciary pursuant to the terms of the plan and in accordance with DOL regulations;

(e)   Fair market value means the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for such asset;

(f)    Make a good faith determination of fair market value relying on an independent appraiser consistent with its duties under 29 U.S.C. §§ 1104(a)(1), and the good faith determination must investigate the expert's qualifications, provide the expert with complete and accurate information, and make certain that reliance on the expert's advice is reasonably justified under the circumstances; and

(g)   A fiduciary must arrive at a determination of fair market value by way of a prudent investigation of circumstances prevailing at the time of the valuation, and the application of sound business principles of evaluation.

## Co-Fiduciary Liability

135.   ERISA also imposes explicit co-fiduciary liability on plan fiduciaries. 29 U.S.C. § 1105(a) provides for fiduciary liability for a co-fiduciary's breach: "In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

136.   Where plaintiffs allege that defendants (1) knowingly participated in and/or concealed the fiduciary breaches of other fiduciaries, (2) enabled other fiduciaries to breach their responsibilities, and (3) knew of other fiduciaries' breaches, but took no reasonable steps to remedy those breaches these allegations are sufficient to state a cause of action for breach of co-fiduciary duties under 29 U.S.C. § 1105(a). *Smith v. Aon Corp.*, No. 04-cv-6875, 2006 WL 1006052, at *7 (N.D. Ill. Apr. 12, 2006), *citing Howell*, 337 F.Supp.2d at 1101 ("As the court finds that Plaintiff has

stated a claim against Motorola and the Director Defendants, it need not address Plaintiff's argument that these Defendants should be held liable as 'co-fiduciaries.'").

137.   Even a proper delegation of fiduciary authority does not remove the delegating fiduciary's duties from co-fiduciary liability because the delegating fiduciary remains liable if the allocation or retention of the delegation violates § 404(a)(1) or if the delegating fiduciary meets any of the requirements in § 405(a). 29 U.S.C. § 1105(c)(2); *Chesemore,* 886 F. Supp. 2d at 1050 citing *Free v. Briody,* 732 F.2d 1331, 1335–36 (7th Cir.1984). A delegating fiduciary who knows of a breach by the delegated fiduciary cannot "escape liability by simply casting a blind eye toward the breach." *Id.* citing *Willett v. Blue Cross & Blue Shield,* 953 F.2d 1335, 1341 (11th Cir.1992) (citations omitted).

**Prohibited Transactions**

138.   The general duties of loyalty and prudence imposed by 29 U.S.C. § 1104 are supplemented by a detailed list of transactions that are expressly prohibited by 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a high potential for abuse. Section 1106(a)(1) states, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
>     (A) sale or exchange, or leasing, of any property between the plan and a
> party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

Section 1106(b) provides, in pertinent part, that:

[A] fiduciary with respect to the plan shall not –

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interest of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

139. Section 1106 of ERISA prohibits a fiduciary of an ERISA plan from causing the plan to enter into certain transactions with a "party in interest." 29 U.S.C. § 1106. Section 1106 supplements an ERISA fiduciary's general duties of loyalty and prudence to the plan's beneficiaries, as set forth in 29 U.S.C. § 1104 "by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 241–42, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (*quoting Comm'r v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 160 (1993)). A plan need not suffer an injury in order for a court to find a

transaction prohibited by Section 1106. *Etter v. J. Pease Constr. Co.,* 963 F.2d 1005, 1010 (7th Cir. 1992).

140.   "Congress (in ERISA § [1106]) intended to create an easily applied per se prohibition ... of certain transactions, no matter how fair, unless the statutory exemption procedures (of ERISA § 408(a)) are followed." *Chao v. Hall Holding* Co., 285 F.3d 415, 439 (6th Cir. 2002) *citing Cutaiar v. Marshall,* 590 F.2d 523, 529–30 (3d Cir. 1979); *see also Eaves v. Penn,* 587 F.2d 453, 457–59 (10th Cir. 1978). Lack of harm to the plan or the good faith or lack of the same on the part of the borrower are not relevant, and certainly not controlling, under ERISA § 406. Rather, "Congress was concerned in ERISA (§ 406) to prevent transactions which offered a high potential for loss of plan assets or for insider abuse." *Chao,* 285 F.3d at 439 citing *Marshall v. Kelly,* 465 F. Supp. 341, 354 (W.D.Okla.1978)).

141.   In establishing that there has been compliance with the statutory mandate, "[t]he degree to which a fiduciary makes an independent inquiry is critical." *Keach v. U.S. Tr. Co*., 419 F.3d 626, 636–37 (7th Cir. 2005). "Although securing an independent assessment from a financial advisor or legal counsel is evidence of a thorough investigation," it is not a complete defense against a charge of imprudence. *Id.* citing *Howard v. Shay,* 100 F.3d 1484, 1489 (9th Cir. 1996). A fiduciary must "investigate the expert's qualifications," "provide the expert with complete and accurate information" and "make certain that reliance on the expert's advice is

reasonably justified under the circumstances." *Id. citing Donovan v. Mazzola,* 716 F.2d 1226, 1234 (9th Cir. 1983), and *Donovan v. Cunningham,* 716 F.2d 1455, 1474 (5th Cir. 1983)).

142.   An ERISA plaintiff need not plead the absence of exemptions to prohibited transactions. It is the defendant who bears the burden of proving a section 1108 exemption. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 601 (11th Cir. 2009) ("[T]he statutory exemptions established by § 1108 are defenses which must be proven by the defendant."); *see also Allen v. GreatBanc Tr. Co.,* 835 F.3d 670, 676 (7th Cir. 2016) ("We now hold squarely that the section 408 exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them").

143.   ERISA's fiduciary duty and prohibited transaction provisions prohibit fiduciaries, such as the Defendants here, from causing plans to engage in transactions with fiduciaries and parties in interest that result in benefits to the fiduciaries and parties in interest at the expense of the plan and its participants and beneficiaries.

### Remedies for Fiduciary Breaches and Prohibited Transaction

144.   29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under 29 U.S.C. § 1109. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this

subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

145.    29 U.S.C. § 1132(a)(3) provides a cause of action against a non-fiduciary "party in interest" who knowingly participates in prohibited transactions or knowingly receives payments made in breach of a fiduciary's duty, and authorizes "appropriate equitable relief" such as restitution or disgorgement to recover ill-gotten proceeds from the non-fiduciary.

146.    Non-fiduciaries, acting with actual or constructive knowledge, may be held liable under ERISA in two ways: (1) as parties in interest, for participating in a 29 U.S.C. § 1106 prohibited transaction, and (2) as non-fiduciaries, for participating in a transaction that violates ERISA. 29 U.S.C. § 1132(a)(3); *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

## CLAIMS FOR RELIEF

### COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
29 U.S.C. §§ 1106(a)–(b) for the 2016 Recapitalization
Against Argent**

147.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

148.    Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engaged in transactions with parties in interest and fiduciaries that

are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan.

149.    Argent, as the ESOP's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the 2016 Recapitalization Transaction when:

(a)    Argent was the discretionary trustee;

(b)    Argent executed or otherwise consented to the Recapitalization of North Highland and the creation of the New LLC;

150.    Argent caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A). 29 U.S.C. § 1106(a)(1)(A) prohibits a fiduciary from causing a plan to engage in a sale or exchange of any property with a party in interest. Here, the 2016 Recapitalization was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

151.    Argent caused the ESOP to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). 29 U.S.C. § 1106(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or for the benefit of, a party in interest. Here, the 2016 Recapitalization was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).

152.    Argent (1) caused the ESOP to directly transfer property of the Plan, North Highland Company, Inc. stock, and (2) caused the ESOP to indirectly transfer

property of the Plan, North Highland, Inc. stock, to and for the use and benefit of North Highland LLC and the Individual Defendants.

153.    North Highland, Reardon and Schiavo were all parties in interest to the ESOP at the time of the 2016 Recapitalization.

154.    Argent caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(b). 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account," "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Here, the 2016 Recapitalization was a prohibited transaction under 29 U.S.C. § 1106(b)(2).

155.    Argent, in violation of 29 U.S.C. § 1106(b)(2), acted on behalf of The North Highland Company, Inc., North Highland ESOP Holdings, Inc., Reardon and Schiavo in connection with the 2016 Recapitalization by causing the Plan to exchange The North Highland Company, Inc. stock for North Highland ESOP Holdings, Inc. stock for less than adequate consideration. This greatly benefited North Highland LLC and the Individual Defendants as they ultimately took control and ownership of North Highland stock after the 2016 Recapitalization, to the substantial detriment of the

ESOP and the Plan, even though Argent, as a fiduciary to the Plan, was required to act in the best interests of the Plan.

156.   Argent did not undertake an independent fair market value or fairness analysis, instead relying on Chartwell's opinions and analyses even though Chartwell served the counter-parties to the ESOP who stood to and did gains millions of dollars from the transaction at the expense of the ESOP and its participants.

157.   Argent has caused losses to the ESOP and the Plan and North Highland, Reardon and Schiavo have profited by the prohibited transactions described in this count in an amount to be proved specifically at trial.

158.   29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

159.   Argent is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use

of Plan assets or through its control of the Plan, and is subject to other equitable or remedial relief as appropriate.

160.   Argent has caused losses to the Plan by the prohibited transactions described in this count in an amount to be proved specifically at trial.

161.   The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT II

**Causing and Engaging in Prohibited Transactions Forbidden by
29 U.S.C. §§ 1106(a)–(b) for the 2016 Recapitalization
Against North Highland, Reardon and Schiavo**

162.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

163.   Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engaged in transactions with parties in interest and fiduciaries that are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan.

164.   North Highland, Reardon and Schiavo were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the 2016 Recapitalization when:

(a)   North Highland was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a);

(b)    North Highland was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A);

(c)    North Highland, Reardon and Schiavo had the authority to appoint and remove fiduciaries to the ESOP;

(d)    North Highland, Reardon and Schiavo had the authority to remove Argent as trustee;

(e)    North Highland, Reardon and Schiavo provided information to Argent for consideration as part of the 2016 Recapitalization.

165.   North Highland, Reardon and Schiavo caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A). 29 U.S.C. § 1106(a)(1)(A) prohibits a fiduciary from causing a plan to engage in a sale or exchange of any property with a party in interest. Here, the 2016 Recapitalization was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

166.   North Highland, Reardon and Schiavo caused the ESOP to exchange property of the Plan, The North Highland Company, Inc. stock., with North Highland for North Highland ESOP Holdings, Inc. stock.

167.   North Highland was a party in interest to the ESOP at the time of the 2016 Recapitalization.

168.   North Highland, Reardon and Schiavo caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). 29 U.S.C. §

1106(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or for the benefit of, a party in interest. Here, the 2016 Recapitalization was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).

169.   North Highland, Reardon and Schiavo (1) caused the ESOP to directly transfer property of the Plan, The North Highland Company, Inc. stock, to North Highland and (2) caused the ESOP to indirectly transfer property of the Plan, The North Highland Company, Inc. stock to and for the use and benefit of North Highland, Reardon and Schiavo.

170.   North Highland, Reardon and Schiavo were all parties in interest to the ESOP at the time of the 2016 Recapitalization.

171.   North Highland, Reardon and Schiavo caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(b). 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account", "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Here, the 2016 Recapitalization was a prohibited transaction under 29 U.S.C. § 1106(b)(1), (2), and (3).

172.   North Highland, Reardon and Schiavo, in violation of 29 U.S.C. § 1106(b)(1), dealt with the assets of the Plan in their own interest and for their own account when they caused the Plan to exchange The North Highland Company, Inc. stock with North Highland ESOP Holdings, Inc. stock for less than adequate consideration. Reardon and Schiavo immediately upon the exchange of stock, gave themselves an interest in North Highland by converting the Company into a new limited liability corporation and issuing themselves units of the new LLC.

173.   Reardon and Schiavo, in violation of 29 U.S.C. § 1106(b)(3), received consideration for their own personal account from North Highland when they caused the Plan to exchange The North Highland Company, Inc stock to North Highland for North Highland ESOP Holdings, Inc. stock to and received consideration in the form of control and ownership of the North Highland Enterprise through ownership of units of the newly formed LLC.

174.   North Highland, Reardon and Schiavo have caused losses to the Plan and have profited for themselves by the prohibited transactions described in this count in an amount to be proved specifically at trial.

175.   29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore

to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

176.    North Highland, Reardon and Schiavo are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

177.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT III

### Violation of 29 U.S.C. § 1104(a)(1) for the 2016 Recapitalization Against Argent

178.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

179.    29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the

documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

180.   These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents.

181.   The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan.

182.   When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties.

183.   Argent, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the 2016 Recapitalization when Argent was the discretionary trustee for the ESOP.

184.   As a fiduciary of the ESOP, Argent was required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents.

185.   The documents governing the Plan required Argent to comply with ERISA's stringent fiduciary standards.

186.   As a fiduciary of the Plan, Argent was required to strictly apply ERISA's fiduciary duties in carrying out its fiduciary responsibilities with regard to the 2016 Recapitalization.

187.    As a fiduciary of the Plan, Argent was required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration, or fair market value, for any Plan assets sold or exchanged.

188.    Argent breached its fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when it:

(a)    Caused the Plan to exchange The North Highland Company, Inc. stock for North Highland ESOP Holdings, Inc. stock for less than adequate consideration;

(b)    Failed to make a good faith determination of adequate consideration of The North Highland Company, Inc. stock for North Highland ESOP Holdings, Inc. stock;

(c)    Failed to prevent Reardon and Schiavo from setting in motion the 2016 Recapitalization;

(d)    Failed to prevent the conversion of North Highland to a limited liability company;

(e)    Failed to prevent Reardon and Schiavo from receiving units of North Highland LLC;

(f)    Failed to prevent the faulty and inadequate valuation of The North Highland Company, Inc. stock;

(g)    Failed to prevent the 2016 Recapitalization from being for the benefit of anyone other than the ESOP and its participants and beneficiaries;

(h)    Failed to determine that the 2016 Recapitalization was in the best interests of the ESOP;

(i)    Failed to prevent the dilution of value of North Highland stock after the 2016 Recapitalization;

(j)    Failed to prevent the loss in value to the ESOP described in the Loss of Value from 2016 to the present;

(k)    Failed to ensure the governing plan documents were followed;

(l)    Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods;

(m)    Failed to inform participants about the loss to the ESOP and the improper benefit to Reardon and Schiavo; and

(n)    Failed to follow the governing plan documents, including the requirement for pass-through voting by Participants and Beneficiaries with respect to any recapitalization or similar transaction.

189.    Argent did not undertake an independent fair market value or fairness analysis, instead relying on Chartwell's opinions and analyses even though Chartwell

served the counter-parties to the ESOP who stood to and did gains millions of dollars from the transaction at the expense of the ESOP and its participants.

190. Argent has caused losses to the Plan and North Highland, Reardon and Schiavo have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

191. 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

192. Argent is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

193. The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT IV

### Violation of 29 U.S.C. § 1104(a)(1) for the
### 2016 Recapitalization Against North Highland, Reardon and Schiavo

194.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

195.    29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

196.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents.

197.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan.

198.    When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties.

199.   North Highland, Reardon and Schiavo were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the 2016 Recapitalization when:

(a)   The North Highland Company was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a);

(b)   The North Highland Company was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A);

(c)   The North Highland, as a corporate entity, cannot and could not act on its own without any human counterpart. In this regard, The North Highland Company delegated fiduciary and plan administrative roles to Elizabeth Schiavo;

(d)   According to 29 C.F.R. § 2509.75-8(D-4) "Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries… to the extent that they have responsibility for the functions described in 29 U.S.C. § 1002(21)(A)";

(e)   Reardon was a member of the Board of Directors during the relevant time for the 2016 Recapitalization;

(f)   Reardon and Schiavo carried out all acts of North Highland in its role as named fiduciary and plan administrator to the Plan for the relevant time period for the 2016 Recapitalization;

(g)     North Highland, Reardon and Schiavo had the authority to appoint and remove fiduciaries to the ESOP;

(h)     North Highland, Reardon and Schiavo had the authority to remove Argent as trustee; and

(i)     North Highland, Reardon and Schiavo provided information to Argent for consideration as part of the 2016 Recapitalization.

200.   As a fiduciaries of the Plan, North Highland, Reardon and Schiavo were required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents.

201.   The documents governing the Plan required North Highland, Reardon and Schiavo to comply with ERISA's stringent fiduciary standards.

202.   As a fiduciaries of the Plan, North Highland, Reardon and Schiavo were required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the 2016 Recapitalization.

203.   As a fiduciaries of the Plan, North Highland, Reardon and Schiavo were required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration for any Plan assets sold or exchanged.

204.   North Highland, Reardon and Schiavo breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they:

(a)     Caused the Plan to exchange The North Highland Company, Inc. stock for North Highland ESOP Holdings, Inc. stock for less than adequate consideration;

(b)     Failed to make a good faith determination of adequate consideration of The North Highland Company, Inc. stock and North Highland ESOP Holdings, Inc. stock;

(c)     Failed to prevent the creation of North Highland LLC;

(d)     Failed to prevent Reardon and Schiavo from setting in motion the 2016 Recapitalization;

(e)     Failed to remove Reardon as member of the Board of Directors;

(f)     Failed to remove Argent, Reardon and Schiavo as fiduciaries to the ESOP;

(g)     Failed to prevent the conversion of The North Highland Company, Inc to a limited liability company;

(h)     Failed to prevent Reardon and Schiavo from receiving units of North Highland, LLC;

(i)     Failed to prevent the 2016 Recapitalization from being for the benefit of anyone other than the ESOP;

(j)     Failed to determine that the 2016 Recapitalization was in the best interests of the ESOP;

(k)    Failed to prevent the dilution of value of North Highland ESOP
        Holdings, Inc. stock after the 2016 Recapitalization;

(l)    Failed to prevent the loss in value to the ESOP described in the Loss of
        Value Since 2016;

(m)    Failed to prevent excessive compensation being paid to the Individual
        Defendants;

(n)    Failed to prevent the Individual Defendants from controlling the value
        of North Highland stock inside the ESOP;

(o)    Failed to ensure the governing plan documents were followed;

(p)    Failed to prevent improper and faulty valuation methods from being
        used that resulted in lower values of the stock held by the ESOP as
        compared to prudent and appropriate valuation methods;

(q)    Failed to inform participants about the loss to the ESOP and the
        improper benefit to the Individual Defendants; and

(r)    Failed to follow the governing plan documents, including the
        requirement for pass-through voting by Participants and Beneficiaries
        with respect to any recapitalization or similar transaction.

205.    North Highland, Reardon and Schiavo have caused losses to the Plan and North Highland, and the Individual Defendants have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

206.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

207.    North Highland, Reardon and Schiavo, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

208.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT V

**Violation of 29 U.S.C. § 1105(a), Co-Fiduciary Liability, for the 2016
Recapitalization Against North Highland, Reardon and Schiavo**

209.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

210.   29 U.S.C. §1105(a) imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary, in addition to any liability which he may have under any other provision of ERISA, if:

    (1)   he participates knowingly in or knowingly undertakes to conceal an act or omission of such other fiduciary knowing such act or omission is a breach;

    (2)   by his failure to comply with 29 U.S.C. § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

    (3)   he knows of a breach by another fiduciary and fails to make reasonable efforts to remedy it.

211.   Liability under 29 U.S.C. 1105(a) is known as co-fiduciary liability.

*Argent*

212.   Argent was a fiduciary to the ESOP portion of the Plan.

213.   Argent knowingly participated in the breaches of North Highland, Reardon and Schiavo in Count II and Count IV when they performed the actions described in the 2016 Recapitalization, Count I, and Count III.

214.   Argent enabled the breaches of North Highland, Reardon and Schiavo in Count II and Count IV by its own breaches of ERISA when it committed the breaches of fiduciary duty described in Count I and Count III;

215.   Argent knew of the breaches of North Highland, Reardon and Schiavo in Count II and Count IV and failed to make reasonable efforts to remedy as described in the 2016 Recapitalization, Count I, and Count III.

*North Highland*

216.   North Highland was a fiduciary to the Plan.

217.   North Highland knowingly participated in (1) the breaches of Argent in Count I and Count III and (2) the breaches of Reardon and Schiavo in Count II and Count IV when they performed the actions described in the 2016 Recapitalization, Count II, and Count IV.

218.   North Highland enabled (1) the breaches of Argent in Count I and Count III and (2) the breaches of Reardon and Schiavo in Count II and Count IV by its own breaches of ERISA when it committed the breaches of fiduciary duty described in Count II and Count IV;

219.   North Highland knew of (1) the breaches of Argent in Count I and Count III and (2) the breaches of Reardon and Schiavo in Count II and Count IV and failed to make reasonable efforts to remedy them when it performed the actions described in the 2016 Recapitalization, Count II, and Count IV.

*Reardon*

220.   Reardon was a fiduciary to the Plan.

221.   Reardon knowingly participated in (1) the breaches of Argent in Count I and Count III and (2) the breaches of North Highland and Schiavo in Count II and Count IV when he performed the actions described in the 2016 Recapitalization, Count II, and Count IV.

222.   Reardon enabled (1) the breaches of Argent in Count I and Count III and (2) the breaches of North Highland and Schiavo in Count II and Count IV by his own breaches of ERISA when he committed the breaches of fiduciary duty described in Count II and Count IV;

223.   Reardon knew of (1) the breaches of Argent in Count I and Count III and (2) the breaches of North Highland and Schiavo in Count II and Count IV and failed to make reasonable efforts to remedy them when he performed the actions described in the 2016 Recapitalization, Count II, and Count IV.

*Schiavo*

224.   Schiavo was a fiduciary to the Plan.

225.   Schiavo knowingly participated in (1) the breaches of Argent in Count I and Count III and (2) the breaches of North Highland and Reardon in Count II and Count IV when she performed the actions described in the 2016 Recapitalization, Count II, and Count IV.

226.    Schiavo enabled (1) the breaches of Argent in Count I and Count III and (2) the breaches of North Highland and Reardon in Count II and Count IV by her own breaches of ERISA when she committed the breaches of fiduciary duty described in Count II and Count IV.

227.    Schiavo knew of (1) the breaches of Argent in Count I and Count III and (2) the breaches of North Highland and Reardon in Count II and Count IV and failed to make reasonable efforts to remedy them when she performed the actions described in the 2016 Recapitalization, Count II, and Count IV.

228.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

229.    Argent, North Highland, Reardon and Schiavo, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

230.  The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT VI

### Knowing Participation in Breaches of Fiduciary Duties & Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3) for the 2016 Recapitalization Against North Highland, Reardon and Schiavo

231.  Plaintiffs incorporate the preceding paragraphs as though set forth herein.

232.  29 U.S.C. § 1132(a)(3) permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

233.  The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under 29 U.S.C. § 1132(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Soloman Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

234.  North Highland, Reardon and Schiavo were all parties in interest to the Plan under 29 U.S.C. § 1002(14).

235.  As a result of the fiduciary breaches and prohibited transactions described in Counts I through V, (1) North Highland, Reardon and Schiavo received ownership, control, and the benefit of The North Highland Company, Inc. stock as a

result of the 2016 Recapitalization that otherwise would have been Plan assets to be used exclusively for the benefit of the Plan participants and beneficiaries, and (2) Reardon and Schiavo received the compensation and benefits described in the Loss of Value claims since 2016.

236.   North Highland, Reardon and Schiavo had actual knowledge of the circumstances that made the transactions unlawful in Counts I through V, when they performed the actions described in the 2016 Recapitalization, Count II, and Count.

237.   Despite knowledge of these the circumstances, North Highland, Reardon and Schiavo proceeded to knowingly participate in the breaches described in Counts I through V, when they performed the actions described in the 2016 Recapitalization, Count II, and Count IV.

238.   North Highland, Reardon and Schiavo profited from the fiduciary breaches described in Counts I through V in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets and consideration that belong to the Plan.

239.   By knowingly participating in these breaches and violations, North Highland, Reardon and Schiavo as parties in interest to the Plan are subject to appropriate equitable relief including disgorgement of any profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the North Highland stock

and consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT VII

### Violation of 29 U.S.C. § 1104(a)(1) for the Loss of Value Since 2016 Against Argent

240.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

241.    29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

242.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents.

243.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan.

244.    When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties.

245.    Argent, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the Loss of Value Since 2016 when:

(a)    Argent was the discretionary trustee for the ESOP;

(b)    Argent had the authority to appoint and remove fiduciaries to the ESOP;

246.    As a fiduciary of the Plan, Argent was required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents.

247.    The documents governing the Plan required Argent to comply with ERISA's stringent fiduciary standards.

248.    As a fiduciary of the Plan, Argent was required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to Loss of Value Since 2016.

249.    As a fiduciary of the Plan, Argent was required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration, or fair market value, for any Plan assets sold or exchanged.

250.    Argent breached its fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when it:

(a)    Caused the Plan to exchange The North Highland Company, Inc. stock with North Highland ESOP Holdings, Inc. stock for less than adequate consideration;

(b)    Failed to prevent the Individual Defendants from paying themselves the excessive compensation described in the Loss of Value Since 2016;

(c)    Failed to prevent the value of North Highland ESOP Holdings, Inc. stock from being valued below fair market value;

(d)    Failed to remove Individual Defendants from the Board of Directors of North Highland ESOP Holdings, Inc.;

(e)    Failed to remove Individual Defendants as fiduciaries to the ESOP;

(f)    Failed to file a derivative suit against officers and directors of North Highland. Such derivative claims would have been successful and would have recovered damages on behalf of the Plan;

(g)    Failed to prevent the conversion of North Highland to a limited liability company;

(h)    Failed to prevent Individual Defendants from diluting the ESOP's ownership interest in the North Highland Enterprise by receiving units of North Highland, LLC;

(i)    Failed to ensure that the Plan received adequate opinions of value;

(j)    Failed to prevent the compensation paid as described in the Loss of Value Since 2016 from being for the benefit of the Individual Defendants;

(k)    Failed to protect the best interests of the ESOP;

(l)    Failed to prevent the dilution of value of North Highland ESOP Holdings, Inc.;

(m)    Failed to prevent the loss in value to the ESOP described in the Loss of Value Since 2016;

(n)    Failed to prevent Individual Defendants from exerting control over the value of North Highland ESOP Holdings, Inc. stock inside the ESOP;

(o)    Failed to prevent indemnification provisions that could result in the reduction of value to the ESOP;

(p)    Failed to ensure the governing plan documents were followed; and

(q)    Failed to inform participants about the loss to the ESOP and the improper benefit to the Individual Defendants.

251.    Argent has caused losses to the Plan and the Individual Defendants have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

252.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and

additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

253.   Argent is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through its control of the Plan, and is subject to other equitable or remedial relief as appropriate.

254.   The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT VIII

**Violation of 29 U.S.C. § 1104(a)(1) for the
Loss of Value Since 2016 Against North Highland and the Individual
Defendants**

255.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

256.   29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the

documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

257.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents.

258.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan.

259.    When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties.

260.    North Highland and the Individual Defendants were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the Loss of Value Since 2016 when:

(a)    North Highland was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a);

(b)    North Highland was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A);

(c)    The Individual Defendants, as Directors, carried out all acts of North Highland in its role as named fiduciary and plan administrator to the Plan from September 30, 2016 through the present;

(d)     Argent and the Individual Defendants had the responsibility of recommending the removal of members of the North Highland ESOP Holdings, Inc. Board of Directors;

(e)     The Individual Defendants had the authority to remove Argent as trustee; and

(f)     The Individual Defendants had direct control over the value of the North Highland ESOP Holdings, Inc. stock because (1) they had total discretion to award additional units of North Highland LLC, which directly reduced the income and equity attributable to the units held by North Highland ESOP Holdings, Inc. and (2) the valuation calculations of the ESOP's shares were accordingly reduced in 2016, 2017, 2018, 2019, 2020, and 2021.

261.   As fiduciaries of the Plan, North Highland and the Individual Defendants were required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents.

262.   The documents governing the Plan required Defendants to comply with ERISA's stringent fiduciary standards.

263.   As fiduciaries of the Plan, North Highland and the Individual Defendants were required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the Loss of Value Since 2016.

264.   As fiduciaries of the Plan, Argent and the Individual Defendants were required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration for any Plan assets sold or exchanged.

265.   North Highland and the Individual Defendants breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they:

(a)    Caused the Plan to exchange The North Highland Company, Inc. stock for North Highland ESOP Holdings, Inc. stock for less than adequate consideration;

(b)    Failed to prevent the Individual Defendants from paying themselves the excessive compensation described in the Loss of Value Since 2016;

(c)    Failed to prevent the value of North Highland ESOP Holdings, Inc. from being valued below fair market value;

(d)    Failed to remove Individual Defendants as members of the Board of Directors of North Highland ESOP Holdings, Inc. and North Highland, LLC;

(e)    Failed to remove Argent and the Individual Defendants as fiduciaries to the ESOP;

(f)    Failed to file a derivative suit against officers and directors of North Highland and North Highland, LLC. Such derivative claims would

have been successful and would have recovered damages on behalf of the Plan;

(g)    Failed to prevent the conversion of North Highland to a limited liability company;

(h)    Failed to prevent Individual Defendants receiving units of North Highland, LLC;

(i)    Failed to prevent the compensation paid as described in the Loss of Value Since 2016 from being for the benefit of the Individual Defendants;

(j)    Failed to protect the best interests of the ESOP;

(k)    Failed to prevent the dilution of value of North Highland ESOP Holdings stock;

(l)    Failed to prevent the loss in value to the ESOP described in the Loss of Value Since 2016;

(m)    Failed to prevent the Individual Defendants from controlling the value of North Highland ESOP Holdings stock inside the ESOP;

(n)    Failed to ensure North Highland and the Individual Defendants provided truthful information;

(o)    Failed to ensure the governing plan documents were followed;

(p)    Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods; and

(q)    Failed to inform participants about the loss to the ESOP and the improper benefit to the Individual Defendants.

266.    North Highland and the Individual Defendants have caused losses to the Plan and the Individual Defendants have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

267.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

268.    North Highland and the Individual Defendants, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

269.  The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT IX

### Violation of 29 U.S.C. § 1105(a), Co-Fiduciary Liability, for the Loss of Value Since 2016 Against Argent, North Highland, and the Individual Defendants

270.  Plaintiffs incorporate the preceding paragraphs as though set forth herein.

271.  29 U.S.C. §1105(a), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary, in addition to any liability which he may have under any other provision of ERISA, if:

    (1)    he participates knowingly in or knowingly undertakes to conceal an act or omission of such other fiduciary knowing such act or omission is a breach;

    (2)    by his failure to comply with 29 U.S.C. § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

    (3)    he knows of a breach by another fiduciary and fails to make reasonable efforts to remedy it.

272.  Liability under 29 U.S.C. 1105(a) is known as co-fiduciary liability.

*Argent*

273.  Argent was a fiduciary to the Plan.

274.  Argent knowingly participated in the breaches of North Highland, Reardon and Schiavo in Count VIII when they performed the actions described in the

2016 Recapitalization, and North Highland and the Individual Defendants when they performed the actions described in the Loss of Value Since 2016, and Count VII.

275.   Argent enabled the breaches of North Highland and the Individual Defendants in Count VIII by its own breaches of ERISA when it committed the breaches of fiduciary duty described in Count VII.

276.   Argent knew of the breaches of North Highland and the Individual Defendants in Count VIII and failed to make reasonable efforts to remedy them when it performed the actions described in the 2016 Recapitalization, the Loss of Value Since 2016, and Count.

*North Highland*

277.   North Highland was a fiduciary to the Plan.

278.   North Highland knowingly participated in (1) the breaches of Argent in Count VII and (2) the breaches of Reardon and Schiavo in Count VIII when they performed the actions described in the 2016 Recapitalization, the breaches of Argent and the Individual Defendants in the Loss of Value Since 2016, and Count VIII.

279.   North Highland enabled (1) the breaches of Argent in Count VII and (2) the breaches of Reardon and Schiavo in Count VIII by its own breaches of ERISA when it committed the breaches of fiduciary duty described in Count VIII.

280.   North Highland knew of (1) the breaches of Argent in Count VII and (2) the breaches of Reardon and Schiavo in Count VIII and failed to make reasonable

efforts to remedy them when it performed the actions described in the 2016 Recapitalization, the breaches of Argent and the Individual Defendants in the Loss of Value Since 2016, and Count VIII.

*Reardon*

281.   Reardon was a fiduciary to the Plan.

282.   Reardon knowingly participated in (1) the breaches of Argent in Count VII and (2) the breaches of North Highland and Schiavo in Count VIII when they performed the actions described in the 2016 Recapitalization, and North Highland and the other Individual Defendants concerning the Loss of Value Since 2016, and Count VIII.

283.   Reardon enabled (1) the breaches of Argent in Count VII and (2) the breaches of North Highland and Schiavo in Count VIII by his own breaches of ERISA when he committed the breaches of fiduciary duty described in Count VIII.

284.   Reardon knew of (1) the breaches of Argent in Count VII and (2) the breaches of North Highland and Schiavo in Count VIII and failed to make reasonable efforts to remedy them when he performed the actions described in the 2016 Recapitalization, and North Highland and the other Individual Defendants concerning the Loss of Value Since 2016, and Count VIII.

*Schiavo*

285.   Schiavo was a fiduciary to the Plan.

286.    Schiavo knowingly participated in (1) the breaches of Argent in Count VII and (2) the breaches of North Highland and Reardon in Count VIII when she performed the actions described in the 2016 Recapitalization, and North Highland and the Other Executives related to the Loss of Value Since 2016, and Count VIII.

287.    Schiavo enabled (1) the breaches of Argent in Count VII and (2) the breaches of North Highland and Reardon in Count VIII by her own breaches of ERISA when she committed the breaches of fiduciary duty described in Count VIII.

288.    Schiavo knew of (1) the breaches of Argent in Count VII and (2) the breaches of North Highland and Reardon in Count VIII and failed to make reasonable efforts to remedy it when she performed the actions described in the 2016 Recapitalization and the Loss of Value Since 2016, and Count VIII.

289.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

290.    Argent, and the Individual Defendants, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to

the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

291.   The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT X

**Knowing Participation in Breaches of Fiduciary Duties & Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3) for the Loss of Value Since 2016 Against The Individual Defendants**

292.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

293.   29 U.S.C. § 1132(a)(3) permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

294.   The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under 29 U.S.C. § 1132(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Soloman Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

295.   The Individual Defendants were parties in interest to the Plan under 29 U.S.C. § 1002(14).

296. As a result of the fiduciary breaches and prohibited transactions described in Count VII, Count VIII, and Count IX, the Individual Defendants received excessive compensation and benefits described in the Loss of Value Since 2016 including excessive compensation, excessive incentive pay, and excessive awards of North Highland LLC units that otherwise would have been Plan assets to be used exclusively for the benefit of the Plan participants and beneficiaries.

297. The Individual Defendants had actual knowledge of the circumstances that made the transactions unlawful in Counts VII through IX, when they performed the actions described in the 2016 Recapitalization, the Loss of Value Since 2016, and Count VIII.

298. Despite knowledge of these the circumstances, the Individual Defendants proceeded to knowingly participate in the breaches described in Counts VII through IX, when they performed the actions described in the 2016 Recapitalization, the Loss of Value Since 2016, and Count VIII.

299. The Individual Defendants have profited from the fiduciary breaches described in Counts VII through IX in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets and consideration that belong to the Plan.

300. By knowingly participating in these breaches and violations the Individual Defendants as parties in interest to the Plan are subject to appropriate

equitable relief including disgorgement of any profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring Plan assets and consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT XI

### Causing and Engaging in Prohibited Transactions Forbidden by 29 U.S.C. §§ 1106(a)–(b) for the 2021 Redemption Transaction Against Argent

301.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

302.   Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engage in transactions with parties in interest and fiduciaries that are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan.

303.   Argent, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the 2021 Redemption Transaction when:

(a)   Argent was the discretionary trustee of the ESOP;

(b)   As discretionary trustee to the ESOP, Argent was a fiduciary;

(c)   Argent had the authority to appoint and remove fiduciaries to the ESOP.

304.   Argent caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A). 29 U.S.C. § 1106(a)(1)(A) prohibits a fiduciary from

causing a plan to engage in a sale or exchange of any property with a party in interest. Here, the 2021 Redemption Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

305.   Argent caused the ESOP to sell property of the Plan, North Highland LLC Units, to North Highland. The Plan received less than adequate consideration for this exchange.

306.   North Highland was a party in interest to the ESOP at the time of the 2021 Redemption Transaction.

307.   Argent caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). 29 U.S.C. § 1106(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or for the benefit of, a party in interest. Here, the 2021 Redemption Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).

308.   Argent (1) caused the ESOP to directly transfer property of the Plan, North Highland LLC Units, to North Highland and (2) caused the ESOP to indirectly transfer property of the Plan, North Highland LLC Units, to and for the use and benefit of the Individual Defendants.

309.   North Highland and the Individual Defendants were all parties in interest to the ESOP at the time of the 2021 Redemption Transaction.

310.    Argent caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(b). 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account", "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Here, the 2021 Redemption Transaction was a prohibited transaction under 29 U.S.C. § 1106(b)(2).

311.    Argent, in violation of 29 U.S.C. § 1106(b)(2), acted on behalf of North Highland and the Individual Defendants in connection with the 2021 Redemption Transaction by causing the Plan to sell North Highland LLC units to North Highland at a price below fair market value. This greatly benefited North Highland and the Individual Defendants as they ultimately took full control and ownership of North Highland after the 2021 Redemption Transaction, to the substantial detriment of the Plan, even though Argent, as a fiduciary to the Plan, was required to act in the best interests of the Plan.

312.    Argent has caused losses to the Plan and North Highland and the Individual Defendants have profited by the prohibited transactions described in this count in an amount to be proved specifically at trial.

313.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

314.    Argent is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and is subject to other equitable or remedial relief as appropriate.

315.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XII

**Causing and Engaging in Prohibited Transactions Forbidden by
29 U.S.C. §§ 1106(a)–(b) for the 2021 Redemption Transaction
Against North Highland and the Individual Defendants**

316.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

317.    Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engage in transactions with parties in interest and fiduciaries that are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan.

318.    North Highland and the Individual Defendants were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the 2021 Redemption Transaction when:

(a)    North Highland was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a);

(b)    North Highland was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A);

(c)    The Individual Defendants were members of the North Highland Board of Directors;

(d)    The Individual Defendants, as Directors, carried out all acts of North Highland in its role as named fiduciary and plan administrator to the Plan from September 31, 2016 through the effective termination of the ESOP;

(e)    Reardon and Childers, as the CEO and CFO of North Highland, represented North Highland in the 2021 Redemption Transaction;

(f)     North Highland, Reardon and Childers had the authority to appoint and remove fiduciaries to the ESOP;

(g)     North Highland, Reardon and Childers had the authority to remove Argent as trustee;

319.    North Highland and the Individual Defendants caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A). 29 U.S.C. § 1106(a)(1)(A) prohibits a fiduciary from causing a plan to engage in a sale or exchange of any property with a party in interest. Here, the 2021 Redemption Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

320.    North Highland and the Individual Defendants caused the ESOP to sell property of the Plan, North Highland LLC Units, to North Highland.

321.    North Highland was a party in interest to the ESOP at the time of the 2021 Redemption Transaction.

322.    North Highland and the Individual Defendants caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). 29 U.S.C. § 1106(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or for the benefit of, a party in interest. Here, the 2021 Redemption Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).

323.   North Highland and the Individual Defendants (1) caused the ESOP to directly transfer property of the Plan, North Highland LLC Units, to North Highland and (2) caused the ESOP to indirectly transfer property of the Plan, North Highland LLC Units, to and for the use and benefit of the Individual Defendants.

324.   The Individual Defendants were all parties in interest to the ESOP at the time of the 2021 Redemption Transaction.

325.   North Highland and the Individual Defendants caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(b). 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account", "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Here, the 2021 Redemption Transaction was a prohibited transaction under 29 U.S.C. § 1106(b)(1), (2), and (3).

326.   North Highland and the Individual Defendants, in violation of 29 U.S.C. § 1106(b)(1), dealt with the assets of the Plan in their own interest and for their own account when they caused the Plan to sell North Highland LLC units to North Highland at a price below fair market value. The Individual Defendants immediately

upon the transfer of North Highland LLC units to North Highland, took ownership and control of North Highland.

327.   North Highland and the Individual Defendants, in violation of 29 U.S.C. § 1106(b)(2), acted on behalf of themselves in connection with the 2021 Redemption Transaction by causing the ESOP to sell North Highland LLC units to North Highland at a price below fair market value. This greatly benefited North Highland and the Individual Defendants as they ultimately took control and ownership of North Highland after the 2021 Redemption Transaction, to the substantial detriment of the Plan, even though North Highland and the Individual Defendants, as fiduciaries to the Plan, were required to act in the best interests of the Plan.

328.   North Highland and the Individual Defendants, in violation of 29 U.S.C. § 1106(b)(3), received consideration for their own personal account from Argent, North Highland, and the Individual Defendants when they caused the ESOP to sell North Highland LLC units to North Highland at a price below fair market value and for the benefit of North Highland and the Individual Defendants as they ultimately took control and ownership of North Highland after the 2021 Redemption Transaction.

329.   North Highland and the Individual Defendants have caused losses to the Plan and have profited for themselves by the prohibited transactions described in this count in an amount to be proved specifically at trial.

330.   29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

331.   North Highland and the Individual Defendants, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

332.   The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XIII

### Violation of 29 U.S.C. § 1104(a)(1) for the 2021 Redemption Transaction Against Argent

333.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

334.   29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries

and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

335.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents.

336.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan.

337.    When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties.

338.    Argent, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the 2021 Redemption Transaction when:

    (a)    Argent was the discretionary trustee under the terms of the ESOP Trust Agreement;

    (b)    Argent's fiduciary responsibilities were listed in the ESOP Trust Agreement;

(c)     Argent executed the Redemption Agreement on behalf of the ESOP; and

(d)     Argent had the authority to appoint and remove fiduciaries to the ESOP;

339.   As a fiduciary of the Plan, Argent was required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents.

340.   Argent was required to comply with ERISA's stringent fiduciary standards.

341.   As a fiduciary of the Plan, Argent was required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the 2021 Redemption Transaction.

342.   As a fiduciary of the Plan, Argent was required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration, or fair market value, for any Plan assets sold or exchanged.

343.   Argent breached its fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when it:

(a)     Caused the Plan to sell North Highland LLC units to North Highland for less than adequate consideration and at a price below fair market value in the 2021 Redemption Transaction;

(b)     Failed to make a good faith determination of fair market value of North Highland LLC units in the 2021 Redemption Transaction;

(c)    Failed to independently investigate the information provided by Individual Defendants in before arriving at the Below FMV Sale Price;

(d)    Failed to engage in a thorough level of due diligence prior to arriving at a sale price;

(e)    Failed to obtain an updated valuation report from an independent and qualified valuation expert before agreeing on a sale price;

(f)    Failed to consider alternative purchasers of North Highland LLC units including, but not limited to, publicly traded competitors, privately held competitors, or other potential buyers such as private equity firms;

(g)    Failed to request or receive third party bids to determine the fair market value of North Highland and/or North Highland LLC Units, even though other companies had expressed an interest in buying;

(h)    Failed to engage in a thorough level of due diligence prior to arriving at a sale price;

(i)    Failed to obtain an updated valuation report from an independent and qualified valuation expert before agreeing on a sale price;

(j)    Failed to remove Individual Defendants as fiduciaries to the ESOP or North Highland ESOP Holdings, Inc.;

(k)    Failed to prevent the value of North Highland LLC units from being valued below fair market value;

(l)     Failed to prevent the 2021 Redemption Transaction from being for the benefit of anyone other than the ESOP;

(m)    Failed to determine that the 2021 Redemption Transaction was in the best interests of the ESOP;

(n)     Failed to prevent the dilution of value of North Highland LLC units after the 2016 Recapitalization;

(o)     Failed to prevent the loss in value to the ESOP described in the Loss of Value Since 2016;

(p)     Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods; and

(q)     Failed to inform participants about the loss to the ESOP and the improper benefit to Individual Defendants.

344.    Argent has caused losses to the Plan and North Highland and the Individual Defendants have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

345.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore

to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

346.   Argent is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through its control of the Plan, and is subject to other equitable or remedial relief as appropriate.

347.   The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XIV

### Violation of 29 U.S.C. § 1104(a)(1) for the 2021 Redemption Transaction Against North Highland and the Individual Defendants

348.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

349.   29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the

documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

350.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents.

351.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan.

352.    When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties.

353.    North Highland and the Individual Defendants were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the 2021 Redemption Transaction when:

    (a)    North Highland was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a);

    (b)    North Highland was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A);

    (c)    The Individual Defendants, as Directors, carried out all acts of North Highland in its role as named fiduciary and plan administrator to the

Plan from September 30, 2016 through the 2021 Redemption Transaction;

(d)    Individual Defendants executed the Redemption Agreement on behalf of North Highland;

(e)    North Highland and the Individual Defendants had the authority to appoint and remove fiduciaries to the ESOP; and

(f)    North Highland and the Individual Defendants had the authority to remove Argent as trustee;

354.    As a fiduciaries of the Plan, North Highland and the Individual Defendants were required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents.

355.    As a fiduciaries of the Plan, North Highland and the Individual Defendants were required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the 2021 Redemption Transaction.

356.    As a fiduciaries of the Plan, North Highland and the Individual Defendants were required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration, or fair market value, for any Plan assets sold or exchanged.

357.    North Highland and the Individual Defendants breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they:

(a)    Caused the Plan to sell North Highland LLC units to North Highland for less than adequate consideration and at a price below fair market value in the 2021 Redemption Transaction;

(b)    Failed to make a good faith determination of fair market value of North Highland LLC units in the 2021 Redemption Transaction;

(c)    Failed to request or receive third party bids to determine the fair market value of North Highland LLC Units, even though other companies had expressed an interest in buying;

(d)    Failed to prevent the execution of the 2021 Redemption Agreement;

(e)    Failed to prevent Individual Defendants from setting in motion the 2021 Redemption Transaction;

(f)    Failed to remove Individual Defendants as members of the Board of Directors of North Highland and North Highland ESOP Holdings;

(g)    Failed to remove North Highland and Individual Defendants as fiduciaries to the ESOP;

(h)    Failed to prevent the value of North Highland LLC units from being valued below fair market value;

(i)    Failed to prevent the 2021 Redemption Transaction from being for the benefit of anyone other than the ESOP;

(j)   Failed to determine that the 2021 Redemption Transaction was in the best interests of the ESOP;

(k)   Failed to prevent the dilution of value of North Highland LLC units after the 2016 Recapitalization;

(l)   Failed to prevent the loss in value to the ESOP described in the Loss of Value Since 2016;

(m)   Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods;

(n)   Failed to inform participants about the loss to the ESOP and the improper benefit to Individual Defendants; and

(o)   Failed to prudently monitor and remove Argent as trustee of the ESOP.

358.   North Highland and the Individual Defendants have caused losses to the Plan and North Highland and the Individual Defendants have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

359.   29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and

additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

360.   North Highland and the Individual Defendants are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

361.   The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XV

**Knowing Participation in Breaches of Fiduciary Duties & Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3) for the 2021 Redemption Transaction Against North Highland and the Individual Defendants**

362.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

363.   29 U.S.C. § 1132(a)(3) permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

364.   The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under 29 U.S.C. § 1132(a)(3) if they have "actual or constructive knowledge

of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Soloman Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

365.    North Highland and the Individual Defendants were all parties in interest to the Plan under 29 U.S.C. § 1002(14).

366.    As a result of the fiduciary breaches and prohibited transactions described in Counts XI through XIV, North Highland and the Individual Defendants received ownership and control of North Highland as a result of the 2021 Redemption Transaction that otherwise would have been Plan assets to be used exclusively for the benefit of the Plan participants and beneficiaries.

367.    North Highland and the Individual Defendants had actual knowledge of the circumstances that made the transactions unlawful in Counts XI through XIV, when they performed the actions described in the 2021 Redemption Transaction, Count XII and Count XIV.

368.    Despite knowledge of these the circumstances, North Highland and the Individual Defendants proceeded to knowingly participate in the breaches described in Counts XI through XIV, when they performed the actions described in the 2021 Redemption Transaction, Count XII and Count XIV.

369.    North Highland and the Individual Defendants have profited from the fiduciary breaches described in Counts XI through XIV in an amount to be proven at

trial and, upon information and belief, they remain in possession of some or all of the North Highland LLC units and consideration that belong to the Plan.

370.   Despite knowledge of these the circumstances, North Highland and the Individual Defendants proceeded to knowingly participate in the breaches described in Counts XI through XV, when they performed the actions described in the 2021 Redemption Transaction, Count XII and Count XIV.

371.   By knowingly participating in these breaches and violations, North Highland and the Individual Defendants as parties in interest to the Plan are subject to appropriate equitable relief including disgorgement of any profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the North Highland stock and consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT XVI

### Violation of 29 U.S.C. § 1104(a)(1) for Failure to Monitor and Terminate Argent as Trustee to the Plan Against North Highland and the Individual Defendants

372.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

373.   29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their

beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

374.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents.

375.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan.

376.    North Highland and the Individual Defendants were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the monitoring and termination of Argent when:

   (a)    North Highland was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a);

   (b)    North Highland was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A);

   (c)    North Highland, as a corporate entity, cannot act on its own without any human counterpart. In this regard, North Highland could only act through its Board of Directors;

(d)     The Individual Defendants were members of the North Highland Board of Directors;

(e)     Directors, they carried out all acts of North Highland in its role as named fiduciary and plan administrator to the Plan from September 30, 2016 through the 2021 Redemption Transaction;

(f)     North Highland and the Individual Defendants had the authority to appoint and remove fiduciaries to the ESOP; and

(g)     North Highland and the Individual Defendants had the authority to remove Argent as trustee.

377.    As fiduciaries of the Plan, North Highland and the Individual Defendants were required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents.

378.    As fiduciaries of the Plan, North Highland and the Individual Defendants were required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to monitoring and terminating Argent as trustee.

379.    North Highland and the Individual Defendants breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they:

(a)     Failed to properly monitor Argent as trustee;

(b)     Failed to remove Argent as trustee after its actions and fiduciary breaches as part of the 2016 Recapitalization;

(c)    Failed to remove Argent as trustee after its actions and fiduciary breaches as part of the Loss of Value Since 2016; and

(d)    Failed to remove Argent as trustee after its actions and fiduciary breaches as part of the 2021 Redemption Transaction.

380.    North Highland and the Individual Defendants have caused losses to the Plan and North Highland and the Individual Defendants have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

381.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

382.    North Highland and the Individual Defendants are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

383.   The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XVII

### Declaratory Judgment Under 28 U.S.C. §§ 2201–2202 Against All Defendants

384.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

385.   Prior to Plaintiffs' filing of the Complaint in this Action, Plaintiffs did not have possession of the Fourth Amendment to the Plan Document.

386.   Section A-7 of the Fourth Amendment to the Plan Document reflects a "Mandatory Arbitration Procedure", under which Defendants claim this lawsuit is subject to mandatory arbitration.

387.   Sub-Section "h" of that provision provides:

No Class Arbitration or Class Relief. Each Claimant, or any party claiming for or through such Claimant, agrees that any Claim will be arbitrated individually and shall not be brought, heard, or arbitrated on a group, class or collective action basis (the "Class Action Waiver"). Each arbitration shall be limited solely to all Claims asserted by a single Claimant and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, Participant or Beneficiary other than the Claimant... This Class Action Waiver requirement shall govern irrespective of the Rules or decision to the contrary and is a material and non-severable term of the Arbitration Procedure. Except as to the validity and enforceability of the Class Action Waiver, the Arbitrator shall have exclusive authority to resolve any and all disputes or issues relating to the scope, validity or enforceability of any provision of the Arbitration Procedure. Any dispute or issue relating to the validity or enforceability of the Class Action Waive shall be determined exclusively by the [Federal Court]. In the event

this Class Action Waiver is determined to be invalid or unenforceable by the court…., the entire Arbitration Procedure shall be rendered null and void in all respects.

388.   Section A-9 states that "the Class Action Waiver" is "a non-severable provision of the Arbitration Procedure".

389.   Plaintiffs have a statutory right to seek, and do seek, relief on behalf of the Plan as provided in 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable relief as the Court may deem appropriate.

390.   Plaintiffs also seek additional remedies permissible under ERISA which would have the effect of providing additional benefits or monetary or other relief to the Plan and other North Highland employees, Participants and Beneficiaries.

391.   Therefore, Section A-8 is unenforceable. Pursuant to the Non-Severability Clause, the Class Action Waiver is not servable from the Arbitration Clause. The Arbitration Clause is therefore void on its own terms.

392.   The Arbitration Clauses' limitations on relief prohibits relief that ERISA expressly permits; operates as a prospective waiver of Plaintiffs' right to pursue statutory remedies; prevents effective vindication of statutory rights; is an unlawful exculpatory provision under ERISA § 410(a), 29 U.S.C. § 1110(a); and is unconscionable.

393.    An actual and justiciable controversy has arisen between Defendants and Plaintiffs concerning the arbitrability of Plaintiffs' claims. Accordingly, as alleged herein, a real and substantial, and immediate controversy is presented regarding the rights, duties and liability of the parties. A judicial declaration that Section A-8 is unenforceable or the Arbitration Clause is void pursuant to Sections A-8 and A-9 will resolve part of the present controversy and provide conclusive relief.

394.    Plaintiffs therefore seek a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, declaring that the Class Action Waiver, and therefore the Arbitration Clause, is unenforceable to the extent it allegedly bars the statutory relief to the Plan sought in Plaintiffs' representative claims brought on behalf of the Plan, Defendants are barred from enforcing the Arbitration Clause in the Plan Document by operation of its Non-Severability Clause, and/or that the Arbitration Clause is void.

## CLASS ACTION ALLEGATIONS

395.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in The North Highland Company Employee Stock Ownership and 401(k) Plan, and the beneficiaries of such participants, who held shares in the ESOP in North Highland ESOP Holdings, Inc. at any time after October 1, 2016 (or earlier as permitted by the applicable statute of limitation). Excluded from the Class are the Individual Defendants and their immediate

families; and legal representatives, successors, and assigns
of any such excluded persons.

396.    The Class is so numerous that joinder of all members is impracticable.
Although the exact number and identities of Class members are unknown to Plaintiffs
at this time, the Plan's Form 5500 filings indicate that as of December 31, 2016, there
were 1,882 participants and deceased participants whose beneficiaries were receiving
or entitled to receive benefits in the Plan and, as of December 31, 2020, there were
1,608 such individuals.

397.    Questions of law and fact common within the Class as a whole include,
but are not limited to, the following:

A. Whether Argent served as Trustee to the Plan for the 2016
Recapitalization, the Loss of Value Since 2016, and the 2021
Redemption Transaction;

B. Whether Argent, North Highland, and the Individual Defendants were
ERISA fiduciaries of the Plan;

C. Whether Argent, North Highland, and the Individual Defendants
caused the Plan to engage in prohibited transactions under ERISA by
causing the 2016 Recapitalization and the 2021 Redemption
Transaction;

D. Whether Argent, North Highland, and the Individual Defendants
engaged in good faith valuations of the stock held by the Plan in

connection with the 2016 Recapitalization, the Loss of Value Since 2016, and the 2021 Redemption Transaction;

E. Whether Argent, North Highland, and the Individual Defendants caused the Plan to receive less than fair market value for North Highland LLC units in the 2021 Redemption Transaction and less than adequate consideration for The North Highland Co., Inc. stock in the 2016 Recapitalization;

F. Whether Argent, North Highland, and the Individual Defendants breached their fiduciary duties under ERISA with regard to the 2016 Recapitalization, the Loss of Value Since 2016, and the 2021 Redemption Transaction;

G. Whether North Highland, and the Individual Defendants as parties in interest, knowingly participated in prohibited transactions and fiduciary breaches;

H. Whether Argent, North Highland, and the Individual Defendants breached their co-fiduciary duties with respect to the 2016 Recapitalization, the Loss of Value Since 2016, and the 2021 Redemption Transaction;

I. Whether North Highland and the Individual Defendants breached their fiduciary duties in failing to remove Argent as trustee;

J.  The proper valuation of the Plan's holdings in North Highland;

K.  The amount of losses suffered by the Plan and its participants as a result of Argent, North Highland, and the Individual Defendants' ERISA violations;

L.  The amount of profits gained by the Plan's fiduciaries and parties in interest as a result of Argent, North Highland, and the Individual Defendants' ERISA violations; and

M. The appropriate relief for Defendants' violations of ERISA.

398.  Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered (1) a loss in the value of their Plan accounts when North Highland Co., Inc. stock was exchanged for North Highland ESOP Holdings, Inc. stock and invested in North Highland LLC; (2) a loss in the value of their Plan accounts from the excessive compensation and award of units described in the Loss of Value Since 2016; and (3) a diminution in the value of their Plan accounts because the Plan received a lower than fair market value price for its North Highland LLC Units.

399.  Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

400.   Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

401.   In the alternative, class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to each member of the Class, making appropriate declaratory and injunctive relief with respect to the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' violations of ERISA.

402.   The names and addresses of the Class members are available from Defendants and the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## ENTITLEMENT TO RELIEF

403.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled to sue each of the Defendants who are fiduciaries and/or parties in interest pursuant to 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan

as provided in 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable relief as the Court may deem appropriate.

404.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled pursuant to 29 U.S.C. § 1132(a)(3) to sue any of the Defendants for appropriate equitable relief to redress the wrongs described herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.   Declare that Defendants Argent, North Highland, and the Individual Defendants breached their fiduciary duties under ERISA;

B.   Declare that Defendants Argent, North Highland, and the Individual Defendants caused the Plan to engage in and themselves engaged in prohibited transactions and thereby breached their duties under ERISA;

C.   Declare that Defendants North Highland, Argent, and the Individual Defendants knowingly participated in the breaches of ERISA by Defendants Argent, North Highland, and the Individual Defendants;

D.   Declare that Defendants Argent, North Highland, and the Individual Defendants breached their co-fiduciary duties under ERISA;

E.    Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan those losses resulting from the breaches of ERISA and restore any profits it has made through use of assets of the Plan;

F.    Declare the 2016 Recapitalization to be a breach of fiduciary duty and prohibited transaction and (1) require any fiduciary or party in interest who profited or engaged in a prohibited transaction to disgorge any profits made, (2) declare a constructive trust over the proceeds of any such transaction, and (3) provide any other appropriate equitable relief, whichever is in the best interest of the Plan;

G.    Declare the Loss of Value Since 2016 to be a breach fiduciary duty and (1) require any fiduciary or party in interest who profited to disgorge any profits made, (2) declare a constructive trust over the profits, and (3) provide any other appropriate equitable relief, whichever is in the best interest of the Plan;

H.    Declare the 2021 Redemption Transaction to be a breach of fiduciary duty and prohibited transaction and (1) require any fiduciary or party in interest who profited or engaged in a prohibited transaction to disgorge any profits made, (2) declare a constructive trust over the proceeds of

any such transaction, and (3) provide any other appropriate equitable relief, whichever is in the best interest of the Plan;

I.     Order Defendants to provide other appropriate equitable relief to the Plan, and any successor trust, and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

J.     Order the proceeds of any recovery for the Plan, and any successor trust, to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

K.     Order the removal of any of the breaching fiduciaries from their position as fiduciaries for the Plan and enjoin any of the breaching fiduciaries from acting as fiduciaries for any plan that covers any North Highland employees or any members of the Class;

L.     Appoint an Independent Fiduciary to manage the Plan to the extent necessary and the costs of such Independent Fiduciary to be paid for by any Defendants found to have breached their fiduciary duties or otherwise violated ERISA;

M.   Order (1) a constructive trust be placed on any proceeds resulting from the breaches in Count I through Count XVI, (2) disgorgement of profits made by a breaching fiduciary or party in interest resulting from the breaches in Count I through Count XVII, (3) any rescission as necessary resulting from the breaches in Count I through Count XVI, and/or (4) any other appropriate equitable relief against a breaching fiduciary or party in interest resulting from the breaches in Count I through Count XVII, whichever is in the best interest of the Plan;

N.   Order pursuant to 29 U.S.C. § 1056(d)(4) that any amount to be paid to the Plan accounts of the class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability;

O.   Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

P.   Enjoin Defendants from dissipating any of the proceeds received from the breaches in Count I through Count XVI held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

Q.    Enjoin Defendants from transferring or disposing of any of the proceeds received from the breaches in Count I through Count XVI to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

R.    Order Defendant Argent to disgorge any fees it received in conjunction with its services as trustee for the Plan as well as any earnings and profits thereon;

S.    Order Defendants to pay pre-judgment and post-judgment interest;

T.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives, and their counsel as class counsel; and

U.    Award such other and further relief as the Court deems equitable and just.


Dated:  September 27, 2023        Respectfully submitted,

**EVANGELISTA WORLEY, LLC**

By: */s/ James M. Evangelista*
James M. Evangelista (GA Bar No. 707807)
EVANGELISTA WORLEY, LLC
500 Sugar Mill Road, Ste. 245A
Atlanta, GA 30350
(404) 205-8400
jim@ewlawllc.com

**BAILEY & GLASSER LLP**
Mark G. Boyko (*pro hac vice*)
mboyko@baileyglasser.com
Bailey & Glasser LLP
34 N. Gore Ave., Suite 102
Webster Groves, Mo 63119
Telephone: (314) 863-5446
Facsimile: (314)-863-5483

Laura E. Babiak (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
rjenny@baileyglasser.com
Gregory Y. Porter (*pro hac vice*)
gporter@baileyglasser.com
Bailey & Glasser LLP
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

**IZARD KINDALL & RAABE**
Robert A. Izard (*pro hac vice*)
Douglas P. Needham (*pro hac vice*)
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
E-mail: rizard@ikrlaw.com
E-mail: dneedham@ikrlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date the foregoing PLAINTIFFS' FIRST AMENDED COMPLAINT was electronically filed with the Clerk using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.


Dated:  September 27, 2023                    By: <u>/s/ *James M. Evangelista*</u>
                                                          James M. Evangelista