# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| PHYLLIS MICHELE HOWELL, SIMON REISERT, and CAROLE SPEIGHT, on behalf of The North Highland Company Stock Ownership and 401(k) Plan, and on behalf of a class of all other persons similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARGENT TRUST COMPANY, NORTH HIGHLAND ESOP HOLDINGS, INC., THE NORTH HIGHLAND COMPANY, INC., THE NORTH HIGHLAND COMPANY LLC, THE NORTH HIGHLAND HOLDING CO., LLC, DAN REARDON, ALEX BOMBECK, BETH SCHIAVO, and LAUREN CHILDERS,<br><br>        Defendants. | Case No. 1:22-cv-3959-SDG |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION OF TIMELY-FILED CLAIMS AND DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Argent Trust Company, North Highland ESOP Holdings, Inc., the North Highland Company, Inc., the North Highland Company, LLC, the North Highland Holding Co., LLC, Dan Reardon, Alex Bombeck, Beth Schiavo, and Lauren Childers (collectively, "Defendants"), by and through their respective undersigned counsel, respectfully submit this Motion to Compel Arbitration of Timely-Filed Claims and Dismiss Plaintiffs' First Amended Complaint.

As explained in the accompanying Memorandum, because Plaintiffs did not even begin to exhaust plan administrative remedies until after the applicable six-year statute of repose, 29 U.S.C. § 1113(1), had already expired as to their claims regarding the October 1, 2016 recapitalization, Plaintiffs cannot pursue those claims in any forum.  And the plan document governing the North Highland Company Employee Stock Ownership and 401(k) Plan contains a binding arbitration clause that requires Plaintiffs to pursue in individual arbitration—not court—any claims concerning later events that Plaintiffs did timely exhaust through the plan's administrative process.

For these reasons and those further explained in Defendants' Memorandum in Support filed herewith, Defendants respectfully request that the Court enter an order compelling individual arbitration of those claims that Plaintiffs timely exhausted through the Plan administrative process and dismiss the First Amended Complaint (ECF No. 61).

Dated:  November 3, 2023        Respectfully submitted,

*/s/ Patrick DiCarlo*
Patrick DiCarlo (GA Bar No. 220339)
GROOM LAW GROUP, CHARTERED
95 E. Wesley Road
Atlanta, GA 30305
Tel: (404) 964-1300
Fax: (202) 659-4503
Email: pdicarlo@groom.com

Lars C. Golumbic (*pro hac vice*)
Sarah M. Adams (*pro hac vice*)
Shaun A. Gates (*pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Suite 1200
Washington, D.C. 20006
Tel: (202) 861-5437
Fax: (202) 659-4503
Email: lgolumbic@groom.com

*Attorneys for Defendants North Highland
ESOP Holdings, Inc., the North Highland
Company, Inc., the North Highland Company
LLC, the North Highland Holding Co., LLC,
Dan Reardon, Alex Bomback, Beth Schiavo,
and Lauren Childers*

*/s/ Rachel F. Gage*
Rachel F. Gage (GA Bar No. 547982)
Edward A. Bedard (GA Bar No. 926148)
ROBBINS ALLOY BELINFANTE
LITTLEFIELD LLC
500 14th Street NW
Atlanta, GA 30318
Telephone: 678-701-9381

Facsimile: 404-856-3255
rgage@robbinsfirm.com
ebedard@robbinsfirm.com

Gregory F. Jacob (*pro hac vice*)
Deanna M. Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
gjacob@omm.com
derice@omm.com

*Attorneys for Defendant Argent Trust
Company*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| PHYLLIS MICHELE HOWELL, SIMON REISERT, and CAROLE SPEIGHT, on behalf of The North Highland Company Stock Ownership and 401(k) Plan, and on behalf of a class of all other persons similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>ARGENT TRUST COMPANY, NORTH HIGHLAND ESOP HOLDINGS, INC., THE NORTH HIGHLAND COMPANY, INC., THE NORTH HIGHLAND COMPANY LLC, THE NORTH HIGHLAND HOLDING CO., LLC, DAN REARDON, ALEX BOMBECK, BETH SCHIAVO, and LAUREN CHILDERS,<br><br>          Defendants. | Case No. 1:22-cv-3959-SDG |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OF TIMELY-FILED CLAIMS AND DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**INTRODUCTION**

Plaintiffs are former participants in the North Highland Company Employee Stock Ownership and 401(k) Plan (the "Plan") who bring claims alleging that Defendants violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA") in connection with the Plan.  Plaintiffs' First Amended Complaint (ECF No. 61, "FAC") raises certain untimely claims relating to a recapitalization that occurred on October 1, 2016, and other claims pertaining to events that occurred in later years that are likewise not properly before this Court. Plaintiffs have understood from the moment they filed their original complaint on September 30, 2022 (ECF No. 1) that their claims did not belong in this Court because Plaintiffs had failed to exhaust Plan administrative remedies.  *See* Pltfs' Mot. to Stay (ECF No. 39) at 2-3.  Plaintiffs further acknowledged that ERISA's six-year statute of repose had expired on their 2016 claims before Plaintiffs even started the exhaustion process, and that those claims would be barred by the statute of repose if brought after Plaintiffs exhausted administrative remedies.  *See id.* This Court held that the fact that Plaintiffs "inexplicably ran themselves up against the six-year limitations period[,]" Opinion (ECF No. 59, "Opinion" at 10), did not justify a stay while they exhausted their administrative remedies under the Plan.

Before the Court could dismiss Plaintiffs' original complaint for failure to exhaust administrative remedies, Plaintiffs filed the FAC in which they allege that

they completed the Plan administrative exhaustion process while their motion to stay was pending.  *See* FAC ¶ 22.  Even so, Plaintiffs' claims still do not belong in this Court.  Plaintiffs' 2016 claims cannot be pursued in any forum because Plaintiffs did not timely exhaust the Plan's administrative remedies as to those claims.  And the Court should compel arbitration of Plaintiffs' post-2016 claims because, although those claims were timely exhausted under the Plan, the Plan document specifies that properly exhausted claims can be further pursued only through individual arbitration.

## BACKGROUND

### I.    PLAINTIFFS' CLAIMS

Plaintiffs are former participants in the Plan who filed this putative ERISA class action alleging that Defendants violated various provisions of ERISA by allegedly diluting the value of the Plan's shares through a recapitalization that occurred on October 1, 2016, and by later approving a redemption of the Plan's shares in 2021 at a value Plaintiffs allege was too low.

### II.    THE PLAN'S ADMINISTRATIVE AND ARBITRATION PROCEDURES

The Plan has at all times been governed by a written document providing that North Highland ESOP Holdings Inc. may "amend the Plan from time to time in its sole discretion."  *See* Plan Doc. (Ex. A to Declaration of Lars C. Golumbic ("Golumbic Decl.")) § 11.1.

On September 25, 2019, North Highland ESOP Holdings Inc. amended the Plan.  The amendment sets forth detailed procedures through which "[a]ny claim, dispute or controversy of any kind asserted by a Participant or Beneficiary … that arises out of or relates to the Plan, Trust or Trust Agreement including, without limitation, any … claim asserting breach of, or failure to follow, … any provision of the Code or ERISA (including, without limitation, claims for breach of fiduciary duty) … shall be resolved."  Plan Doc. (Ex. A to Golumbic Decl.) Amend. No. Four § A-1.  Those procedures include an "Administrative Procedure" and "Arbitration Procedure."  *See generally id.* §§ A-1 to A-10.

The "Administrative Procedure" affords Plan participants the opportunity to raise claims like the alleged ERISA violations asserted in this case with the Plan's administrator (the ESOP Committee), and to appeal any adverse claim determination through an administrative appeal process.  *See id.* §§ A-1 to A-5. The Plan further explains that any claims properly (and timely) raised and denied on appeal in the administrative process can be further pursued only through mandatory arbitration.  *Id.* § A-6.  Section A-6 provides that arbitration "shall be the sole and exclusive means for adjudicating" any claims, and that claimants "waive[] any right… to litigate such Claim in federal or state court."  *Id*.

Section A-7, in turn, outlines the Plan's mandatory Arbitration Procedure. That section provides in relevant part:

Each Claimant, or any party claiming for or through such Claimant, agrees that any Claim will be arbitrated individually and shall not be brought, heard, or arbitrated on a group, class or collective action basis (the "Class Action Waiver"). Each arbitration shall be limited solely to all Claims asserted by a single Claimant and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, Participant or Beneficiary other than the Claimant. This Class Action Waiver requirement shall govern irrespective of the Rules or decision to the contrary and is a material and non-severable term of the Arbitration Procedure. Except as to the validity and enforceability of the Class Action Waiver, the Arbitrator shall have exclusive authority to resolve any and all disputes or issues relating to the scope, validity or enforceability of any provision of the Arbitration Procedure.

*Id.* § A-7. Section A-7 also states that "[i]n the event this Class Action Waiver is determined to be invalid or unenforceable by the court specified in Section A-9, the entire Arbitration Procedure shall be rendered null and void in all respects." *Id.*

## III.    PROCEDURAL HISTORY

Plaintiffs filed their initial complaint on September 30, 2022—the same day ERISA's six-year statute of repose expired for Plaintiffs' claims regarding the 2016 recapitalization. Opinion at 5. But Plaintiffs had a problem—they had not yet ***even submitted*** their claims to the Plan administrator for an initial decision, let alone exhausted their Plan administrative remedies. Opinion at 5. Yet, on October 4, 2022—several days ***after*** they filed their complaint in federal court and ***after*** the statute of repose had already expired on their 2016 claims—Plaintiffs submitted their claims to the Plan administrator. Opinion at 5.

Nearly two months later, on November 28, 2022, Plaintiffs filed a motion to

stay the case pending exhaustion of administrative remedies under the Plan.  *See* Pltfs' Mot. to Stay (ECF No. 39).  Defendants opposed Plaintiffs' motion and requested that the Court dismiss the action for failure to exhaust administrative remedies because exhaustion is a prerequisite to suit under Eleventh Circuit law. *See* Defs' Opp. to Pltfs' Mot. to Stay (ECF No. 43).

While Plaintiffs' motion to stay was pending, on May 8, 2023, the ESOP Committee unanimously voted to deny Plaintiffs' claims.  FAC ¶ 22.  Plaintiffs appealed, and the ESOP Committee denied the appeal on September 5, 2023.  *Id.*

Then, on September 21, 2023, the Court issued its Opinion denying Plaintiffs' motion because "Plaintiffs inexplicably ran themselves up against the six-year limitations period."  Opinion at 10.  The Court found that Plaintiffs failed even to begin exhausting Plan administrative remedies until October 4, 2022— several days after the statute of repose expired—and provided "no explanation for their delay in seeking administrative review" and no "justification for their inexplicable delay in seeking relief."  *Id.* at 5-7.  In that same Opinion, the Court directed the parties to inform the Court, within seven days, whether the action should be dismissed without prejudice.  *Id.* at 10.

On September 27, 2023, before they submitted their Court-ordered response, Plaintiffs filed their FAC.  The FAC repeats the allegations in Plaintiffs' initial Complaint, differing mainly in that the FAC pleads that Plaintiffs have now

exhausted the Plan's administrative remedies.  *See* FAC ¶ 22.  With these allegations, Plaintiffs seek to breathe new life into their 2016 claims by pleading an exhaustion process they did not even begin within the six-year repose period, much less before filing suit.

## ARGUMENT

### I.    PLAINTIFFS CANNOT PROCEED IN ANY FORUM ON THE OCTOBER 1, 2016 RECAPITALIZATION CLAIMS BECAUSE PLAINTIFFS DID NOT FILE A TIMELY ADMINISTRATIVE CLAIM WITH THE PLAN

As this Court already found, Plaintiffs did not even ***begin*** to exhaust the Plan's administrative remedies until after ERISA's six-year statute of repose for Plaintiffs' claims regarding the 2016 recapitalization (Counts I-VI) had already expired on September 30, 2022.  *See* Opinion at 5 ("Plaintiffs did not initiate administrative review of their claims until October 4, 2022."); *see also* 29 U.S.C. § 1113(1).  ***Untimely*** exhaustion—commenced after the statute of repose expired—cannot satisfy the Eleventh Circuit's administrative exhaustion requirement.  Plaintiffs' amendment of their complaint therefore does not save their 2016 recapitalization claims from dismissal, because Plaintiffs cannot plead that they ***timely*** exhausted Plan administrative remedies.

As this Court has recognized, under Eleventh Circuit law, "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."  Opinion at 6 (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325,

1328 (11th Cir. 2006)); *see also, e.g.*, *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223-24 (11th Cir. 2008).  The exhaustion requirement "applies equally to claims for benefits and claims for violation of ERISA itself," *Bickley*, 461 F.3d at 1328, including "complaints for breach of fiduciary duty," *Lanfear*, 536 F.3d at 1224. "The exhaustion doctrine is strictly applied, with exceptions made only for cases when 'resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place.'" *Palmeri v. Coca-Cola Co.*, No. 1:01–CV–3498, 2006 WL 2523027, at *2 (N.D. Ga. Aug. 28, 2006) (quoting *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315-16 (11th Cir. 2000)); *see* Opinion at 6.

Plaintiffs now allege that they "exhausted the Plan's administrative review process" after filing their original complaint, FAC ¶ 22, but Plaintiffs still cannot pursue their claims regarding the October 1, 2016 recapitalization, for two reasons: (1) Plaintiffs waited too long to start exhausting Plan administrative remedies as to those claims, and (2) Plaintiffs cannot get around the expired statute of repose through relation back under Federal Rule of Civil Procedure 15(c).

### A.   Plaintiffs' 2016 Recapitalization Claims Are Barred in Light of Plaintiffs' Failure Even to Start Exhausting Plan Administrative Remedies Until After the Statute of Repose Expired

Plaintiffs' efforts to exhaust Plan administrative remedies were untimely with respect to their challenge to the October 1, 2016 recapitalization because

Plaintiffs did not even begin the Plan's administrative process until more than six years after the recapitalization took place. ERISA's six-year statute of repose for any claims regarding the recapitalization expired on September 30, 2022, and Plaintiffs first took steps to initiate administrative review several days later, on October 4, 2022. Opinion at 5. By then, it was too late. Because "plaintiffs in ERISA actions must exhaust available administrative remedies *before* suing in federal court," *Lanfear*, 536 F.3d at 1223-24 (emphasis added), and ERISA fiduciary breach claims can be brought only *before* the statute of repose expires, any administrative claim concerning an alleged fiduciary breach necessarily must be submitted *before* expiration of ERISA's applicable six-year statute of repose to serve as a predicate to suit. *See* 29 U.S.C. § 1113(1). Efforts to invoke a plan's administrative process after the time to do so has already passed do not satisfy the Eleventh Circuit's administrative exhaustion requirement; ERISA plaintiffs must *timely* exhaust administrative remedies to further pursue their claims. *See, e.g.*, *Ahrens v. UCB Holdings, Inc.*, No. 1:15-CV-348, 2016 WL 81488, *2 (N.D. Ga. Jan. 6, 2016) (dismissing ERISA fiduciary duty claims where plaintiffs did not start administrative exhaustion process until after statute of repose had already expired); *La Ley Recovery Sys.-OB, Inc. v. UnitedHealthcare Ins. Co.*, No. 14-23451-CIV, 2015 WL 12977396, at *4 (S.D. Fla. July 28, 2015) (holding plaintiff's delayed, post-suit efforts to exhaust plan remedies were ineffective),

*aff'd*, 654 F. App'x 1017 (11th Cir. 2016).

> **B.    Plaintiffs Cannot Avoid the Repose Bar by Filing Suit Before Exhausting Plan Administrative Remedies and Later Amending Their Complaint to Allege That They Exhausted After the Statute of Repose Had Run**

Plaintiffs' failure even to start exhausting Plan administrative remedies before the statute of repose for their 2016 recapitalization claims expired on its own bars Plaintiffs from pursuing those claims. Plaintiffs' claims regarding the 2016 recapitalization are also barred by ERISA's six-year statute of repose, because Plaintiffs first alleged exhaustion of administrative remedies in the *FAC* filed on September 27, 2023—nearly a year after ERISA's statute of repose expired as to the 2016 recapitalization claims. Plaintiffs seem to believe they can rely on Federal Rule of Civil Procedure 15(c) to argue that the amended pleading "relates back to the date of the original pleading" and thus is not time-barred. The law provides otherwise.

ERISA section 413(1) "is a statute of repose, [and] not a mere statute of limitations'[;] it 'bars any suit that is brought after a specified time since the defendant acted, without regard to any later accrual.'" *Klaas v. Allstate Ins. Co.*, 21 F.4th 759, 772 (11th Cir. 2021). While the bar created by a statute of limitations is "contingent," statutes of repose are "absolute." *Bradway v. Am. Nat. Red Cross*, 992 F.2d 298, 301 (11th Cir. 1993) (quotation omitted). Unlike statutes of limitations, statutes of repose "cannot be extended through tolling, estoppel,

relation back, or related doctrines." *Baldain v. Am. Home Mortg. Servicing, Inc.*, No. CIV. S-09-0931, 2010 WL 2606666, at *6 n.6 (E.D. Cal. June 25, 2010); *see, e.g.*, *California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507-08, 516 (2017) ("*CalPERS*") (statutes of repose are not subject to equitable tolling); *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 615 F. Supp. 3d 750, 764-67 (M.D. Tenn. 2022) (statute of repose bars application of equitable tolling and relation-back doctrines); *Georgia S. Univ. Hous. Found. One, LLC v. Capstone Dev. Corp.*, No. 6:11-cv-104, 2018 WL 4954079, at *5 (S.D. Ga. Oct. 12, 2018) ("[A]mended complaints cannot relate back so as to revive a cause of action already extinguished by a statute of repose[.]" (brackets and internal quotation marks omitted)); *In re Lehman Bros. Sec. & Erisa Litig.*, 800 F. Supp. 2d 477, 483 & n.27 (S.D.N.Y. 2011) (collecting cases holding "Rule 15(c) relation back doctrine does not apply to statutes of repose").[1]

Even if the relation back doctrine could ever apply to circumvent a statute of repose, which it cannot, this case presents no facts that would warrant such application. A plaintiff cannot rely on relation back to avoid the statute of repose

---

[1] Permitting relation back here would erode the statute of repose even more than the type of equitable tolling the Supreme Court has squarely held is not available. *See CalPERS*, 582 U.S. at 507-08, 516. Even pre-*CalPERS* cases that allowed for the (now-foreclosed) possibility of equitable tolling of ERISA's statute of repose recognized that tolling could not make a claim timely where, as here, the plaintiffs "did not begin to exhaust their administrative remedies until after the statute of [repose] had run[.]" *Ahrens*, 2016 WL 81488, at *2.

where doing so would have more than an incidental effect on defendants' substantive rights. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1248 (11th Cir. 2016) (explaining that "statutes of repose vest a substantive right in defendants to be free of liability" (quotation omitted)). Such an application of Rule 15(c) would run afoul of the Rules Enabling Act, 28 U.S.C. § 2072, which forbids interpretation or application of the Federal Rules of Civil Procedure "to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (quoting 28 U.S.C. § 2072(b)); *see, e.g.*, *JRS Partners*, 615 F. Supp. 3d at 765-67 (holding relation back to avoid statute of repose would violate Rules Enabling Act); *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 263-64 (S.D.N.Y. 2019) (same); *De Vito v. Liquid Holdings Grp., Inc.*, Civ. No. 15-6969, 2018 WL 6891832, at *24 (D.N.J. Dec. 31, 2018) (same); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 451-52 (S.D.N.Y. 2017) (same). This is not a scenario where Plaintiffs made a mistake in pleading their complaint, or later discovered additional factual detail to support claims already asserted. When Plaintiffs filed their initial complaint, they ***did not have any actionable claim at all*** because they had not exhausted administrative remedies under the Plan, which is a "prerequisite to filing an ERISA claim[.]" *Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784, 2018 WL 3949697, at *1 (N.D. Ga. May 2, 2018).

Because the Eleventh Circuit requires ERISA plaintiffs to exhaust plan administrative remedies first, *see Lanfear*, 536 F.3d at 1223-24, a plaintiff cannot simply file a suit and then exhaust and rely on relation back to get around the statute of repose.  Such an approach would undermine the important purposes of the exhaustion requirement, which, among other things, "reduces the number of frivolous lawsuits under ERISA, minimizes the cost of dispute resolution, … and allows prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated." *Bickley*, 461 F.3d at 1330 (brackets omitted) (quoting *Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985)); *cf. Sparrow v. U.S. Postal Serv.*, 825 F. Supp. 252, 255 (E.D. Cal. 1993) (explaining, in discussing FTCA exhaustion requirement, that if a plaintiff were "permitted to bring suit prematurely and simply amend his complaint after denial of the administrative claim, the exhaustion requirement would be rendered meaningless").  Absent circumstances justifying a stay pending exhaustion of administrative remedies (which the Court has already held do not exist here, *see* Opinion at 6-10), a failure to exhaust results in dismissal without prejudice. Following dismissal, plaintiffs may file a new complaint only if and when they have fully exhausted administrative remedies—if they can still timely do so.  *See, e.g.*, *Bickley*, 461 F.3d at 1330; *Fleming v. Rollins, Inc.*, 1:19-CV-05732, 2020 WL 7693147, at *2, 5 (N.D. Ga. Nov. 23, 2020); *Wallace v. Blue Cross & Blue Shield*

*of Ala.*, No. 14–0119, 2014 WL 5335823, *6-7 (N.D. Ala. Oct. 20, 2014).

If the Court had issued its decision denying a stay just a few weeks earlier, *i.e.*, before Plaintiffs' administrative appeal was resolved in early September 2023, Plaintiffs' original complaint would have been dismissed without prejudice for failure to exhaust administrative remedies. Any subsequent claims regarding the 2016 recapitalization would necessarily have been barred by the statute of repose if asserted in a later complaint. *See* Opinion at 5; *see also Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1337 (11th Cir. 2023); *Rufai v. Guided Therapeutics, Inc.*, No. 1:18-cv-02830, 2019 WL 13275814, at *4 (N.D. Ga. Dec. 17, 2019), *adopted*, 2020 WL 13663848 (N.D. Ga. Jan. 7, 2020). Plaintiffs cannot use relation back under Rule 15(c) to avoid that result and pursue claims they failed to timely exhaust through the Plan's administrative process for no reason other than their own "inexplicable delay." Opinion at 7; *cf. Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998) ("When relation back is too liberally allowed the important policy reasons for limitations periods are circumvented."). Plaintiffs' claims concerning the 2016 recapitalization cannot proceed.

## II.   PLAINTIFFS SHOULD BE COMPELLED TO PURSUE ALL REMAINING CLAIMS THROUGH INDIVIDUAL ARBITRATION

As explained above, Plaintiffs' failure to timely even start exhaustion of Plan administrative remedies with respect to the 2016 recapitalization claims precludes Plaintiffs from pursuing those claims in **any** forum. *See supra* Section

I.[2]  Any claims that Plaintiffs ***did*** timely exhaust (*i.e.*, claims relating to events

*after* the 2016 recapitalization) can be pursued only in individual arbitration as

specified in the Plan document.

> **A.    The Plan Document Contains an Enforceable Arbitration**
> **Provision that Binds Plaintiffs, and Plaintiffs' Claims Fall Within**
> **the Scope of That Provision**

The Federal Arbitration Act ("FAA") "embod[ies] [a] national policy

favoring arbitration[.]"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46

(2011) (second alteration in original).  Pursuant to Section 4 of the FAA, "[a] party

aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

written agreement for arbitration may petition any United States district court . . .

for an order directing that such arbitration proceed in the manner provided for in

such agreement."  9 U.S.C. § 4.  When deciding whether to compel arbitration,

courts in the Eleventh Circuit must consider (1) whether "the plaintiff entered into

a written arbitration agreement that is enforceable" and (2) whether "the claims

before the court fall within the scope of that agreement."  *Lambert v. Austin Ind.*,

---

[2] Just as plaintiffs are required to timely exhaust administrative remedies before filing an ERISA claim in court, the plain terms of the Plan document require submission of a timely administrative claim as a precondition to arbitration, which the Plan document identifies as the sole venue in which participants may further pursue (properly exhausted) claims related to the Plan.  *See* Plan Doc. (Ex. A to Golumbic Decl.) Amend. No. Four § A-6 ("[A]rbitration … cannot be initiated unless and until the Claimant (a) has submitted a timely Claim in accordance with the provisions of the Administrative Procedure[.]").

544 F.3d 1192, 1195 (11th Cir. 2008).  Where these elements are satisfied, the

court lacks the authority to hear the case.  *See Day v. Velissaris*, No. 1:22-CV-

4987, 2023 WL 3743147, at *2 (N.D. Ga. May 31, 2023) (recognizing that courts

in the Eleventh Circuit treat motions to compel arbitration as motions to dismiss

for lack of subject matter jurisdiction under Rule 12(b)(1)).

The arbitration provision at issue here is found in the Plan document.

ERISA requires that ERISA-governed benefit plans be "established and

maintained" pursuant to a "written instrument."  29 U.S.C. § 1102(a)(1).  These

written instruments, known as "plan documents," govern plan participants' rights

and obligations.  *See, e.g.*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83

(1995).  The Plan document here provides, in relevant part:

> As a condition to, and in exchange for, participation in this Plan . . .
> each Claimant agrees that any Claim denied in whole or in part as a
> result of the Administrative Procedure shall be subject to mandatory
> Arbitration Procedure . . .   For the avoidance of doubt, . . . each
> Claimant agrees that the Arbitration Procedure shall be the sole and
> exclusive means for adjudicating such Claim and specifically waives
> any right such Claimant otherwise would have had to litigate such
> Claim in federal or state court[.]

Plan Doc. (Ex. A to Golumbic Decl.) Amend. No. Four § A-6.  "Courts construe

ERISA plans[] as they do other contracts."  *US Airways, Inc. v. McCutchen*, 569

U.S. 88, 102 (2013).[3]

The Plan document's arbitration provision is enforceable against Plaintiffs. Each Plaintiff participated in the Plan while the arbitration provision was in effect. *See* FAC ¶¶ 32-34; Plan Doc. (Ex. A to Golumbic Decl.) Amend. No. Four (effective Sept. 1, 2019).  Because Plaintiffs seek the benefit of the Plan, they are bound by its terms.  *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512 (9th Cir. 2019) (*Dorman II*[4]) ("A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect."); *see also Holmes v. Baptist Health S. Fla., Inc.*, No. 21-22986-Civ, 2022 WL 180638, at *4 (S.D. Fla. Jan. 20, 2022).

Plaintiffs' claims also fall squarely within the definition of a "Claim" subject

---

[3] In determining whether the Plan arbitration provisions bind Plaintiffs, the Court must apply federal common law because ERISA contains an express and broad provision preempting state law.  *See* 29 U.S.C. § 1144(a).  When interpreting ERISA plan terms, courts do not apply "any particular state's contract law, but rather [] a body of federal common law tailored to the policies of ERISA." *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998); *see also Robertson v. Argent Tr. Co.*, No. 2:21-cv-01711-PHX-DWL, 2022 WL 2967710, at *4 (D. Ariz. July 27, 2022) ("[B]ecause the arbitration provision is found within an ERISA plan, its interpretation is governed by federal common law.").

[4] *Dorman II* was the second of two concurrently-issued opinions addressing whether a district court erred in refusing to enforce an arbitration provision contained in an ERISA plan.  In *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) (*Dorman I*), the Ninth Circuit overruled prior precedent and embraced the arbitrability of ERISA claims after the Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013).

to arbitration under the Plan document.  The Plan document defines "Claims" as

"[a]ny claim, dispute or controversy of any kind that arises out of or relates to the

Plan, Trust or Trust Agreement including, without limitation, any . . . claim

asserting a breach of, or failure to follow, . . . any provision of the Code or ERISA

(including, without limitation, claims for breach of fiduciary duty)."  Plan Doc.

(Ex. A to Golumbic Decl.) Amend. No. Four § A-1.  All of Plaintiffs' claims fit

this definition:  Plaintiffs allege that Defendants violated various provisions of

ERISA in connection with transactions that allegedly harmed the Plan.  *See* FAC

pp. 48-115.

### B.    ERISA Claims Are Arbitrable

Under Eleventh Circuit precedent, the Court next should evaluate whether

"Congress has clearly expressed an intention to preclude arbitration of the statutory

claim…"; otherwise, "a party is bound by its agreement to arbitrate."  *Caley v.*

*Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1372 (11th Cir. 2005) (quoting *Davis*

*v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002)).  This inquiry

applies here because all of Plaintiffs' claims are federal statutory claims under

ERISA.  *See* FAC pp. 48-115.  The Eleventh Circuit has held that arbitral awards

in ERISA claims are enforceable and has never suggested that ERISA claims are

not subject to the FAA.  *See Seamon v. Vaughan*, 921 F.2d 1217, 1218-19 (11th

Cir. 1991).  Indeed, every circuit to consider the question has concluded that

ERISA claims are arbitrable. *See Smith v. Bd. Of Dirs. Of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021) ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable." (collecting cases)).

### C. Plaintiffs Must Arbitrate on an Individual Basis

Plaintiffs appear to concede that the arbitration provision is binding and covers their claims. *See* FAC ¶ 24; Count XVII. But Plaintiffs assert in the FAC that the Plan's non-severable requirement that participants arbitrate their claims on an ***individual*** basis renders the arbitration clause "unenforceable." FAC ¶ 394. That is incorrect.

#### 1. Individual Arbitration Provisions Are Enforceable

The Plan Document makes plain that each Plaintiff must pursue their own claims on an individual basis. Section A-7(h) provides:

> Each Claimant . . . agrees that any Claim will be arbitrated individually and shall not be brought, heard, or arbitrated on a group, class or collective action basis (the "Class Action Waiver"). Each arbitration shall be limited solely to all Claims asserted by a single Claimant and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, Participant or Beneficiary other than the Claimant. . . . Any dispute relating to the validity or enforceability of the Class Action Waiver is shall be determined exclusively by the court specified in Section A-8.

Plan Doc. (Ex. A to Golumbic Decl.) Amend. No. Four.[5]

The Supreme Court has held repeatedly that individual arbitration provisions are enforceable even as to claimants who seek to vindicate important statutory rights. *See Am. Express Co.*, 570 U.S. at 233 (upholding individual arbitration of antitrust claims); *AT&T Mobility LLC*, 563 U.S. at 344 (invalidating state law that required availability of class-wide arbitration and enforcing class waiver); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (upholding individual arbitration of age discrimination claims brought under the ADEA). These decisions reflect the principle that arbitration provisions are contracts that courts "must 'rigorously enforce' . . . according to their terms." *Am. Express*, 570 U.S. at 233; *see Dorman II*, 780 F. App'x at 514 ("Because 'arbitration is a matter of contract,' the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis.").

### 2.    The Plan's Class Action Waiver Is Enforceable

Because ERISA contains no "contrary congressional command" requiring the Court to abandon the FAA's mandate to enforce arbitration agreements as written, *see Smith*, 13 F.4th at 620, the only way for Plaintiffs to avoid the Plan's

---

[5] Consistent with the language of the Plan document, the Eleventh Circuit has held that "[q]uestions of arbitrability . . . are presumptively for the courts." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018).

individual arbitration requirement would be for Plaintiffs to demonstrate that individual arbitration would prevent the "effective vindication" of their rights under ERISA. *See Am. Express*, 570 U.S. at 235. Plaintiffs cannot make that showing.

As an initial matter, there is reason for this Court to proceed with great caution when it comes to the effective vindication doctrine. While the Supreme Court has referenced this "judge-made exception to the FAA" in several cases, it has never once applied it to invalidate an arbitration provision. *See id.* In accordance with that fact, as the court noted in *Holmes*, "the Eleventh Circuit has expressed a hesitancy" to apply the effective vindication doctrine to void an arbitration clause. *Id.* at *2 (holding that arbitration provision requiring individual arbitration of ERISA breach of fiduciary duty claims was enforceable); *see Sierra v. Cruise Ships Catering and Servs., N.V.*, 631 F. App'x 714, 718 (11th Cir. 2015) (declining to apply the effective vindication doctrine and noting that the Supreme Court has never applied it). Other courts have similarly observed that "[r]ecent Supreme Court decisions suggest the effective vindication doctrine may rest on shaky footing." *Robertson*, 2022 WL 2967710, at *7 n.6.[6]

---

[6] As the *Robertson* court explained, the Supreme Court's decision in *American Express* "described the [effective vindication] doctrine as stemming from 'dictum,'" and in dissent Justice Ginsburg wrote that *American Express* "suggests that [the effective vindication exception] will no longer apply in any case." *Robertson*, 2022 WL 2967710, at *7 n.6.

Even assuming the effective vindication doctrine might apply in some circumstances, it does not apply here. The Plan is a defined contribution plan—a form of retirement plan that "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." *Hughes Aircraft Co.*, 525 U.S. at 439. The Supreme Court has recognized that, when it comes to defined contribution plans, ERISA section 502(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

The logic of *LaRue* dispels any argument that the inability to recover plan-wide losses in individual arbitration renders such arbitration impermissible. As the Seventh Circuit put it in *Smith*, individual arbitration is not "inherently incompatible with ERISA….": "Because Smith participated in a defined contribution plan, *LaRue* . . . governs, and the Court made clear in *LaRue* that § 1132(a) 'authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.'" 13 F.4th at 622. This holding is significant because if Plaintiffs succeeded on their claims in federal court, Plaintiffs personally would recover only the share of any proven monetary damages that is attributable to their individual accounts. If Plaintiffs' claims instead proceed (as they must) in individual arbitration, Plaintiffs can pursue ***an***

*identical* recovery (and each other Plan participant could seek a similar recovery with respect to their own individual Plan accounts).  The fact that Plaintiffs cannot pursue "Plan-wide monetary relief" in individual arbitration does not matter, because "such relief is only available to those who bring a representative or class action." *Holmes*, 2022 WL 180638, at *3.  And "as the Eleventh Circuit has already held that a waiver of the right to bring a class action in arbitration is permissible, a concomitant waiver of remedies associated with class actions is also permissible." *Id.*; *see Dorman II*, 780 F. App'x at 512-13 (enforcing an individual arbitration provision in an ERISA plan document); *Merrow v. Horizon Bank*, No. 22-123, 2023 WL 7003231 (E.D. Ky. Oct. 24, 2023) (same); *Avecilla v. Live Nation Ent., Inc.*, No. CV 23-1943, 2023 WL 5354401, at *5 (C.D. Cal. Aug. 7, 2023) (same); *Robertson*, 2022 WL 2967710, at *7-10 (same).

To be sure, some courts have expressed concern that individual arbitration of ERISA claims could in some instances entirely bar participants from obtaining certain forms of relief that ERISA makes available—in particular, non-monetary remedies that cannot be neatly divided on a participant-by-participant basis.  For example, the Seventh Circuit in *Smith* concluded that the arbitration provision at issue in that case was unenforceable because it precluded the plan-wide remedy of fiduciary removal.  *Smith*, 13 F.4th at 616-17.  That limited holding (which itself misunderstands the extremely limited scope of the effective vindication doctrine

and as a result misapplies it) has no application here, because the Plan has been terminated and there are no participants left, no Plan assets, and, crucially, no Plan fiduciaries left to be removed.[7]  And the FAC does not identify any other indivisible, non-monetary remedy that Plaintiffs seek.

Finally, to the extent there is any concern that an ERISA plan may be deprived of some necessary remedy, separate from participants' statutory right to pursue their claims, ERISA section 502(a)(2) authorizes the Secretary of Labor to bring actions on behalf of a plan and pursue plan-wide relief such as removal of a breaching fiduciary.  *See LaRue*, 552 U.S. at 253.  The Plan document's arbitration provision does not curtail those suits or the relief available through them.  The Supreme Court has noted an administrative agency's ability to pursue broader relief as another reason for enforcing individual arbitration provisions for federal statutory claims.  *See Gilmer*, 500 U.S. at 32 (enforcing individual arbitration of age discrimination claims under the Age Discrimination in Employment Act because "arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief"); *see also Williams v. Dearborn Motors 1,*

---

[7] *See* Form 5500 (Ex. B to Golumbic Decl.) Notes to Financial Statements at 9 ("On December 31, 2021, the Board of Directors of the Company approved the termination of the Plan. . . .  The Company maintained the ESOP component of the Plan until receipt of the IRS approval of the termination of the Plan in February 2023, after which the Plan's remaining assets were distributed in July 2023."); *see also* FAC ¶ 318 (alleging "the effective termination of the ESOP"); *id.* ¶¶ 16, 59, 108 (alleging acts taken in anticipation of Plan termination).

*LLC*, No. 20-1351, 2021 WL 3854805, at *5-6 (6th Cir. Aug. 30, 2021) (even if arbitrator could not "award the exact injunctive remedy plaintiffs desire[d]," arbitration agreement "'[would] not preclude the EEOC from bringing actions seeking class-wide and equitable relief'").

　　Where, as here, a plaintiff's rights can be fully vindicated in individual arbitration, the Court should take care to avoid making "the mistake of giving too little weight to the FAA's pro-arbitration policy." *Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 818-19 (11 Cir. 2001) (declining to strike down individual arbitration provision on effective vindication grounds). "Because the Supreme Court has never applied the 'effective vindication doctrine' to invalidate any provisions in an arbitration agreement, much less to invalidate the [type of provisions at issue here]," *Sierra v. Cruise Ships Catering & Servs., N.V.*, 631 F. App'x 714, 718 (11th Cir. 2015), this Court should not depart from Eleventh Circuit guidance to do so.

## CONCLUSION

　　The Court should enter an order compelling individual arbitration of those claims that Plaintiffs timely exhausted through the Plan administrative process and dismiss the First Amended Complaint.

## L.R. 5.1(B) CERTIFICATION

I certify that the memorandum complies with the approved font and point selections under L.R. 5.1(B).  Specifically, the brief uses Times New Roman 14-point font.

Dated:  November 3, 2023            Respectfully submitted,

*/s/ Patrick DiCarlo*
Patrick DiCarlo (GA Bar No. 220339)
GROOM LAW GROUP, CHARTERED
95 E. Wesley Road
Atlanta, GA 30305
Tel: (404) 964-1300
Fax: (202) 659-4503
Email: pdicarlo@groom.com

Lars C. Golumbic (*pro hac vice*)
Sarah M. Adams (*pro hac vice*)
Shaun A. Gates (*pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Suite 1200
Washington, D.C. 20006
Tel: (202) 861-5437
Fax: (202) 659-4503
Email: lgolumbic@groom.com

*Attorneys for Defendants North Highland*
*ESOP Holdings, Inc., the North Highland*
*Company, Inc., the North Highland Company*
*LLC, the North Highland Holding Co., LLC,*
*Dan Reardon, Alex Bomback, Beth Schiavo,*
*and Lauren Childers*

*/s/ Rachel F. Gage*
Rachel F. Gage (GA Bar No. 547982)
Edward A. Bedard (GA Bar No. 926148)
ROBBINS ALLOY BELINFANTE
LITTLEFIELD LLC
500 14th Street NW
Atlanta, GA 30318
Telephone: 678-701-9381
Facsimile: 404-856-3255
rgage@robbinsfirm.com
ebedard@robbinsfirm.com

Gregory F. Jacob (*pro hac vice*)
Deanna M. Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
gjacob@omm.com
derice@omm.com

*Attorneys for Defendant Argent Trust
Company*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this day, November 3, 2023, served the

foregoing document by electronically filing the same with the Clerk of Court via

the CM/ECF System, which will send notification of such filing to all counsel of

record at their email addresses on file with the Court.

*/s/ Patrick DiCarlo*

Patrick DiCarlo (GA Bar No. 220339)
