## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| PHYLLIS MICHELE HOWELL *on behalf of The North Highland Company Employee Stock Ownership and 401(k) Plan, and on behalf of a class of all other persons similarly situated, et al.,*<br><br>        Plaintiffs,<br><br>                    v.<br><br>ARGENT TRUST COMPANY, *et al.,*<br>        Defendants. | Civil Action No.<br>1:22-cv-03959-SDG |

### OPINION AND ORDER

This matter is before the Court on its September 21, 2023 Order [ECF 59] and Defendants' motion to dismiss and to compel arbitration [ECF 65]. After careful consideration of the parties' briefing, and with the benefit of oral argument, the Defendants' motion is **GRANTED in part and DENIED in part**. Plaintiffs' claims related to the Reorganization (Counts I-VI) are time barred and will be dismissed, but their remaining claims may proceed in this Court. The arbitration provision is void according to its own terms because the Class Action Waiver violates the effective vindication doctrine and may not be enforced.

1

# I.  Background

## A.  Plaintiffs' Allegations

Plaintiffs are all participants in The North Highland Company Employee Stock Ownership and 401(k) Plan (the Plan).[1] They purport to assert claims on behalf of the Plan and other similarly situated Plan participants, but actually seek to represent a class of Plan participants and their beneficiaries under Rule 23.[2] Defendant Argent Trust Company was the discretionary trustee of the Plan during the relevant time period.[3] Defendants Dan Reardon, Alex Bombeck, Beth Schiavo, and Lauren Childers (collectively, the Individual Defendants) were officers or directors[4] of Defendant The North Highland Company, Inc. (Oldco);[5] of Oldco's successor, Defendant North Highland ESOP Holdings, Inc. (Newco);[6] or of North Highland Holding Co., LLC (Holding LLC), the entity that came to hold the operating assets of Oldco.[7]

---

[1]  ECF 61, ¶¶ 32–34.

[2]  *Compare id.* at 1–2 *with* ¶¶ 395–402.

[3]  *Id.* ¶ 35.

[4]  *Id.* ¶¶ 55–64.

[5]  The First Amended Complaint incorrectly refers to the entity as "The North Highland **Holding** Company, Inc." *Id.* ¶ 2.

[6]  *Id.* ¶ 6.

[7]  *Id.*

At the beginning of 2016, the Plan owned 100% of Oldco's stock.[8] As an S-Corp owned by the Plan, Oldco enjoyed generous tax subsidies.[9] Plaintiffs allege that ERISA prohibits such S-Corps from diverting the benefits of those subsidies to their executives.[10] Defendants allegedly sought to avoid ERISA's constraints and capture the benefits of the subsidies for the Individual Defendants. Defendants purportedly did this through a reorganization transaction that diluted the Plan's economic interests in Oldco.[11]

Plaintiffs allege that the Individual Defendants, with Argent's agreement, reorganized Oldco on October 1, 2016.[12] Specifically, the Plan exchanged its shares of Oldco for shares in Newco.[13] At the same time, the Individual Defendants, again with Argent's agreement, created Holding LLC and moved Oldco's operating assets into Holding LLC.[14] The Plan received units in Holding LLC.[15] The Individual Defendants were thus able to transmogrify "synthetic" equity into real

---

[8]   *Id.* ¶ 2.

[9]   *Id.* ¶ 3.

[10]  *Id.*

[11]  *Id.* ¶ 4.

[12]  *Id.* ¶ 6.

[13]  *Id.*

[14]  *Id.*

[15]  *Id.* It seems that the Plan received units of Holding LLC through ownership of Newco shares. *See, e.g., id.* ¶¶ 8, 12.

equity in Holding LLC through the conversion of (1) options in Oldco into options in Holding LLC and (2) warrants and debt in Oldco into units of Holding LLC.[16] As a result (according to Plaintiffs), within a few days of the reorganization, the Plan went from owning 100% of the common stock of Oldco to indirectly owning 80% of the equity in Holding LLC.[17] The other 20% of Holding LLC was owned by the Individual Defendants and others.[18] This will be referred to as the Reorganization.

Defendants' conduct allegedly diluted the Plan's equity interests, diminished its control in the assets, and allowed the Individual Defendants (over time, and with Argent's "blessing") to further dilute the Plan's equity stake in Holding LLC.[19] By the end of 2020, the Plan's ownership interest in Holding LLC had dropped to 42%.[20] From 2016 to 2021, the Plan was not compensated for the alleged dilution of its equity ownership.[21] This will be referred to as the Devaluation.

---

[16] *Id.* ¶ 7.

[17] *Id.* ¶ 8.

[18] *Id.*

[19] *Id.* ¶¶ 8, 11, 13–15.

[20] *Id.* ¶ 14.

[21] *Id.* ¶ 15.

On March 31, 2021, Argent caused Newco to sell its entire interest in Holding LLC to Holding LLC itself.[22] In exchange, the Plan received a cash payment and promissory note that matured in 2023.[23] Plaintiffs allege that the Plan did not receive fair market value for this transaction and was therefore deprived of at least $38 million.[24] This will be referred to as the Redemption.

### B.    Plaintiffs' Causes of Action

In their Amended Complaint (the FAC), Plaintiffs assert 17 causes of action for violations of ERISA, including engaging in prohibited transactions and breaches of fiduciary duty. Most of their claims are based on the Reorganization, concerning the period leading up to and ending on October 1, 2016; the Devaluation, roughly covering the period after October 1, 2016 to March 31, 2021; and the Redemption, which took place on March 31, 2021.[25]

### 1.    Reorganization Claims

Specifically with regard to the Reorganization, Plaintiffs bring the following claims: Count I asserts a cause of action under ERISA Section 406 (29 U.S.C. § 1106) against Argent for engaging in a prohibited transaction by causing the Plan to

---

22    *Id.* ¶ 16.

23    *Id.*

24    *Id.* ¶ 19.

25    *Id.* ¶¶ 147–394.

participate in the Reorganization.[26] Count II asserts a similar claim against Oldco, Newco, Holding LLC, Reardon, and Schiavo.[27] Count III asserts a claim against Argent for breach of its fiduciary duties in connection with the Reorganization in violation of ERISA Section 404 (29 U.S.C. § 1104).[28] Count IV asserts a similar claim against Oldco, Newco, Holding LLC, Reardon, and Schiavo.[29] Count V asserts a cause of action for co-fiduciary liability under ERISA Section 405 (29 U.S.C. § 1105) against Oldco, Newco, Holding LLC, Reardon, and Schiavo related to the Reorganization.[30] Count VI is brought under ERISA Section 502 (29 U.S.C. § 1132) and alleges that Oldco, Newco, Holding LLC, Reardon, and Schiavo knowingly participated in breaches of fiduciary duty and prohibited transactions in connection with the Reorganization.[31]

---

[26]  *Id.* ¶¶ 147–161.

[27]  *Id.* ¶¶ 162–177. Technically, this cause of action is asserted against "North Highland," Reardon, and Schiavo. *Id.* at 52. The FAC defines "North Highland" as Newco, Oldco, and Holding LLC. *Id.* at 2. Other causes of action (Counts IV, V, VI, VIII, IX, XII, XIV, XV, XVI) also name "North Highland" rather than the individual Defendant entities.

[28]  *Id.* ¶¶ 178–193.

[29]  *Id.* ¶¶ 194–208.

[30]  *Id.* ¶¶ 209–230.

[31]  *Id.* ¶¶ 231–239.

### 2.      Devaluation Claims

For those causes of action based on the Devaluation, Count VII asserts a breach-of-fiduciary-duty cause of action against Argent for violation of Section 404 because of the loss of value suffered by the Plan.[32] Count VIII makes a similar claim against all other Defendants.[33] Count IX asserts a co-fiduciary liability claim under Section 405 against all Defendants.[34] Count X alleges that the Individual Defendants knowingly engaged in breaches of fiduciary duty and prohibited transactions in connection with the Plan's loss of value.[35]

### 3.      Redemption Claims

Count XI asserts that Argent engaged in prohibited transactions in violation of Section 406 in connection with the Redemption.[36] Count XII asserts a similar claim against the remaining Defendants.[37] Count XIII contends Argent breached its fiduciary duties as part of the Redemption, violating Section 404.[38] Count XIV asserts similar violations by the remaining Defendants.[39] Count XV alleges that

---

[32]  *Id.* ¶¶ 240–254.

[33]  *Id.* ¶¶ 255–269.

[34]  *Id.* ¶¶ 270–291.

[35]  *Id.* ¶¶ 292–300.

[36]  *Id.* ¶¶ 301–315.

[37]  *Id.* ¶¶ 316–332.

[38]  *Id.* ¶¶ 333–347.

[39]  *Id.* ¶¶ 348–361.

Oldco, Newco, Holding LLC and the Individual Defendants knowingly participated in breaches of fiduciary duty and prohibited transactions in connection with the Redemption.[40]

### 4. General Claims and Remedies

Count XVI alleges that Oldco, Newco, Holding LLC, and the Individual Defendants failed to terminate Argent as the Plan trustee, in breach of their Section 404 fiduciary duties.[41] Finally, Count XVII seeks a declaratory judgment that the arbitration provision in the Plan Documents is unenforceable.[42]

As remedies for Defendants' alleged conduct, Plaintiffs ask that Defendants (1) make good to the Plan the losses it suffered and (2) disgorge any profits.[43] Plaintiffs also seek (among other things) equitable relief, including an accounting and a constructive trust; an order directing that any recovery to the Plan be allocated to members of the class; removal of Defendants as fiduciaries; and the appointment of a fiduciary to manage the Plan.[44]

---

[40] *Id.* ¶¶ 362–371.

[41] *Id.* ¶¶ 372–383.

[42] *Id.* ¶¶ 384–394.

[43] *Id.* at 121–22.

[44] *Id.* at 122–23.

### C.    Procedural History

Plaintiffs initiated this action on September 30, 2022, the last possible day for them to assert claims related to the Reorganization given the six-year limitations period.[45] But their original complaint did not plead administrative exhaustion,[46] and Plaintiffs did not initiate administrative review of their claims until after they filed this case.[47] Two months later they sought a stay of these proceedings until resolution of their administrative claims.[48] The final administrative denial of their claims was issued on September 5, 2023.[49] The Court denied Plaintiffs' request for a stay on September 21, 2023, and ordered the parties to show cause why the case should not be dismissed without prejudice.[50]

On September 27, 2023, Defendants indicated that the case should be dismissed because Plaintiffs did not exhaust before filing suit.[51] Plaintiffs filed the FAC on the same day, which now alleges exhaustion.[52] Plaintiffs also responded

---

[45]   ECF 1.

[46]   *See generally* ECF 1.

[47]   ECF 38, at 3.

[48]   ECF 38.

[49]   ECF 61, ¶ 22.

[50]   ECF 59. At the time the Court entered the show-cause order, the parties had not informed it that Plaintiffs had completed the administrative process.

[51]   ECF 60.

[52]   ECF 61, ¶ 22.

to the Court's directive by asserting that the amended pleading was filed as of right under Fed. R. Civ. P. 15(a) such that there is no basis to dismiss for failure to exhaust.[53] On November 3, Defendants moved to dismiss and to compel arbitration.[54] They argue that claims related to the Reorganization are time-barred because Plaintiffs did not even begin the process of exhausting administrative remedies until after the limitations period had run.[55] As for the claims related to the Devaluation and Redemption, Defendants assert that they are subject to a mandatory arbitration provision in the Plan Documents.[56] Plaintiffs, naturally, oppose the motion.[57]

## II.     The Arbitration Procedure

The Plan Documents were not attached to either the original Complaint or the FAC.[58] Defendants, however, submitted an authenticated copy of the Plan and its amendments in support of their motion.[59] Plaintiffs do not object to the Court's consideration of those materials. The Court accordingly relies on the authenticated

---

[53]   ECF 62.

[54]   ECF 65.

[55]   *Id.* at 11–18.

[56]   *Id.* at 18–29.

[57]   ECF 67.

[58]   ECF 1; ECF 61.

[59]   ECF 65-1 & 65-2.

Plan Documents. *Adamson v. de Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (extrinsic evidence may be considered without converting a motion to dismiss to one for summary judgment if the evidence is central to the plaintiff's claim and its authenticity is not in question); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (same).

Most pertinent here is the Fourth Amendment to the Plan, which became effective as of September 1, 2019.[60] The amendment instituted new claims review procedures and requires that "[a]ny claim, dispute or controversy of any kind asserted by a Participant or a Beneficiary . . . that arises out of or relates to the Plan" be resolved pursuant to those claims review procedures.[61] If a claim is finally denied under the administrative review process, the dispute must be arbitrated:

> As a condition to, and in exchange for, participation in this Plan, receipt of additional allocations to his or her Account, and the receipt of benefits under the Plan, each Claimant agrees that any Claim denied in whole or in part as a result of the Administrative Procedure shall be subject to the mandatory Arbitration Procedure . . . . For the avoidance of doubt, in exchange for participation in this Plan, receipt of additional allocations to his or her Account, and the receipt of benefits under the Plan each Claimant agrees that the Arbitration Procedure shall be the sole and exclusive means for adjudicating such Claim and specifically waives any right such Claimant

---

[60]   ECF 65-2, at 93–97.

[61]   *Id.* at 93 (Section A-1). Capitalized terms not defined in this Order have the meaning ascribed to them by the Plan.

> otherwise would have had to litigate such Claim in
> federal or state court . . . .[62]

This will be referred to as the Arbitration Procedure. The Fourth Amendment also

prohibits class arbitrations and various types of relief:

> Each Claimant . . . agrees that any Claim will be
> arbitrated individually and shall not be brought, heard,
> or arbitrated on a group, class or collective action basis
> (the "Class Action Waiver"). Each arbitration shall be
> limited solely to all Claims asserted by a single Claimant
> *and that Claimant may not seek or receive any remedy*
> *which has the purpose or effect of providing additional*
> *benefits or monetary or other relief to any employee,*
> *Participant or Beneficiary other than the Claimant*. This
> Class Action Waiver requirement shall govern
> irrespective of the Rules or decision to the contrary and
> is a material and non-severable term of the Arbitration
> Procedure. Except as to the validity and enforceability of
> the Class Action Waiver, the Arbitrator shall have
> exclusive authority to resolve any and all disputes or
> issues relating to the scope, validity or enforceability of
> any provision of the Arbitration Procedure. Any dispute
> or issue relating to the validity or enforceability of the
> Class Action Waiver shall be determined exclusively by
> the court . . . . In the event this Class Action Waiver is
> determined to be invalid or unenforceable . . . the entire
> Arbitration Procedure shall be rendered null and void in
> all respects.[63]

---

[62]  *Id.* at 94–95 (Section A-6).

[63]  *Id.* at 96 (Section A-7(h)) (emphasis added).

This will be referred to as the Class Action Waiver. The parties' dispute about whether the Devaluation and Redemption claims must be arbitrated hinges on the enforceability of the Class Action Waiver.

### III. Must Arbitrability Be Decided First?

Defendants argue that the Court should decide whether the Reorganization claims are time-barred before ruling on whether the remaining claims must be arbitrated.[64] Plaintiffs contend that the Court must decide whether the Arbitration Procedure is enforceable before addressing the time bar because (assuming the procedure is valid) the Plan requires the arbitrator to decide the limitations issue.[65] Plaintiffs are correct. Whether the Reorganization claims are covered by the Arbitration Procedure must, in the first instance, be determined by the arbitrator— provided that the Arbitration Procedure is valid.

Questions about whether the parties have submitted a particular dispute to arbitration are for judicial determination *unless* the parties have clearly and unmistakably delegated that issue to the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). That is precisely what the parties here have done. All claims related to the Plan are subject to the Arbitration Procedure. Whether the Reorganization claims fall within that broad scope is to be determined

---

[64]   *See generally* ECF 65, at 11–18.

[65]   ECF 67, at 10.

by the arbitrator: The Arbitration Procedure incorporates the AAA's Employment Arbitration Rules, which provide that the arbitrator has the power to rule on his own jurisdiction.[66] The Fourth Amendment also provides that the arbitrator shall have the "exclusive authority" to resolve any disputes about the scope of the Arbitration Procedure.[67] And the law is clear that, absent an agreement to the contrary, arbitrators are "empowered . . . to resolve disputes over whether a particular claim may be successfully litigated anywhere at all (due to concerns such as statute of limitations . . . ), or has any substantive merit whatsoever." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004).

In short, *if* the Arbitration Procedure is enforceable, Defendants must present their time-bar arguments in arbitration. Accordingly, the Court turns to the validity of the Arbitration Procedure.

## IV.   The Arbitration Procedure Is Not Enforceable.

Although the Arbitration Procedure is, in large part, unproblematic, it contains a fatal flaw because it prohibits recovery of certain forms of relief that ERISA makes available. Because the Class Action Waiver in the Arbitration Procedure does not permit a Plan participant to "seek or receive any remedy which

---

[66]   ECF 65-2, at 95 (Section A-7(c)); American Arbitration Association, Employment Arbitration Rules and Mediation Procedures, Rule 6.a., https://perma.cc/ 6QGM-WZFT (last visited Sept. 15, 2024).

[67]   ECF 65-2, at 96 (Section A-7(h)).

has the purpose or effect of providing additional benefits or monetary or other relief to any employee, Participant or Beneficiary other than the Claimant,"[68] it improperly cuts off damages that belong to the Plan because such damages would inure to the benefit of Participants other than Plaintiffs. The Class Action Waiver is therefore unenforceable. And since it is a material, non-severable term of the Arbitration Procedure, if it cannot be enforced, the entire Arbitration Procedure is "null and void in all respects."[69]

### A.     The Alleged Harm Was to the Plan and Remedies Belong to It.

Plaintiffs allege that Defendants breached their fiduciary duties under ERISA Sections 403, 404, and 406. 29 U.S.C. §§ 1103, 1104, and 1106. Plaintiffs expressly seek "relief on behalf of the Plan as provided in [ERISA Section 409], including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable relief as the Court may deem appropriate."[70] Section 409 states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the

---

[68]   *Id.*

[69]   *Id.*

[70]   ECF 61, ¶ 403.

> fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109(a) (emphasis added).

Section 502 permits a plan participant to seek such relief on behalf of the plan. 29 U.S.C. § 1132(a)(2) ("A civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."). This is the provision that Plaintiffs assert authorizes them to bring their claims.[71] "Sections 409(a) and 502(a)(2) work in tandem to allow plan participants to bring civil actions against plan fiduciaries who breach their duties to the plan." *Cedeno v. Sasson*, 100 F.4th 386, 396–97 (2nd Cir. 2024). "[I]t is the plan—and not the individual claimant—to whom the breaching fiduciary owes its duty." *Berkelhammer v. ADP TotalSource Grp., Inc.*, 74 F.4th 115 (3rd Cir. 2023) (citations omitted). A plan itself cannot pursue claims for violations of § 409—something Defendants acknowledged during oral argument.[72] 29 U.S.C. § 1132(a)(2).

Plaintiffs allege that the Reorganization, Devaluation, and Redemption reduced the assets held by and the overall value of the Plan to the benefit of Defendants.[73] Although Defendants argue that Plaintiffs are only seeking to

---

[71]  *Id.* ¶ 144.

[72]  ECF 87, at 12–13.

[73]  *See, e.g.,* ECF 61, ¶¶ 8, 10, 19.

recover the value of the plan assets that should have been allocated to their individual accounts,[74] that is not what the FAC alleges nor does it accurately describe the relief Plaintiffs seek for the Plan.[75] Defendants cannot convert claims brought for the benefit of the Plan into personal, individual claims simply because a benefit to the Plan may ultimately benefit the individual Participants as well. *See, e.g., Hawkins v. Cintas Corp.*, 32 F.4th 625, 631–33 (6th Cir. 2022); *see also id.* at 634 ("The fact that the individual Plaintiffs will indirectly benefit from a remedy accruing to the Plan as a whole does not render the claims individualized.").

That it is possible for a participant in a defined-contribution plan to pursue claims based on the impaired value of his *individual* account stemming from harm to the plan's value, *LaRue v. DeWolff, Boberg & Assoc.*, 552 U.S. 248 (2008), does not mean that is the only mechanism available to pursue violations of § 409. ERISA clearly provides that a *participant* (not just the Department of Labor) may bring suit (under § 502) for relief that is appropriate under § 409. Such "appropriate

---

[74] ECF 65, at 26–27.

[75] *See, e.g.*, ECF 61, at 121–23 (ad damnum clause) (requesting, *inter alia*, an order directing that Defendants "make good to the Plan" losses caused by their breaches of ERISA and restore profits; requiring those who breached their fiduciary duties to disgorge profits and imposing a constructive trust over those profits; awarding equitable relief to the Plan or any successor trust, including an accounting, imposition of a constructive trust, and rescission; directing the removal of breaching fiduciary Defendants from acting as fiduciaries; and appointing an independent fiduciary to manage the Plan).

relief" is to make good to the *plan* for losses caused by the breach of fiduciary duty and to restore to the *plan* profits obtained by the faithless fiduciary. This conclusion is well-supported by the plain language of ERISA and the case law—including that from the Eleventh Circuit.

As the Sixth Circuit explained in describing breach of fiduciary duty claims brought by plan participants

> [T]he Plaintiffs are seeking Plan-wide relief through a statutory mechanism that is designed for representative actions on behalf of the Plan. The weight of authority suggests that these claims should be thought of as Plan claims, not Plaintiffs' claims.

*Hawkins*, 32 F.4th at 627. And in *Berkelhammer*, the Third Circuit upheld the lower court's conclusion that claims under § 502(a)(2) for alleged losses to a plan belonged to the plan itself. 74 F.4th 115. Facing similar issues, another judge of this Court reached the same conclusion. *Williams v. Shapiro*, Civ. A. No. 1:23-cv-03236-VMC, 2024 WL 1208297, at *6 (N.D. Ga. Mar. 20, 2024) (noting that claims for breach of fiduciary duty under Sections 409 and 502(a)(2) belong to the plan), *appeal pending* Case No. 24-11192 (11th Cir.). *See also LaRue*, 552 U.S. at 256 (holding that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries"); *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695 (11th Cir. 2014), *abrogated in part on other grounds by Tibble v. Edison Int'l*, 575 U.S. 523 (2015) (citing 29 U.S.C. § 1132(a)(2); *Mas. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985))

18

("ERISA authorizes a plan participant to bring a civil suit against plan fiduciaries for breaches of the fiduciaries' duties of loyalty and prudence. However, the plan participant cannot seek to recover personal damages for misconduct, but must instead seek recovery that 'inures to the benefit of the plan as a whole.'").

Defendants' reliance on *Thole v. U.S. Bank N.A.* is thus misplaced.[76] That case dealt with whether the plaintiffs had Article III standing to pursue ERISA claims for alleged breaches of fiduciary duty to a defined-benefit plan when the plaintiffs had received all of the benefits to which they were entitled. 590 U.S. 538 (2020). The court rejected the plaintiffs' reliance on cases involving the Article III standing of assignees since the plan's claims hadn't been assigned to them. *Id.* at 543. But no one here is arguing that the Plan assigned claims to Plaintiffs or that Plaintiffs lack standing. And for a defined-contribution plan, harm to the Plan is more than sufficient to support Plaintiffs' Article III standing. Their right to sue for the harm done to the Plan comes from ERISA itself. Whether such claims are described as derivative, representative, belonging to the Plan, or otherwise is somewhat beside the point; under §§ 409 and 502, a plan participant has the right to pursue claims

---

[76]   ECF 68, at 12.

for damages to the plan and the damages themselves belong to the plan but may ultimately inure to the participants.[77]

### B.    ERISA Claims Can Be Arbitrated.

Claims under ERISA are arbitrable. Contracts can require the arbitration of claims alleging the violation of a federal statute unless Congress specifies otherwise. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citing *CompuCredit Corp. v. Greenwood*, 565 US. 95, 97–98 (2012)). Since ERISA contains no "congressional command" that precludes arbitration, numerous Courts of Appeals have concluded that ERISA claims are arbitrable. *See, e.g., Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021) ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable"; citing cases from the 2nd, 3rd, 5th, 8th, and 10th Circuits); *see also Hawkins v. Cintas Corp.*, 32 F.4th 625, 629 (6th Cir. 2022) (same); *Dorman v. Charles Schwab Corp. (Dorman I)*, 934 F.3d 1107 (9th Cir. 2019) (overruling prior precent in light of *Italian Colors* and concluding that ERISA claims are arbitrable). While the Eleventh

---

[77] While courts have not reached a consensus on the appropriate description for the unusual interaction of §§ 409 and 502, the Ninth Circuit has aptly equated ERISA's enforcement mechanism to *qui tam* actions: "A party filing a *qui tam* suit under the [False Claims Act] seeks recovery only for injury done to the government, and a plaintiff bringing a suit for breach of fiduciary duty similarly seeks recovery only for injury done to the plan." *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092–93 (9th Cir. 2018) (citations omitted). *See also Hawkins*, 32 F.4th at 632 (discussing *Munro*).

Circuit appears not to have directly addressed this issue, *Williams*, 2024 WL 1208297, at *5, that court has confirmed an arbitration award granted in a proceeding in which ERISA governed the claims. *Seamon v. Vaughan*, 921 F.2d 1217 (11th Cir. 1991). This Court therefore has no difficulty concluding that ERISA claims are generally subject to arbitration.

Whether the claims *here* must be arbitrated is a different matter.

### C.   The Plan Consented to Arbitration.

Plaintiffs argue that they cannot be compelled to arbitrate because they did not agree to do so.[78] Defendants insist that Plaintiffs participated in the Plan while the Arbitration Procedure was in effect, so Plaintiffs are bound by that process.[79] The parties also disagree about whether federal or Georgia law controls this question.[80] But these arguments miss the mark. Plaintiffs are suing for harm done to the Plan, not to themselves or to each of the individual Participants in the Plan.[81] As such, whether Plaintiffs individually consented to arbitrate is irrelevant.[82] What

---

[78]   ECF 67, at 24–28.

[79]   ECF 65, at 21.

[80]   *Compare id.* at 21 n.3 *with* ECF 67, at 24–25.

[81]   ECF 67, at 15–17.

[82]   ECF 65, at 21 (Defendants arguing that Plaintiffs consented to arbitration by participating in the Plan while the Arbitration Procedure was in effect); ECF 67, at 24–26 (Plaintiffs asserting that they did not agree to arbitrate).

matters is whether the *Plan* consented to arbitrate. And it did, at least as to some of Defendants.[83]

When the Reorganization took place, the Plan Documents were restated with an effective date of September 30, 2016.[84] At that point, the Plan was maintained by Newco.[85] Newco reserved the right to amend the Plan at any time in its sole discretion.[86] Such provisions are valid and comply with ERISA. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (citations omitted) ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."); *Klaas v. Allstate Ins. Co.*, 21 F.4th 759, 767–68 (11th Cir. 2021) (concluding that a reservation of rights in plan documents permitted the termination of life insurance benefits). Since the Plan

---

[83] Ultimately, the Arbitration Procedure is unenforceable, so the Court need not determine whether the Plan consented to arbitration with each Defendant. *See Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 505-06 (3d Cir. 2023) (footnotes omitted) (declining to decide whether the plaintiff consented to arbitrate because the arbitration provision "amounts to an illegal waiver of statutory remedies" and was thus unenforceable); *see also Smith*, 13 F.4th at 623 (in concluding that the arbitration provision was unenforceable, expressing "no view" on whether the plaintiff had consented to it). But the Court reaches the question of whether the Plan consented to arbitration because a lack of consent would provide an independent basis to deny Defendants' motion to compel.

[84] ECF 65-2, at 2.

[85] *Id.* at 8 (Section 1.1).

[86] *Id.* at 64 (Section 11.1).

was amended (pursuant to the process set forth in the Plan Documents) to include

the Arbitration Procedure, this reflects the Plan's consent to arbitrate claims arising

out of the Plan or asserting violations of ERISA; it also reflects the consent to

arbitrate claims against any Plan fiduciary, including Argent (the Trustee), Newco

(the Company), and the Individual Defendants (fiduciaries under the Plan).[87]

  While the Eleventh Circuit has not directly addressed this question, the

Court's conclusion is supported by decisions from other Courts of Appeals. For

example, *Berkelhammer* involved claims on behalf of an ERISA plan against the

plan's portfolio manager. The contract between the plan and the manager required

the parties to arbitrate any disputes. Since the claims belonged to the plan and the

plaintiffs stood "in the [p]lan's contractual shoes," the Third Circuit affirmed the

district court's conclusion that the claims had to be arbitrated, even though the

individual plaintiffs had not consented to do so. 74 F.4th at 116. *Cf. Hawkins*, 32

F.4th at 627 (concluding that claims brought on behalf of a plan were not required

to be arbitrated because the arbitration agreement was between the individual

plaintiffs—not the plan—and the employer).

---

[87] *Id.* at 93 (Section A-1) (stating that the Arbitration Procedure "represent[s] the sole and exclusive means for adjudicating any Claim asserted by a Claimant, whether such Claim is asserted against (x) any fiduciary under the Plan including . . . the Committee and/or Trustee; and/or (y) the Company, an Employer or any other individual or entity acting as Plan sponsor . . . .").

**D.    The Class Action Waiver Acts as an Impermissible Prospective Waiver of Statutory Rights and Remedies.**

At this point, it is worth recapping exactly what the (somewhat inaptly named) Class Action Waiver prohibits. Not only does it require arbitration of claims related to the Plan, it probits such disputes from being brought on "a group, class or collective action basis."[88] Further, the Claimant in arbitration cannot "seek or receive any remedy which has the purpose *or effect* of providing additional benefits or monetary or other relief" to anyone else.[89] The Class Action Waiver is a material provision of the Arbitration Procedure and cannot be severed—if the waiver is invalid, the entire arbitration requirement is too.[90]

**1.    The Plan Improperly Limits the Relief Plaintiffs May Seek.**

The Supreme Court has made clear that contractual waivers of class arbitration are enforceable under the FAA. *Italian Colors*, 570 U.S. 228; *see also Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 818-19 (11th Cir. 2001) (considering claims under the Truth-in-Lending Act). Assuming without deciding that this principle is applicable to ERISA claims, the Plan's prohibition on class arbitration would not by itself be a basis to invalidate the Class Action Waiver.[91]

---

[88]    *Id.* at 96 (Section A-7(h)).

[89]    *Id.* (emphasis added).

[90]    *Id.*

[91]    There is some tension between the application to ERISA claims of *Italian Colors*' approval of contractual waivers of class arbitration and the dicta in *Russell*, 473

*Harrison v. Envision Mgmt. Holding, Inc.*, 59 F.4th 1090 (10th Cir. 2023) ("The prohibition on class or collective actions, in our view, is not cause for invoking the effective vindication exception.").

The fatal problem with the Class Action Waiver is not the process that it requires—its limits on the forum (arbitration) and the form (individually) in which Plaintiffs must proceed—it's that the waiver acts as a prospective restriction on the types of *substantive* relief Plaintiffs may seek for the benefit of the Plan. *Viking River Cruises, Inc., v. Moriana*, 596 U.S. 639, 653 (2022) ("An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum.") (cleaned up).

ERISA provides for equitable and remedial relief to the plan when a fiduciary has breached its duties. 29 U.S.C. § 1109(a). Such relief would necessarily benefit plan participants other than the immediate plaintiff. But the Class Action Waiver prohibits Plaintiffs from acting in a representative capacity and Plaintiffs

---

U.S. at 142 n.9 that § 502 is "indicative of Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." Application of the former principle seemingly undermines the latter. Fortunately, the Court need not attempt to resolve this conundrum to resolve the present dispute.

cannot ask for or obtain any type of relief that would have the effect of providing a benefit to any other Plan participant.[92] The waiver would prohibit recovery of *all* the damages to the Plan and limit it to only the amount of the loss in the value to an individual Plaintiff's account within the Plan. *Henry*, 72 F.4th at 507 ("Restitution of 'all plan losses' would necessarily result in monetary relief to non-party plan participants."). In fact, Defendants conceded during oral argument that Plaintiffs could not recover Plan losses in arbitration.[93] *See Parker v. Tenneco, Inc.*, --- F.4th ---, No. 23-1857, 2024 WL 3873409, at *11 (6th Cir. 2024) (citations and internal quotation marks omitted) (in declining to enforce a similar arbitration provision, noting that the plaintiff had requested "at least two remedies under § 409(a) that the individual arbitration provision prohibits: all losses to the Plans caused by the breaches of fiduciary duties, and restoration to the Plans of any profits resulting from such breaches"). The Class Action Waiver thus prevents Plaintiffs—who are authorized to sue under § 502—from requiring the allegedly faithless fiduciaries "to make good *to [the P]lan*" losses resulting from and "to restore *to [the P]lan*" profits generated by their breaches as mandated by § 409. Those are substantive rights to recovery that cannot prospectively be waived.

---

[92]   *Id.* at 96 (Section A-7(h)).

[93]   ECF 87, at 41.

And, although the Plan has been terminated,[94] that fact itself does not foreclose forms of recovery Plaintiffs seek that would relate to the Plan as a whole and affect other Plan Participants. The equitable relief of a constructive trust, an accounting, and appointing an independent fiduciary to manage any damages recovered[95] are all possible forms of relief under ERISA and would necessarily benefit Plan Participants other than Plaintiffs. But such recoveries would be barred by the plain language of the Class Action Waiver.

The Class Action Waiver thus impermissibly takes away what ERISA gives. Under the "effective vindication" doctrine, a court may refuse to enforce an arbitration agreement that operates as a prospective waiver of a party's right to pursue statutory remedies. *Italian Colors*, 570 U.S. at 235. Since that's exactly what the Class Action Waiver does here, the Court holds that the waiver is unenforceable. Every reported decision by a Court of Appeals faced with similar restrictions on the remedies a plan participant could seek in arbitration *for the benefit of the plan* has reached the same conclusion.

---

[94] ECF 65, at 28 (noting that "the Plan has been terminated and there are no participants left, no Plan assets, and crucially, no Plan fiduciaries left to be removed"); *id.* n.7 (indicating the Plan was terminated in February 2023); ECF 87, at 36 (Plaintiffs' counsel acknowledging the Plan has been terminated).

[95] ECF 61, at 121–23.

### i.  Seventh Circuit

In the first case squarely addressing this issue, *Smith v. Board of Directors of Triad Manufacturing, Inc.*, the Seventh Circuit considered a retirement plan that contained an arbitration provision comparable to the one here. The plan prohibited representative capacity claims and the recovery of any remedy that "has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." 13 F.4th at 615. The Seventh Circuit upheld the district court's conclusion that this provision was unenforceable:

> Recall that Smith invokes § 1132(a)(2)'s cause of action to seek relief for (alleged) fiduciary breaches under § 1109(a). That relief, by statute, includes "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). Yet the plan's arbitration provision, which also contains a class action waiver, precludes a participant from seeking or receiving relief that "has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." Removal of a fiduciary—a remedy expressly contemplated by § 1109(a)—would go beyond just Smith and extend to the entire plan, falling exactly within the ambit of relief forbidden under the plan.

*Id.* at 621.

In short, "the plain text of § 1109(a) and the terms of the arbitration provision cannot be reconciled: what the statute permits, the plan precludes." *Id.* Moreover,

in *Smith* as here, the plan provided that the arbitration procedure would be null and void if that provision were found to be invalid. *Id.* at 616. As a result, the arbitration procedure could not be enforced and the court upheld the denial of the defendants' motion to compel arbitration.

### ii.    Tenth Circuit

Likewise, the Tenth Circuit in *Harrison v. Envision Management Holding, Inc.*, upheld the district court's refusal to enforce an arbitration agreement against a plaintiff seeking plan-wide relief on behalf of the plan. 59 F.4th 1090 (10th Cir. 2023). As here, in *Harrison*, the trustee was Argent and the plan documents prohibited participants from seeking "any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to others. *Id.* at 1105. That language was not severable from the arbitration provision. *Id.* Because the plan prevented the plaintiff from seeking substantive forms of relief that are available under ERISA — "the Plan's prohibition on an individual claimant seeking any form of relief that would benefit anyone other than the claimant" — the Tenth Circuit held that application of the effective vindication doctrine was appropriate. *Id.* at 1111.

### iii.    Third Circuit

A few months later, the Third Circuit joined the chorus. In *Henry ex rel. BSC Ventures Holdings, Inc. Employee Stock Ownership Plan v. Wilmington Trust NA*, the

plan had adopted a class action waiver like the one here, which prohibited claims brought in a representative capacity and remedies that would have the "effect of providing additional benefits or monetary or other relief" to anyone else. 72 F.4th 499, 503 (3d Cir.), *cert. denied*, 144 S. Ct. 328 (Oct. 16, 2023). The appellate court concluded that the waiver "purports to waive plan participants' rights to seek remedies expressly authorized by statute." *Id.* at 507. As a result, the waiver was unenforceable. *Id.* And since the waiver expressly could not be severed from the arbitration provision, arbitration could not be compelled. *Id.* at 508.

### *iv.*   **Second Circuit**

In an extensive opinion addressing many of the same issues presented in this case, the Second Circuit in *Cedeno v. Sasson*, upheld the denial of the defendants' motion to compel arbitration because the plan documents prevented the plaintiff from pursuing plan-wide remedies authorized by ERISA. 100 F.4th 386. Specifically, the "contested provisions within the arbitration agreement are unenforceable because they amount to prospective waivers of participants' substantive statutory rights and remedies under ERISA." 100 F.4th at 390.[96]

During oral argument, Defendants relied heavily on the dissent in *Cedeno* (which was issued after the briefing in this case was complete).[97] But the dissent's

---

[96]   Argent, the Plan Trustee here, was also a defendant in *Cedeno*.

[97]   ECF 87, at 13–16.

reasoning is not persuasive. It disagrees with the majority's description of the plaintiff's claims as "representative" but ignores the express language of and interaction between §§ 409 and 502. The dissent also incorrectly focuses on what was necessary to make the plaintiff whole. That's not how § 409 works—it provides for making *the plan* whole, not the individual claimant who brings suit

---

Based on the dissent in *Cedeno* (which itself relies on *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003)), Defendants also suggested at oral argument that the Court should wait to see what type of relief the arbitrator orders before determining if the Class Action Waiver prohibits recovery of that relief. ECF 87, at 19–21. Aside from being practically unworkable, *id.* at 20, and lacking a case that follows the convoluted process they suggest, Defendants' argument ignores the fact that the Class Action Waiver prohibits Plaintiffs from even attempting to obtain the forms of relief prohibited by that provision in the first place. ECF 65-2, at 96 (Section A-7(h)) (emphasis added) ("Claimant may not *seek* or receive any remedy . . . ."). Plaintiffs would have no viable method to pursue claims that might benefit another Plan Participant without running afoul of the waiver.

Moreover, Defendants' argument does not follow from *PacifiCare* itself. In that case, the Supreme Court decided it was inappropriate to rule substantively on whether plaintiffs could be compelled to arbitrate because it was not clear that the arbitration provision prohibited recovery of the treble RICO damages the plaintiffs sought. Since that question was not one of arbitrability to be decided by the courts, and without knowing whether the arbitrator would construe the agreement as prohibiting such damages, it was proper to compel arbitration. 538 U.S. at 406–07. The issue was not whether the arbitrator would ultimately award treble damages. Here, there is no ambiguity in the Class Action Waiver to be construed by an arbitrator. The waiver clearly prohibits forms of relief sought by Plaintiffs and authorized under ERISA. It also clearly leaves to the Court matters of validity and enforceability. ECF 65-2, at 96 ("Any dispute or issue relating to the validity or enforceability of the Class Action Waiver shall be determined exclusively by the court . . . .").

under § 502. Accordingly, this Court declines to adopt the reasoning of *Cedeno*'s dissenting opinion.

### v.  Sixth Circuit

Last month, the Sixth Circuit decided *Parker v. Tenneco, Inc.*, which involved an arbitration provision and class waiver similar to the one in this case. As had all the other reported appellate court decisions to date, the Sixth Circuit concluded that the arbitration provision was "invalid as a prospective waiver of statutorily guaranteed rights and remedies." --- F.4th ---, No. 23-1857, 2024 WL 3873409, at 1 (6th Cir. 2024). As a result, the court refused to compel arbitration.

### vi.  Williams

Finally, although *Williams v. Shapiro* is not an appellate court case, it is an opinion from another judge in this district and involves an amended plan document with an arbitration clause nearly identical to the Class Action Waiver here. And, as here, Argent was the trustee of the plan. 2024 WL 1208297, at *3. Applying *Harrison* and *Henry*, the district court concluded that the arbitration clause was invalid under the effective vindication doctrine. *Id.* at *14.[98]

---

[98] Plaintiffs filed a notice indicating that *Williams* is on appeal before the Eleventh Circuit. ECF 89. They therefore "urge the Court to consider waiting for the 11th Circuit to decide th[at] appeal" before ruling on Defendants' motion. However, the appellate briefing is not yet complete and it is unclear when the circuit court might rule. Given the age of the parties' dispute and the extensive appellate authority already available, the Court declines to delay its ruling.

* * * *

Thus, the 2nd, 3rd, 6th, 7th, and 10th Circuits, as well as another judge of this district, have all concluded that provisions in plan documents that prohibit a participant from pursuing in arbitration certain statutory remedies available under ERISA—like the Class Action Waiver here—are unenforceable under the effective vindication doctrine. Although the Eleventh Circuit has declined to apply that doctrine to a choice-of-law provision in a collective bargaining agreement, *Sierra v. Cruise Ships Catering & Servs., N.V.*, 631 F. App'x 714, 718 (11th Cir. 2015) (per curiam), this Court concludes the reasons for applying the effective vindication doctrine here compelling, particularly given the near-unanimous appellate authority.

## 2.    The Arbitration Procedure Is Void.

The Class Action Waiver makes clear that it is integral to the Arbitration Procedure: "Any dispute or issue relating to the validity or enforceability of the Class Action Waiver shall be determined exclusively by the court . . . . In the event this Class Action Waiver is determined to be invalid or unenforceable . . . the entire Arbitration Procedure shall be rendered null and void in all respects."[99] Because the Court concludes that the waiver cannot be enforced, the entire Arbitration Procedure is void. *Williams*, 2024 WL 1208297, at *14 (invalidating in

---

[99]    ECF 65-2, at 96 (Section A-7(h)) (emphasis added).

its entirety a similar arbitration procedure where the offending provisions were not severable). There is therefore no basis for the Court to compel arbitration.

## V.    The Reorganization Claims Are Time Barred.

Since the Arbitration Procedure is not enforceable, the Court considers whether the Reorganization Claims are out of time. Defendants argue that Plaintiffs cannot pursue these claims because they did not exhaust their administrative remedies before the expiration of ERISA's six-year statute of repose.[100] Plaintiffs counter that "untimely exhaustion" is a "fiction" spawned by Defendants that improperly cuts short the timeframe to pursue claims for violations of ERISA.[101]

Two basic legal principles apply here. First, the time-bar set forth in ERISA is a statute of repose—not of limitations. Second, and as this Court made clear in declining Plaintiffs' stay request, the Eleventh Circuit requires ERISA plaintiffs to exhaust *before* filing suit.

### A.    Section 413 Is a Statute of Repose.

Section 413 bars claims related to "a fiduciary's breach of any responsibility, duty, or obligation" brought more than six years after "the date of the last action

---

[100]   ECF 65, at 11–18.

[101]   ECF 67, at 30–31. *See generally id.* at 28–31.

which constituted a part of the breach or violation." 29 U.S.C. § 1113(1).[102] This section therefore acts as a statute of repose—something that prohibits "any suit that is brought after a specified time since the defendant acted, without regard to any later accrual." *Klaas v. Allstate Ins. Co.*, 21 F.4th 759, 772 (11th Cir. 2021) (quoting *Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017)). *See also Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998) ("Section 413 of ERISA is a statute of repose, establishing an outside limit of six years in which to file suit, and tolling does not apply. . . . As a statute of repose, § 413 serves as an absolute barrier to an untimely suit."). Statutes of repose are "a judgment that defendants should be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason." *Preston*, 873 F.3d at 884 (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014)). They are, in essence, a "form of an immunity from further liability." *Id.*

There are no allegations in the FAC that Defendants took any action after October 1, 2016 that could support causes of action based on the Reorganization.[103] And Plaintiffs concede that their time to bring such claims expired on September 30, 2022.[104] When they filed the original Complaint, Plaintiffs had not yet

---

[102] Plaintiffs concede this is the only provision relevant here. ECF 67, at 28–29.

[103] *See, e.g.,* ECF 61, ¶¶ 6–8, Counts I–VI.

[104] *See, e.g.*, ECF 38, at 2.

exhausted their administrative remedies. In fact, they hadn't even **started** the necessary administrative proceedings.[105]

Plaintiffs assert that their Reorganization claims were filed within the necessary timeframe. That's true. But it is equally clear that they did not begin to pursue their administrative remedies until after filing suit and more than six years after the last act related to the Reorganization. In this Circuit, exhaustion has long been held a prerequisite to suit. As the Court has already held,[106] a plaintiff is "compelled to **first** exhaust the available administrative remedies contained in the Plan **prior to** filing suit in federal court." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006) (emphasis added); *see also id.* at 1328 ("The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."); *Perrino v. So. Bell Tel. & Telegraph*, 209 F.3d 1309, 1315 (11th Cir. 2000) (same), *superseded by statute on other grounds as stated in Scott v. Cox Media Grp.*, No. 6:20-CV-1179-CEM-GJK, 2021 WL 3082892, at *2 (M.D. Fla. Mar. 31, 2021); *Counts v. Am. Gen. Life & Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) (emphasis added) (citations omitted) ("The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies **before** suing in federal court."); *Springer v. Wal-Mart Assocs.' Grp. Health*

---

[105] *Id.* at 3.

[106] ECF 59, at 6–10.

*Plan*, 908 F.2d 897, 900 (11th Cir. 1990) ("The very premise of the exhaustion requirement, therefore, is that the right to seek federal court review matures only after that requirement has been appropriately satisfied or otherwise excused."). This requirement is strictly enforced. *Perrino*, 209 F.3d at 1315 (footnote omitted) ("[W]e strictly enforce an exhaustion requirement on plaintiffs bringing ERISA claims in federal court with certain caveats reserved for exceptional circumstances.").

Plaintiffs make no attempt to explain why the plain language of these cases does not apply here. Their brief addresses neither *Bickley* nor *Perrino*. And their suggestion that requiring claim exhaustion before filing in court improperly cuts short their time to pursue their causes of action treats § 413 like a statute of limitation rather than one of repose.[107] The controlling issue is the amount of time that has passed since Defendants' allegedly violative conduct, not whether Plaintiffs had six years in which to prepare their claims. And while Plaintiffs correctly note that the statute sets the period for the filing of an ERISA action,[108] that does not alter the plain language of cases from the Eleventh Circuit that require exhaustion **before** filing suit. *See, e.g.*, *Bickley*, 461 F.3d at 1328; *Perrino*, 209 F.3d at 1315.

---

[107]   ECF 67, at 29.

[108]   *Id.*

Plaintiffs' reliance on *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1225 (11th Cir. 2008)[109] is unhelpful because of the unusual procedural history of that case, with the action having been transferred into this Circuit from one that did not require pre-suit exhaustion.[110] Nor is the Court moved by Plaintiffs' contention that, absent *Lanfear*'s particular facts, a plaintiff should be able to bring ERISA causes of action in a federal suit before even *starting* the administrative review process and then satisfy the administrative exhaustion requirement *later*. In that regard, Plaintiffs' attempt to distinguish *Ahrens v. UCB Holdings, Inc.*, No. 1:15-CV-348-TWT, 2016 WL 81488, *2 (N.D. Ga. Jan. 6, 2016), and *La Ley Recovery Systems-OB, Inc. v. UnitedHealthcare Ins. Co.*, No. 14-23451-CIV-ALTONAGA, 2015 WL 12977396, at *4 (S.D. Fla. July 28, 2015), *aff'd*, 654 F. App'x 1017 (11th Cir. 2016) (per curiam), are unpersuasive.[111] In *Ahrens*, the court concluded that, because the plaintiffs "did not begin to exhaust their administrative remedies until after the statute of limitations had run, the statute is not tolled." 2016 WL 81488, *2. That is precisely what happened here—Plaintiffs did not start to exhaust (much less finish exhausting) their administrative remedies until after the period of repose had run. Similarly, the court in *La Ley Recovery Systems* noted "the Eleventh Circuit's

---

[109]   *Id.* at 30.

[110]   ECF 59, at 8–10 (discussing inapplicability of *Lanfear* to the instant litigation).

[111]   ECF 67, at 30–31.

longstanding position [that] participants in an ERISA plan must exhaust their administrative remedies before challenging a denial of benefits in court." 2015 WL 12977396, at *4.

### B.      Plaintiffs' Attempt to Relate-Back Fails.

Plaintiffs argue that the FAC (which alleges exhaustion) relates back to the original Complaint under Fed. R. Civ. P. 15(c).[112] But even assuming the FAC properly relates back and that Plaintiffs were entitled to amend as of right (neither of which the Court need decide), relation back cannot unwind time.

As discussed above, administrative exhaustion was a *prerequisite* to Plaintiffs' ability to sue. No amount of relation-back can cure this fundamental defect in Plaintiffs' Reorganization claims. They did not exhaust until nearly a year after they filed suit and after the statute of repose had run. If the problem had been a simple pleading defect, such as having failed to allege exhaustion when exhaustion *had in fact occurred* before suit was filed, Plaintiffs might have a persuasive argument. That is not what happened here. The action Plaintiffs needed to have taken before filing suit—exhausting their administrative remedies—had not occurred (indeed, had not even been started) when they initiated this case. *See, e.g.*, *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) (The plaintiff's "attempt to amend or supplement his original

---

[112] *Id.* at 31–34.

complaint did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint. Therefore, he cannot cure the exhaustion defect.").

The addition of the allegation that Plaintiffs have now satisfied exhaustion is supplemental, that is, it relates to an event that happened after the date of the pleading Plaintiffs are trying to amend. Fed. R. Civ. P. 15(d). Nothing Plaintiffs can allege at this point alters the simple fact that they failed to exhaust *before* suing. That failure is fatal to their Reorganization claims.

Accordingly, Plaintiffs' claims related to the Reorganization (Counts I–VI) are barred by § 413 and must be dismissed.

## VI.    Conclusion

Defendants' motion to dismiss and to compel arbitration [ECF 65] is **GRANTED in part and DENIED in part**. Because the Class Action Waiver is unenforceable, the Arbitration Provision is void. Accordingly, to the extent Defendants seek to compel arbitration, their motion is **DENIED**. However, claims based on the Reorganization are time-barred under § 413, and Defendants' motion to dismiss is **GRANTED** in that regard.

Counts I through VI of the First Amended Complaint are **DISMISSED WITH PREJUDICE**. Plaintiffs may proceed on their remaining claims. Defendants are **DIRECTED** to answer the remaining portions of the First Amended Complaint

by November 1, 2024. The parties shall conduct their Rule 26(f) conference by November 15, 2024. The parties shall serve their initial disclosures and submit a Joint Preliminary Report and Discovery Plan no later than December 2, 2024.

**SO ORDERED** this 30th day of September, 2024.

Steven D. Grimberg
United States District Judge