IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PHYLLIS MICHELE HOWELL, SIMON REISERT, and CAROLE SPEIGHT, on behalf of The North Highland Company Stock Ownership and 401(k) Plan, and on behalf of a class of all other persons similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>ARGENT TRUST COMPANY, NORTH HIGHLAND ESOP HOLDINGS, INC., THE NORTH HIGHLAND COMPANY, INC., THE NORTH HIGHLAND COMPANY LLC, THE NORTH HIGHLAND HOLDING CO., LLC, DAN REARDON, ALEX BOMBECK, BETH SCHIAVO, and LAUREN CHILDERS,<br><br>    *Defendants*. | Civil Action No. 1:22-cv-3959-SDG |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT AND CERTIFICATION OF A SETTLEMENT
CLASS AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................1

II.   LITIGATION HISTORY ....................................................................3

III.  THE SETTLEMENT AGREEMENT ................................................4

    a.    The Settlement Fund ................................................................4

    b.    Released Claims .......................................................................5

    c.    Notice and Administration .......................................................6

    d.    Attorneys' Fees and Costs ........................................................7

IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS..............7

    a.    The Court Should Certify the Settlement Class .......................7

        1.    The Class satisfies the requirements of Rule 23(a) ...................7

            A.    The Settlement Class is sufficiently numerous. ..............8

            B.    There are common questions of law and fact..................8

            C.    The typicality requirement of Rule 23(a) is met. ............9

            D.    The proposed Class Representatives and their counsel
                  will fairly and adequately protect the interests of the
                  Settlement Class..............................................................10

        2.    The claims meet the requirements for certification under
              Rule 23(b). ..............................................................................12

V.    THE COURT SHOULD PRELIMINARILY APPROVE THE
      SETTLEMENT..............................................................................15

    a.    Class representatives and Class Counsel have adequately
          represented the Settlement Class...........................................16

    b.    The Settlement was negotiated at arm's length. ...................18

    c.    The relief provided for the class is adequate.........................19

    d.    The costs, risks, and delay of trial and appeal....................20

    e.    The effectiveness of distribution to the Settlement Class. ..................22

    f.    The terms of the proposed attorney's fee award. ................23

    g.    Agreements made in connection with the Settlement.........................23

       h.     The Settlement treats Settlement Class Members equitably relative to each other. ........................................................................23

VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN...24

VII.   PROPOSED SCHEDULE ............................................................25

VIII.  CONCLUSION...........................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................10

*Anderson v. Garner*,
   22 F. Supp. 2d 1379 (N.D. Ga. 1997)...................................................8

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988)...........................................................19

*Bekker v. Neuberger Berman Group 401(k) Plan Inv. Comm.*,
   504 F. Supp. 3d 265 (S.D.N.Y. 2020) ..................................................17

*Benett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ..............................................................15

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................20

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   258 F.R.D. 545 (N.D. Ga. 2007) ............................................................8

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006).............................................................15

*Donovan v. Cunningham*,
   716 F.2d 1455 (5th Cir. 1983) ..............................................................20

*George v. Kraft Foods Global, Inc.*,
   270 F.R.D. 355 (N.D. Ill. 2010)............................................................15

*Henderson v. Emory Univ.*,
   No. 1:16-2920, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) .................8, 9, 10

*Henderson v. Emory Univ.*,
   No. 16-2920, 2020 WL 9848978 (N.D. Ga. Nov. 4, 2020)........................18, 23

*Hochstadt v. Boston Scientific Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010)....................................................15

*Z.D. ex rel. J.D. v. Grp. Health Co-op*,
  No. 11-1119, 2012 WL 1977962 (W.D. Wash. June 1, 2012) ........................... 15

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) ....................................................................... 14

*Krueger v. Ameriprise*,
  No. 11-cv-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ................... 21, 23

*Mullane v. Cent. Hanover Bank Tr. Co.*,
  339 U.S. 306 (1950) ..................................................................................... 24, 25

*Newbridge Networks Sec. Litig.*,
  No. 94-1678, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ................................... 20

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) .......................................................................................... 13

*Owens v. Metro. Life Ins. Co.*,
  323 F.R.D. 411 (N.D. Ga. 2017) ......................................................................... 8

*Richards-Donald v. Teachers Ins. and Annuity Ins. Ass'n of Am.*,
  No. 15-8040 (S.D.N.Y. May 15, 2017) ............................................................. 15

*Rogers v. Baxter Int'l, Inc.*,
  No. 06-3241 (7th Cir.) ...................................................................................... 13

*Satchell v. Fed. Express Corp.*,
  No. 03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................. 19

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ............................................................................. 14

*In re Smith*,
  926 F.2d 1027 (11th Cir. 1991) ........................................................................ 19

*Stevens v. SEI Invs. Co.*,
  No. 18-4205, 2020 WL 996418 (E.D. Pa. Feb 28, 2020) .................................. 17

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ...................................................................... 19

*In re Suntrust Banks, Inc. ERISA Litig.*,
  No. 1:08-3384, 2016 WL 4377131 (N.D. Ga. Aug. 17, 2016)....................12, 14

*Tibble v. Edison Int'l*,
  No. 07-5359, 2017 WL 3523727 (C.D. Cal. Aug. 16, 2017)............................21

*Tibble v. Edison Int'l*,
  No. 07-5359 (C.D. Cal. June 30, 2009) ..............................................15

*In re Tri-State Crematory Litig.*,
  215 F.R.D. 660 (N.D. Cal. 2003).......................................................10

*Tussey v. ABB, Inc.*,
  No. 06-4305, 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ...........................21

*In re U.S. Oil and Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) .........................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................................................8, 9

*White v. Chevron Corp.*,
  No. 16-793, 2017 WL 2352137 (N.D. Cal. May 31, 2017) ..............................20

**Statutes**

28 U.S.C. § 1332(d) .....................................................................25

28 U.S.C. § 1453 .........................................................................25

28 U.S.C. § 1711-15......................................................................25

29 U.S.C. § 1000, *et seq*................................................................*passim*

29 U.S.C. § 1104(a)(1)(B) ..............................................................11

**Rules**

Fed. R. Civ. P. 23 ...................................................................7, 13, 27

Fed. R. Civ. P. 23(a)................................................................7, 8, 9, 12

Fed. R. Civ. P. 23(a)(1)..................................................................8

Fed. R. Civ. P. 23(a)(2) ..................................................................................8, 9

Fed. R. Civ. P. 23(a)(3) ....................................................................................9

Fed. R. Civ. P. 23(a)(4) ..............................................................................10, 11

Fed. R. Civ. P. 23(b) ..................................................................................7, 12

Fed. R. Civ. P. 23(b)(1) ...............................................................12, 13, 14, 15

Fed. R. Civ. P. 23(b)(1)(A) .......................................................................13, 14

Fed. R. Civ. P. 23(b)(1)(B) ...............................................................12, 13, 14

Fed. R. Civ. P. 23(e) .................................................................................1, 2, 27

Fed. R. Civ. P. 23(e)(1) ...................................................................................24

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................16, 24

Fed. R. Civ. P. 23(e)(2) ...................................................................................16

Fed. R. Civ. P. 23(e)(3) ...................................................................................16

Fed. R. Civ. P. 23(g) .......................................................................................11

**Other Authorities**

*Newberg on Class Actions*, Vol. 3 (5th ed. 2014) ....................................................25

Plaintiffs Phyllis Howell, Simon Reisert, and Carole Speight (collectively, "Plaintiffs") submit this Memorandum of Law in support of their Motion for Preliminary Approval of a Settlement that the parties have reached in this class action. Plaintiffs seek an Order: (1) certifying the Settlement Class for settlement purposes and appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel (2) preliminarily approving the Settlement under FED. R. CIV. P. 23(e); (3) approving the manner of notifying the Class of the Settlement; (4) appointing Simpluris as the Settlement Administrator; and (5) setting a date for a Fairness Hearing.

## I.    INTRODUCTION

This case concerns the North Highland Company Employee Stock Ownership Plan (formerly known as The North Highland Company Employee Stock Ownership and 401((k) Plan) (the "Plan"). Plaintiffs alleged breaches of fiduciary duty and prohibited transactions with respect to a 2016 reorganization transaction, a 2021 redemption transaction, and the dilution of the ESOP's ownership interest in the enterprise in the period between those transactions. On September 30, 2024, the Court dismissed all claims related to the 2016 reorganization as being time-barred. Dkt. 90. The Court's Order also denied Defendants' motion to compel arbitration on the remaining claims, which Defendants have appealed. During the pendency of that appeal, the parties

conducted a full-day mediation with JAMS Mediator Stephen Lucke. While a settlement was not reached during that mediation, subsequent negotiations led to the Settlement Agreement, attached hereto as Exhibit A, and the filing of this Motion.

The parties engaged in over a year of litigation, including the motion to dismiss and compel arbitration, and the completion of an administrative claims process, which included production of relevant documents by Defendants. Plaintiffs retained experts who reviewed the provided documentation including, most importantly, the valuations performed on North Highland as part of the 2016 and 2021 transactions.

The parties have agreed to resolve the Lawsuit for the sum total of two million three hundred seventy-five thousand dollars ($2,375,000) (the "Class Settlement Amount").

The Settlement is a fair, reasonable, and adequate resolution of the proposed Settlement Class's claims and should be preliminarily approved under Rule 23(e). The Settlement Class should be certified for settlement purposes only. The Settlement eliminates the numerous and substantial risks, expenses, and potential delays that would lay ahead if Plaintiffs continued to prosecute this case. The Settlement, negotiated at arms-length by experienced counsel on both sides and

with the help of an experienced mediator, is an excellent result and in Settlement

Class Members' best interests.

Lastly, Plaintiffs ask the Court to approve the proposed Notice to the

members of the Class and schedule a Fairness Hearing, as well as other deadlines.

## II.    LITIGATION HISTORY

The litigation history spans over three years. Plaintiffs filed their original

Complaint on September 30, 2022. Dkt. 1. Plaintiffs moved to stay the action while

they exhausted administrative remedies under the Plan, and Defendants argued in

response that the stay should be denied and the Complaint dismissed because

Plaintiffs did not exhaust administrative remedies before it was filed. On

September 27, 2023, Plaintiffs filed an Amended Complaint as of right, primarily

to add factual allegations regarding the exhaustion of administrative remedies.

Defendants moved to dismiss counts concerning the 2016 Recapitalization

of North Highland as being untimely, arguing that neither the Original nor

Amended Complaint alleged timely pre-suit exhaustion of administrative remedies.

Defendants also moved to compel arbitration. The District Court ruled that the

arbitration clause was not enforceable because its prohibition on recovery of

statutorily authorized remedies violates the effective vindication doctrine.

However, the District Court also held that the 2016 Recapitalization claims were

time-barred because of the failure to exhaust administrative remedies prior to the

filing of the original Complaint. Defendants appealed the decision with respect to arbitration.

## III.    THE SETTLEMENT AGREEMENT

The Settlement resolves all claims of the proposed Class—all participants who held vested shares in the Plan from October 1, 2016 to May 30, 2025, excluding the individual Defendants and their immediate families. Settlement Agmt. ¶ 2.1.2.

The proposed Class is substantively identical to the definition found in Paragraph 368 of the Complaint (Dkt. 1), except that the Settlement Class has a defined end-date.

### a.    The Settlement Fund

The North Highland Defendants, as defined in the Settlement Agreement, will pay the Settlement Amount of $2,375,000 in two segments, which along with any interest thereon shall constitute the Gross Settlement Amount. Settlement Agmt. *Id*. ¶¶ 7.2.3; 7.2.4. The North Highland Defendants shall cause the Settlement Fund to be deposited by wire transfer into the Escrow Account. *Id.* ¶ 7.2.3. The Settlement Fund will be used to pay compensation to Class Members; all Attorneys' Fees and Expenses approved by the Court; Administrative Costs; and Taxes and Tax-Related Costs. *Id.* ¶ 7.2.5. The Settlement Fund will be distributed to Class Members in accordance with the Plan of Allocation. *Id.* ¶ 8.2.

4

The proposed Plan of Allocation is attached as Exhibit E to the Settlement Agreement.

### b.    Released Claims

Under the Settlement Agreement, the "Released Claims" are those claims against the Released Parties that (1) arise out of, relate to, or are based on the allegations, facts, matters, claims, causes of action, occurrences, or omissions before, up to, and including the Agreement Execution Date and that are set forth in Plaintiffs' Complaint; (2) would be barred by principles of *res judicata* had the claims asserted in the Action been fully litigated and resulted in a final judgment or order; or (3) pertain to any conduct related to the direction to calculate, the calculation of, and/or the method or manner of allocation or distribution of amounts from the Qualified Settlement Fund Account to Plaintiffs, the Settlement Class, or the Plan pursuant to the Plan of Allocation. *Id.* § III.

The scope of the release shall not include any claims to enforce the Settlement Agreement or claims for individual benefits under the Plan unrelated to this Settlement. *Id.* ¶¶ 3.4; 3.1(iv).

The Complaint alleges breaches of ERISA's duties of prudence and loyalty and violations of ERISA's prohibited transaction provisions with respect to the 2016 and 2021 Transactions and the dilution of the ESOP's ownership interest during the interim period. Thus, the release is tied to the claims in the Complaint.

Plaintiffs are not aware of any other cases that will be affected by the Settlement.

### c.    Notice and Administration

Under the Settlement, Plaintiffs' Counsel will provide the Settlement Administrator with the names and last known addresses of Class members to provide them with notice of the Settlement. Settlement Agmt. ¶ 2.1.3. Within thirty days of the entry of the Preliminary Approval Order, the Settlement Administrator will send the Notice by first-class mail and/or e-mail to the Settlement Class Members. Settlement Agmt. Ex. 2, Proposed Order, at ¶ 10.

The proposed Class Notice, Exhibit A to the Settlement Agreement, informs Settlement Class members about the Action, the class definition, the class claims, issues and defenses, that a class member may enter an appearance through an attorney if the member so desires, the terms of the Settlement, including the release and the binding effect of the settlement, and the procedures for objecting to the Settlement. In addition, the Settlement Administrator will establish a website containing the Notice and the Settlement Agreement that will be updated as appropriate with additional Orders and filings related to the Settlement, including Plaintiff's Motion for Attorneys' Fees. Settlement Agmt. Ex. 2, Proposed Order, at ¶ 11. Settlement Class Members will also be provided with a toll-free number to which Settlement Class Members can direct questions about the Settlement. *Id.*

Because of the Plan's records with respect to the Class Members and their account information, no claim process is necessary.

### d. Attorneys' Fees and Costs

Subject to Court approval, Plaintiffs' Counsel will request fees, costs and expenses, from the Settlement Amount. Settlement Agmt. ¶ 10.1. That request will be filed at a later date as provided for in the Proposed Preliminary Approval Order. Plaintiffs anticipate requesting Attorneys' Fees in the amount of $791,666, which constitutes 33% of the Settlement Fund.

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### a. The Court Should Certify the Settlement Class

As part of the Settlement, Plaintiffs request that the Court certify the proposed Settlement Class, defined in Section III above, for purposes of settlement only.

To certify a class, the plaintiff must satisfy the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Those requirements are easily met here.

#### 1. The Class satisfies the requirements of Rule 23(a)

Rule 23(a) provides that a class must satisfy four preconditions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative

7

parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### A.    The Settlement Class is sufficiently numerous.

As to numerosity, a class may be certified only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 415 (N.D. Ga. 2017). In order to demonstrate numerosity, plaintiffs need not prove that joinder is impossible; rather, plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members to the class." *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997). The Plan's 5500 for 2020 indicates that at the end of 2020, the Plan had 1,566 participants. Boyko Decl., ¶ 14. Accordingly, numerosity is easily satisfied.

### B.    There are common questions of law and fact.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 554 (N.D. Ga. 2007). Actions involving breach of ERISA's fiduciary duties present common questions of law and fact. *Henderson v. Emory Univ.*, No. 1:16-2920, 2018 WL 6332343, at *5 (N.D. Ga. Sept. 13, 2018). The common questions must be of "such nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 349 (2011). "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 359.

Here, common questions include, but are not limited to: (1) whether the Defendants are fiduciaries to the Plan; (2) whether the Defendants breached their fiduciary duties; (3) whether Defendants engaged in prohibited transactions with respect to the 2016 and 2021 Transactions; (4) whether the Defendants engaged in prohibited transactions or breaches of fiduciary duty with respect to the dilution of the ESOP's ownership interests between the transactions; (5) whether the Plan suffered losses; (6) how to calculate those losses; and (7) what relief is appropriate.

These common questions and issues are more than sufficient to satisfy the requirements of Rule 23(a).

### C.    The typicality requirement of Rule 23(a) is met.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Henderson*, 2018 WL 6332343, at *5 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). A plaintiff's claims or defenses need not be identical to the proposed class, and minor variations will not render the plaintiff's claims atypical. *Id*. Instead, a plaintiff satisfies typicality by showing that the claims or

defenses "arise from the same event or pattern or practice and are based on the same legal theory." *Id*.

Here, Plaintiffs allege that class members have been subjected to the same alleged injury by the same course of conduct by Defendants. Defendants made plan-wide decisions that Plaintiffs allege harmed all participants in the Plan. Plaintiffs sought to recover the damages allegedly caused by such fiduciary misconduct to the Plan as a whole. None of the alleged breaches are unique to the named Plaintiffs; they are shared with each and every Plan participant.

> ### D.    The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Settlement Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In determining adequacy, courts consider two distinct factors. First, the court must analyze whether there are "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Second, the court must consider whether the named plaintiff's counsel will adequately protect the interests of the class. *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 690–91 (N.D. Cal. 2003). Here, Plaintiffs and their counsel satisfy the adequacy standards needed for class certification.

Plaintiffs bring this case in their capacity as participants in the Plan. Likewise, the members of the proposed class are all participants or beneficiaries in the Plan. Thus, Plaintiffs and all class members are identically situated in material respects. Defendants owed the same fiduciary duties to Plaintiffs and all members of the class (all of whom are or were Plan participants). *See* 29 U.S.C. § 1104(a)(1)(B) (a "fiduciary shall discharge his duties with respect to a plan…"). In addition, the alleged prohibited transactions affected the Plan as a whole.

The proposed Class Representatives have been actively engaged in the litigation, and they have provided documents to counsel used to draft the Complaint. Boyko Decl. ¶¶ 13. They have regularly conferred with counsel on the progress of the case, including settlement. *Id.* They have no conflicts. *Id.* The Named Plaintiffs assert claims on the Plan's behalf and request no individual relief. Therefore, the adequacy requirement of Rule 23(a)(4) is met.

Plaintiffs' Counsel in this case are well-qualified and experienced as described in detail in the Declaration of Mark Boyko. Boyko Decl. ¶¶ 8–11. Not only do these attorneys have extensive experience litigating class actions, including numerous ERISA cases involving ESOPs, they have worked diligently to litigate the claims here. *Id.* ¶¶ 5–6. There should be no question that Plaintiffs' Counsel brought sufficient skill and resources to litigate this case. Thus, Plaintiffs' Counsel satisfy Rules 23(a)(4) and 23(g).

**2.      The claims meet the requirements for certification under Rule 23(b).**

In addition to meeting the requirements of Rule 23(a), claims must meet at least one of the three provisions of Rule 23(b). Plaintiffs primarily seek certification under Rule 23(b)(1). "In light of the derivative nature of ERISA [Section] 502(a)(2) claims, breach of fiduciary duty claims brough under [Section] 502(a)(2) are paradigmatic examples of claims appropriate for certification under a Rule 23(b)(1) class, as numerous courts have held." *In re Suntrust Banks, Inc. ERISA Litig.*, No. 1:08-3384, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)).

Rule 23(b)(1) allows for certification when the prosecution of separate suits by individual class members would create a risk of inconsistent or varying adjudications and establish incompatible standards for the Defendants, or when a judgment in one suit would be dispositive of the interests of the other class members who were not parties to the suit. The Rule's drafters described suits such as this one—an action for breach of fiduciary duty brought by those to whom the duty is owed—as a prime example of why Rule 23(b)(1) was enacted. Comm. Notes, Fed. R. Civ. P. 23(b)(1)(B) (1966 amendments). Certification is most appropriate under Rule 23(b)(1).

ERISA fiduciary breach class action cases are routinely certified under Rule 23(b)(1). That Rule provides for certification where:

> the prosecution of separate actions by … individual members of the class would create a risk of (A) inconsistent or varying adjudications … which would establish incompatible standards for the party opposing the class, or (B) adjudications with respect to the individual members of the class which would … be dispositive of the interests of the other members not parties to the adjudications…

Fed. R. Civ. P. 23(b)(1)(A), (B). The Rule 23 Advisory Committee noted that "an action which charges a breach of trust … by [a] … fiduciary similarly affecting the members of a large class of … beneficiaries" calls for certification under this section. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (same).

As the Department of Labor has explained, "[t]hese [defined contribution] plans are required to provide for individual accounts, but nevertheless must also hold all of the assets of the plan in trust for the plan. Given this structure, any monetary recovery necessarily increases the assets of the plan… ." *See* Brief for the Secretary of Labor as Amicus Curiae Supporting Plaintiffs-Appellees in *Rogers v. Baxter Int'l, Inc.*, No. 06-3241 (7th Cir.) (filed Dec. 8, 2006) (emphasis added), (www.dol.gov/sol/media/briefs/baxter(A)-12-08-2006.pdf).

In the Complaint, Plaintiffs sought recovery of Plan-wide losses in a representative capacity due to Defendants' alleged plan-wide breach of fiduciary duties and engagement in prohibited transactions. Adjudication of Defendants' alleged breaches would be dispositive of the interests of the other members of the

proposed class. It follows that certification under Rule 23(b)(1)(B) is proper.

Plaintiffs also sought injunctive relief including enjoining Defendants from

violating their ERISA fiduciary responsibilities, obligations, and duties.

Determining declaratory or injunctive relief on an individual plaintiff basis would

make the risk of "inconsistent or varying adjudications" great such that

certification is proper under Rule 23(b)(1)(A). Although Plaintiffs need only to

satisfy Rule 23(b)(1)(A) or (B) to warrant certification, the Court should certify the

Class under Rule 23(b)(1)(A) and (b)(1)(B) because both are easily satisfied here.

Because this is an action on behalf of the Plan to recover losses to the Plan

and other relief for the Plan, concerning fiduciary duties and obligations that were

owed to the Plan and to all participants and beneficiaries, the Court should certify

this action as a class action under Rule 23(b)(1), as numerous other courts have

done regarding similar ERISA fiduciary breach claims. *In re Suntrust Banks, Inc.*

*ERISA Litig.,* 2016 WL 4377131, at *7 (certifying ERISA class under Rule

23(b)(1)). *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111–12 (N.D. Cal. 2008)

("Most ERISA class action cases are certified under Rule 23(b)(1)" and "ERISA

fiduciary litigation presents a paradigmatic example of a b(1) class.") (quoting *In*

*re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)); *In*

*re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 ("breach of fiduciary duty

claims brought under [§1132(a)(2)] are paradigmatic examples of claims

appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held"); *Z.D. ex rel. J.D. v. Grp. Health Co-op*, No. 11-1119, 2012 WL 1977962, *7 (W.D. Wash. June 1, 2012) (stating that [t]he Court can envision few better scenarios for certification under (b)(1)(A) or (b)(1)(B)" than claims that an ERISA fiduciary's internal policy or practice was illegal); *Richards-Donald v. Teachers Ins. and Annuity Ins. Ass'n of Am.*, No. 15-8040, Doc. 48 (S.D.N.Y. May 15, 2017); *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 369 (N.D. Ill. 2010); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 105 (D. Mass. 2010); *Tibble v. Edison Int'l*, No. 07-5359, Doc. 286 (C.D. Cal. June 30, 2009); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006).

## V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Benett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "[S]ettlements [of class actions] are 'highly favored in the law and will be upheld whenever possible.'" As the court in *U.S. Oil and Gas* noted, "[c]omplex litigation — like the instant [class action] case — can occupy a court's docked for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of

Civil Procedure authorize district courts to facilitate settlements…" 967 F.2d 489, 493 (11th Cir. 1992).

Effective December 1, 2018, for a court to preliminarily approve a settlement, the settling parties must provide the court with sufficient information to enable it to determine that it will likely be able to approve the settlement at the final approval stage. FED. R. CIV. P. 23(e)(1)(B). In other words, the court should review whether the settlement "is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The revised Federal Rule directs the Court, in making that evaluation, to consider "whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . and (D) the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2). The adequacy of the proposed relief must be considered in light of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.*

### a.   Class representatives and Class Counsel have adequately represented the Settlement Class.

As discussed above, Class Counsel and the class representatives have pursued this litigation for over a year, through diligent research, motion to dismiss

briefing, and an administrative claims process that included production of relevant documents by Defendants. Class Counsel have specialized expertise in ESOP litigation and carefully considered whether and when to engage in settlement conversations in order to secure the maximum recovery for the Class. *See, e.g.*, *Bekker v. Neuberger Berman Group 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 277 (S.D.N.Y. 2020) ("Gregory Y. Porter… and Mark G. Boyko each have extensive experience at the forefront of this area of law. As the result of this case indicates, Class Counsel were able to leverage their expertise and experience with similar matters to achieve a positive, lasting, and meaningful benefit to the Class in this complex case.")

The Settlement also does not unduly favor the Plaintiffs. Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the alleged losses to their Plan accounts. Plaintiffs' claims and asserted damages are predominantly based on the reasonableness and lawfulness of the valuation of the ESOP's shares during the 2016 and 2021 Transactions and the dilution of the ESOP's equity interest during the interim period between those transactions.

Likewise, the Settlement does not excessively compensate Class Counsel. The amount of fees that Class Counsel intends to request, $791,666, represents 33% of the monetary value of the Settlement. This request is consistent with similar awards in recent ERISA cases. *See, e.g.*, *Stevens v. SEI Invs. Co.*, No. 18-

4205, 2020 WL 996418, at *11 (E.D. Pa. Feb 28, 2020) ("In complex ERISA cases, courts in this Circuit and others also routinely award attorneys' fees in the amount of one-third of the total settlement fund."); *Henderson v. Emory Univ*., No. 16-2920, 2020 WL 9848978 (N.D. Ga. Nov. 4, 2020) (approving fee award of one-third of an ERISA class settlement).

Finally, there is no reversion to the Defendants, instead any money remaining in the Settlement Account will be put into an agreed *cy pres* use, and not used for the benefit of Defendants.

### b.    The Settlement was negotiated at arm's length.

Prior to discussing settlement, and as part of the Plan's administrative process, Plaintiffs requested core documents from Defendants and Defendants produced those documents to Plaintiffs. This included the materials used to find and support the valuation of the ESOP's shares during the transactions. Following Plaintiffs' review, and the review of Plaintiffs' experts, counsel for Plaintiffs and Defendants arranged for a mediation with a JAMS mediator with extensive ERISA experience, Stephen P. Lucke, Esq..

Class Counsel was fully aware of this case's strengths and weaknesses when negotiating the Settlement, which supports the Settlement's preliminary approval. Class Counsel also has in-depth knowledge of the legal framework applicable to this case. Class Counsel have decades of experience prosecuting, settling, and

trying ERISA cases on behalf of retirement plan participants, which they used to evaluate and negotiate the Settlement. Boyko Decl. at ¶¶ 9–11. The Court is entitled to rely on the judgment of counsel, and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); accord *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991). It is Class Counsel's opinion that the proposed Settlement is fair and reasonable, a factor which supports the Settlement's approval. As the court held in *Strube v. Am. Equity Inv. Life Ins. Co.*, "[class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." 226 F.R.D. 688, 703 (M.D. Fla. 2005).

Because the Settlement was negotiated by experienced counsel with the aid of a mediator, there is a presumption that it was the product of arm's length negotiations. *Satchell v. Fed. Express Corp.*, No. 03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### c.    The relief provided for the class is adequate.

The Settlement features a monetary payment of $2,375,000. This relief is approximately eight percent of the dilution claim, the most valuable remaining claim following the Court's dismissal of Plaintiffs' claims related to the 2016

Transaction. Boyko Decl. at ¶ 15. This percentage, in and of itself, is reasonable and warrants preliminary approval. *See*, *e.g.*, *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness").

### d.    The costs, risks, and delay of trial and appeal.

The adequacy of the Settlement is even more evident when the cost, risk and delay associated with continued litigation are considered. Despite Plaintiffs' confidence in their case, they face significant hurdles in proving their claims. While "[a] good heart and an empty head are not enough" for defendants to avoid liability (*Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983), *cert denied,* 467 U.S. 1251 (1984)), breach of fiduciary duty claims under ERISA depend heavily on the process by which decisions were made rather than the results of those decisions. *See White v. Chevron Corp.*, No. 16-793, 2017 WL 2352137, at *4 (N.D. Cal. May 31, 2017), *aff'd*, No. 17-16208, 2018 WL 5919670 (9th Cir. Nov. 13, 2018) (finding the "prudence analysis focuses a fiduciary's 'conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.'"); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

Here, the litigation would be lengthy and expensive if this Action were to proceed further. Plaintiffs faced significant risks. Plaintiffs and Defendants had vastly different views about Defendants' actions, their potential liability, and the likely outcome of the litigation.

These fact intensive inquiries likely would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day. Before the Parties reached trial, they would have to expend substantial time and effort to brief class certification, brief summary judgment motions, prepare the joint pretrial exhibit list, and litigate any motions *in limine*. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolutions and causing more expense.

Courts have repeatedly recognized that ERISA cases "often lead [] to lengthy litigation." *Krueger v. Ameriprise*, No. 11-cv-2781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). It is not unusual for ERISA cases to last for a decade or longer. *See*, *e.g.*, *Tussey v. ABB, Inc.*, No. 06-4305, 2017 WL 6343803, at 3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed); *Tibble v. Edison Int'l*, No. 07-5359, 2017 WL 3523727, at *15 (C.D. Cal. Aug. 16, 2017) (outlining issues for trial in a case

filed in 2007). The potential for protracted litigation supports the Settlement's approval.

A certain recovery for the class now far outweighs the mere possibility of future relief after years of costly litigation. Considering the costs, risks, and delay of trial and appeal, the immediate and certain recovery of $2,375,000 outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including summary judgment, trial, post-trial, and post-judgment briefing and appeals—for any judgment to be reduced to actual payments to Plan participants.

### e.    The effectiveness of distribution to the Settlement Class.

No class member will be required to do anything to receive a monetary payment from the Settlement. The Plan maintains detailed records of its former participants, which will enable the Settlement Administrator to deliver notices and distributions with reasonable confidence that the distributions are being sent to the correct people and the correct addresses If a participant does not select a rollover of their settlement payment, the participant will automatically receive a check at their last known address.  Any portion of the settlement fund that cannot be distributed will be distributed in a *cy pres* payment as determined by Class Counsel with consent of Defense Counsel. No funds will revert to Defendants.

Additionally, distributions will be done in a way that minimizes or defers tax consequences, thus adding additional value to the Class.

       f.     **The terms of the proposed attorney's fee award.**

As discussed above, Class Counsel intend to file a motion for an award of attorneys' fees of $791,666 (33% of the value of the cash payment) and reimbursement of expenses at a later date. A percentage of the Fund is the normal method by which high-stakes ERISA class litigation is funded. *Henderson*, 2020 WL 9848978, *2; *Krueger*, 2015 WL 4246879 at *2 (In "ERISA class actions asserting breaches of fiduciary duties…courts have consistently awarded one-third contingent fees").

       g.     **Agreements made in connection with the Settlement.**

The Settlement Agreement represents the entire agreement between Plaintiffs and Defendants. Based on the factors above, the Settlement is plainly adequate.

       h.     **The Settlement treats Settlement Class Members equitably relative to each other.**

As described above, the Settlement treats each class member equitably. Calculations under the Plan of Allocation are based on the number of shares each Class Member had during the period of time where the Class has viable claims, which is a fair proxy for both the ESOP's alleged dilution over time and the sale price of the 2021 Transaction.

## VI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Notice of a class action settlement must be provided in a "reasonable manner". Fed.R.Civ.P. 23(e)(1)(B). This means that it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Tr. Co.*, 339 U.S. 306, 314 (1950) (citation omitted). Here, the proposed form and method of Notice satisfy all due process considerations and Rule 23(e)(1). The proposed Class Notice describes the lawsuit in plain English, including the terms of the proposed Settlement, the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair and adequate, the attorneys' fees and expenses, plus costs, that are being sought; the procedure for objecting to the Settlement, and the date and place of the Fairness Hearing. *See* Settlement Agmt. at Exhibit A.

The method for distributing the Notice is also designed to reach all Class members. *See Mullane*, 339 U.S. at 315 (Holding that a "fundamental requirement of due process [is]… to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (citation omitted). With the Court's approval, the Class Notice will be sent by electronic mail (if available) or first-class mail to the Settlement Class Members. Settlement Agmt. § 2.1.3. The Settlement Administrator shall update mail addresses through the National Change

of Address database before mailing (with all returned and mail skip-traced and promptly re-mailed) *Id.* In addition, the Settlement Agreement, Class Notice, the Complaint, and various other documents from the case will be published on the Settlement Website. Settlement Agmt. § 2.1.3. Thus, the proposed notice plan will fairly apprise Class Members of the Settlement Agreement and their options with respect thereto, and therefore fully satisfy due process requirements. *See Newberg on Class Actions*, Vol. 3, §§ 8:12, 8:15, 8:28, 8:33, 8:34 (5th ed. 2014).

## VII.   PROPOSED SCHEDULE

The following schedule that the Parties propose for final approval of the Settlement is based on the need to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711–15.

The Defendants will, within the time requirements of CAFA, send CAFA notices as required to state attorneys general as well as to the United States Secretary of the Treasury and Secretary of Labor.

The Settlement requires that notice be given to Class members after the Court enters a Preliminary Approval Order. Any Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline. All written objections must be filed with the Clerk of Court at least 30

calendar days prior to the schedule Final Approval Hearing. Accordingly, the Parties propose that the Fairness Hearing be scheduled at least 110 days after the issuance of the Preliminary Approval Order, with Plaintiffs' motions for final approval and for the award of attorneys' fees and expenses due sixty (60) days prior to the Fairness Hearing, objections due 30 days before the Fairness Hearing, and responses to objections due five (5) days before the Fairness Hearing. The Parties propose that the Fairness Hearing occur as soon after the 110th day from entry of the Preliminary Approval Order as the Court can accommodate. Below is the proposed schedule in chart form.

Plaintiffs and Defendants agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| Preliminary Approval Hearing | TBD |
| Settlement Administrator creates Settlement website | Within 30 days of the entry of the Preliminary Approval Order |
| Settlement Administrator creates Settlement Information Line | Within 30 days of the entry of the Preliminary Approval Order |
| Mail Settlement Notice | Within 30 days of the entry of the Preliminary Approval Order |
| Settlement Administrator's declaration on notice | Five days after Notice deadline |
| Plaintiffs' motion for final approval of the Settlement, an award of attorneys' fees and expenses | At least sixty days before the Fairness Hearing |
| Objections to the Settlement and notice of the intention to appear at Fairness Hearing | 30 days before the Fairness Hearing |
| Independent Fiduciary report (if hired) | 30 days before Fairness Hearing |

| Event | Timing |
|-------|--------|
| Response to objections | 5 days before Fairness Hearing |
| Fairness Hearing | At least 110 days after Preliminary Approval Order |

## VIII. CONCLUSION

For the reasons set forth above, the Settlement meets the standard for preliminary approval under Rule 23. Accordingly, Plaintiffs seek an Order: (1) certifying the Settlement Class for settlement purposes and appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel (2) preliminary approving the Settlement under FED. R. CIV. P. 23(e); (3) approving the manner of notifying the Class of the Settlement; (4) appointing Simpluris as the Settlement Administrator; and (5) setting a date for a Fairness Hearing.

October 17, 2025                  By:  */s/Gregory Y. Porter*
                                 Gregory Y. Porter (*pro hac vice*)
                                 Ryan T. Jenny (*pro hac vice*)
                                 Laura E. Babiak (*pro hac vice*)
                                 **BAILEY & GLASSER LLP**
                                 1055 Thomas Jefferson St., NW, Suite 540
                                 Washington, DC 20007
                                 (202) 463-2101
                                 gporter@baileyglasser.com
                                 rjenny@baileyglasser.com
                                 lbabiak@baileyglasser.com

                                 Mark G. Boyko (*pro hac vice*)
                                 **BAILEY & GLASSER LLP**
                                 34 N. Gore Ave., Suite 102
                                 Webster Groves, Mo 63119
                                 (314) 863-5446
                                 mboyko@baileyglasser.com

27

James M. Evangelista (GA Bar No. 707807)
**EVANGELISTA WORLEY, LLC**
10 Glenlake Parkway, Suite 130
Atlanta, GA 30350
(404) 205-8400
jim@ewlawllc.com

*Attorneys for Plaintiffs Phyllis Michele*
*Howell, Simon Reisert, and Carole Speight*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 17, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Gregory Y. Porter*
Gregory Y. Porter