**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| **PHYLLIS MICHELE HOWELL, SIMON REISERT, and CAROLE SPEIGHT, on behalf of The North Highland Company Employee Stock Ownership and 401(k) Plan, and on behalf of a class of all other persons similarly situated,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**ARGENT TRUST COMPANY, NORTH HIGHLAND ESOP HOLDINGS, INC., NORTH HIGHLAND COMPANY, INC., THE NORTH HIGHLAND HOLDING CO., LLC, DAN REARDON, ALEX BOMBECK, BETH SCHIAVO, and LAUREN CHILDERS,**<br><br>**Defendants.** | **Civil Action No. 1:22-cv-3959-SDG** |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........ 1

II. LITIGATION HISTORY ........ 3

III. THE SETTLEMENT AGREEMENT ........ 4

A. The Settlement Fund ........ 4

B. Released Claims ........ 4

C. Notice and Administration ........ 5

D. Attorneys' Fees and Costs ........ 8

E. Review by Independent Fiduciary ........ 8

IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED ........ 9

A. Class representatives and Class Counsel have adequately represented the Settlement Class. ........ 11

B. The Settlement was negotiated at arm's length. ........ 13

C. The Complexity, Expense, and Likely Duration of Litigation Favor Settlement. ........ 15

D. The Stage of Proceedings and Amount of Discovery Completed Weigh in Favor of Settlement. ........ 17

E. The Risks of Establishing Liability, Damages, and Likelihood of Success at Trial Support Settlement. ........ 18

F. **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Risks of Litigation Support Settlement.** .............. 19

G. **The Method of Distributing Relief to the Class is Effective.** ........................... 20

H. **The Terms of the Proposed Award of Attorneys' Fees are Reasonable.** ....... 21

I. **The Settlement Proposal Treats Class Members Equitably.** .......................... 22

J. **The Substance and Amount of Opposition to the Settlement Favor Settlement.** .......................................................................................... 22

K. **Agreements Made in Connection with the Settlement.** .................................. 23

V. **THE CLASS IS APPROPRIATELY CERTIFIED FOR SETTLEMENT PURPOSES** .......................................................................................... 23

VI. **CONCLUSION** .......................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ... 19

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) ... 14, 19

*Bekker v. Neuberger Berman Group 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020) ... 12

*Bennett v. Behring Corp.*
737 F.2d 982, 986 (11th Cir. 1984) ... 10, 11

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ... 15

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ... 18, 19

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983), *cert denied*, 467 U.S. 1251 (1984) ... 15

*Henderson v. Emory Univ.*,
No. 16-2920, 2020 WL 9848978 (N.D. Ga. Nov. 4, 2020) ... 21

*Krueger v. Ameriprise*,
No. 11-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ... 16, 21

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ... 18, 19

*Marcrum v. Hobby Lobby Stores, Inc.*,
2021 WL 3710133 (N.D. Ala. Aug. 20, 2021) ... 17, 22

*Morgan v. Pub. Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) ... 13

*Newbridge Networks Sec. Litig.*,
No. 94-1678, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ... 20

*Pettway v. R.L. Zigler Co.*,
2024 WL 4683657 (N.D. Ala. Nov. 5, 2024) ... 7, 9

*Pettway v. R. L. Zigler Co.*,
No. 7:23-47, 2024 WL 3656750 (N.D. Ala. Aug. 2, 2024) .......... 11, 13

*Ponzio v. Pinon*,
87 F.4th 487 (11th Cir. 2023) .......... 10, 11

*Satchell v. Fed. Express Corp.*,
No. 03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......... 14

*Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*,
2024 WL 4003330 (N.D. Ala. Jan. 17, 2024) .......... 21

*In re Smith*,
926 F.2d 1027 (11th Cir. 1991) .......... 14

*Strube v. Am. Equity Inv. Life Ins. Co.*
226 F.R.D. 688, 703 (M.D. Fla. 2005) .......... 14

*Tibble v. Edison Int'l*,
No. 07-5359, 2017 WL 3523727 (C.D. Cal. Aug. 16, 2017) .......... 16

*Tussey v. ABB, Inc.*,
No. 06-4305, 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) .......... 16

Twigg *v. Sears, Roebuck & Co.*,
153 F.3d 1222 (11th Cir. 1998) .......... 7

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) .......... 11

*White v. Chevron Corp.*,
No. 16-793, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, No. 17-16208, 2018 WL 5919670 (9th Cir. Nov. 13, 2018) .......... 15

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715 .......... 5

**Other Authorities**

68 Fed. Reg. 75,632 (Dec. 31, 2003) .......... 8

75 Fed. Reg. 33,830 (June 15, 2010) .......... 8, 9

Fed. R. Civ. P. 23(a) .......... 23

Fed. R. Civ. P. 23(a)(1) .......... 24

Fed. R. Civ. P. 23(b)(1) .......... 23

Fed. R. Civ. P. 23(b)(1)(A) ....24

Fed. R. Civ. P. 23(b)(1)(B) ....24

Fed. R. Civ. P. 23(C)(i) ....15, 18

Fed. R. Civ. P. 23(c)(2)(B) ....7

Fed. R. Civ. P. 23(e) ....2, 9

Fed. R. Civ. P. 23(e)(1)(B) ....6

Fed. R. Civ. P. 23(e)(2) .... *passim*

Fed. R. Civ. P. 23(e)(2)(A) ....13

Fed. R. Civ. P. 23(e)(2)(B) ....13, 14

Fed. R. Civ. P. 23(e)(2)(C)(i) ....19

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....19

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....20

Fed. R. Civ. P. 23(e)(2)(C)(iii) ....19

Fed. R. Civ. P. 23(e)(2)(C)(iii) ....21

Fed. R. Civ. P. 23(e)(2)(C)(iv) ....19

Fed. R. Civ. P. 23(e)(2)(D) ....22

Fed. R. Civ. P. 23(e)(3) ....10, 23

Fed. R. Civ. P. 23e(2)(A) ....11

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Phyllis Michele Howell, Simon Reisert, and Carole Speight ("Plaintiffs"), individually and on behalf of a class of participants in The North Highland Company Employee Stock Ownership Plan (formerly known as The North Highland Company Employee Stock Ownership and 401((k) Plan) (the "Plan"), request that the Court certify the Settlement Class and grant final approval of the class action settlement agreement between Plaintiffs and Defendants Argent Trust Company; North Highland ESOP Holdings, Inc.; The North Highland Company, Inc.; The North Highland Company LLC; The North Highland Holding Co., LLC; Dan Reardon; Alex Bombeck; Beth Schiavo, and Lauren Childers ("Defendants" and together with Plaintiffs, the "Parties").[1]

## I. INTRODUCTION

Regarding the Plan, Plaintiffs alleged breaches of fiduciary duty and prohibited transactions with respect to a 2016 reorganization transaction, a 2021 redemption transaction, and the dilution of the ESOP's ownership interest in the enterprise in the period between those transactions. On September 30, 2024, the Court dismissed all claims related to the 2016 reorganization as being time-barred. Dkt. 90. The Court's Order also denied Defendants' motion to compel arbitration on

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

the remaining claims, which Defendants have appealed. During the pendency of that appeal, the parties conducted a full-day mediation with JAMS Mediator Stephen Lucke. While a settlement was not reached during that mediation, subsequent negotiations led to the Settlement Agreement, attached to Plaintiffs' Unopposed Motion and Incorporated Memorandum of Law for Preliminary Approval of Settlement ("Preliminary Approval Motion") as Exhibit A, Dkt. 97-1.

The parties engaged in over a year of litigation, including the motion to dismiss and compel arbitration, and the completion of an administrative claims process, which included production of relevant documents by Defendants. Plaintiffs retained experts who reviewed the provided documentation including, most importantly, the valuations performed on North Highland as part of the 2016 and 2021 transactions.

The parties have agreed to resolve the Lawsuit for the sum total of two million three hundred seventy-five thousand dollars ($2,375,000) (the "Class Settlement Amount"). The Settlement is a fair, reasonable, and adequate resolution of the proposed Settlement Class's claims and should be preliminarily approved under Rule 23(e). The Settlement Class should be certified for settlement purposes only. The Settlement eliminates the numerous and substantial risks, expenses, and potential delays that would lay ahead if Plaintiffs continued to prosecute this case. The Settlement, negotiated at arms-length by experienced counsel on both sides and

with the help of an experienced mediator, is an excellent result and in the Settlement Class Members' best interest.

## II. LITIGATION HISTORY

The litigation history spans over three years. Plaintiffs filed their original Complaint on September 30, 2022. Dkt. 1. Plaintiffs moved to stay the action while they exhausted administrative remedies under the Plan, and Defendants argued in response that the stay should be denied and the Complaint dismissed because Plaintiffs did not exhaust administrative remedies before it was filed. On September 27, 2023, Plaintiffs filed an Amended Complaint as of right, primarily to add factual allegations regarding the exhaustion of administrative remedies. Defendants moved to dismiss counts concerning the 2016 Recapitalization of North Highland as being untimely, arguing that neither the Original nor Amended Complaint alleged timely pre-suit exhaustion of administrative remedies. Defendants also moved to compel arbitration. The District Court ruled that the arbitration clause was not enforceable because its prohibition on recovery of statutorily authorized remedies violates the effective vindication doctrine. However, the District Court also held that the 2016 Recapitalization claims were time-barred because of the failure to exhaust administrative remedies prior to the filing of the Original Complaint. Defendants appealed the decision with respect to arbitration.

## III. THE SETTLEMENT AGREEMENT

The Settlement resolves all claims of the proposed Class—all participants who held vested shares in the Plan from October 1, 2016, to May 30, 2025, excluding the individual Defendants and their immediate families. Settlement Agmt. ¶ 2.1.2. The proposed Class is substantively identical to the definition found in Paragraph 368 of the Complaint (Dkt. 1), except that the Settlement Class has a defined end-date.

### A. The Settlement Fund

As provided for in the Settlement Agreement, the North Highland Defendants have already begun funding the Settlement Fund, and will deposit the remainder of the $2,375,000 Settlement Amount following the entry of the Final Approval Order. Settlement Agmt. *Id.* ¶¶ 7.2.3; 7.2.4. The Settlement Fund will be used to pay compensation to Class Members; all Attorneys' Fees and Expenses approved by the Court; Administrative Costs; and Taxes and Tax-Related Costs. *Id.* ¶ 7.2.5. The Settlement Fund will be distributed to Class Members in accordance with the Plan of Allocation. *Id.* ¶ 8.2. The proposed Plan of Allocation is attached as Exhibit E to the Settlement Agreement.

### B. Released Claims

Under the Settlement Agreement, the "Released Claims" are those claims against the Released Parties that (1) arise out of, relate to, or are based on the

allegations, facts, matters, claims, causes of action, occurrences, or omissions before, up to, and including the Agreement Execution Date and that are set forth in Plaintiffs' Complaint; (2) would be barred by principles of *res judicata* had the claims asserted in the Action been fully litigated and resulted in a final judgment or order; or (3) pertain to any conduct related to the direction to calculate, the calculation of, and/or the method or manner of allocation or distribution of amounts from the Qualified Settlement Fund Account to Plaintiffs, the Settlement Class, or the Plan pursuant to the Plan of Allocation. *Id.* § III.

The scope of the release does not include any claims to enforce the Settlement Agreement or claims for individual benefits under the Plan unrelated to this Settlement. *Id.* ¶¶ 3.4; 3.1(iv).

The Complaint alleges breaches of ERISA's duties of prudence and loyalty and violations of ERISA's prohibited transaction provisions with respect to the 2016 and 2021 Transactions and the dilution of the ESOP's ownership interest during the interim period. Thus, the release is tied to the claims in the Complaint. Plaintiffs are not aware of any other cases that will be affected by the Settlement.

### C. Notice and Administration

The Notice of Settlement plan approved by the Court was implemented by the Parties and Settlement Administrator, Simpluris. Specifically, on October 27, 2025, Defendants issued notices required by the Class Action Fairness Act of 2005, 28

U.S.C. §§ 1711-1715 ("CAFA"). *See* Decl. of Mark Boyko ¶ 15 ("Boyko Decl."), attached hereto as Exhibit 1. On August 31, 2026, Simpluris caused to be mailed 3,543 Notices of Proposed Class Action Settlement to Settlement Class Members and posted the Class Notice on the website established for case documents. Decl. of Jessica Delgado ¶ 5 ("Simpluris Decl."), attached hereto as Exhibit 2. The Class Notice was clear and straightforward, was approved by the Court on June 29, 2026 (Dkt. 102), and provided Settlement Class Members with enough information to inform them about the nature of the Class Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. Only 15 Class Notices are currently undeliverable. *Id.* ¶ 6. On August 31, 2026, Simpluris made available a website for case documents, key dates and information, and links to rollover request forms. *Id.* ¶ 7. The website address was printed on all Class notices. *Id.* at Ex. A. Simpluris also made available and hosted a toll-free telephone number for Settlement Class Members to make inquiries regarding the Settlement. *Id.* ¶ 8. Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses and this Motion has also been posted on the settlement website. *Id.* ¶ 7.

When a class is certified for purposes of settlement, direct notice must be provided to all class members who will be bound by the proposal. Fed. R. Civ. P. 23(e)(1)(B). The rule requires the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable

effort. Fed. R. Civ. P. 23(c)(2)(B). To meet due process standards, courts in this Circuit look "solely to the language of the notices and the manner of their distribution and must include: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B); T*wigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998). As detailed above, the Class Notice reached at least 99.5% of Settlement Class Members.[2] As long as a vast majority of Class Members receive notice and the parties took reasonable steps to afford class notice, as occurred here, the notice requirement is satisfied. *See Pettway v. R.L. Zigler Co.*, 2024 WL 4683657, at *3 (N.D. Ala. Nov. 5, 2024).

If the Court grants final approval of the Settlement, Simpluris shall also implement the Plan of Allocation, including effectuating rollover requests by Settlement Class Members and mailing checks to other Settlement Class Members. Simpluris shall also be responsible for establishing and maintaining a Qualified Settlement Fund Account to hold the Gross Settlement Amount. Simpluris' fees and

---

[2] That figure is based on the number of unreturned notices. Even if mailed notices did not reach Settlement Class Members, they may have accessed the notice on the publicly available website.

expenses are expected to be approximately $38,430.00 through the end of the settlement process. Simpluris Decl. ¶ 11.

**D. Attorneys' Fees and Costs**

Subject to Court approval, Plaintiffs' Counsel's fees, costs and expenses, shall be paid from the Settlement Amount. Settlement Agmt. ¶ 10.1. On August 24, 2026, Plaintiffs filed their Motion for Award of Attorneys' Fees and Reimbursement of Expenses. Dkt. 103. Plaintiffs moved to approve attorneys' fees of $791,666 (one-third of the monetary recover) and expenses of $17,436.75. *Id.* That amount is consistent with the terms of the Settlement Agreement, which provided that Plaintiffs' Counsel would petition to the Court for an award of attorneys' fees not to exceed $791,666 plus litigation expenses. Settlement Agmt. ¶ 10.1.

**E. Review by Independent Fiduciary**

The Settlement is contingent upon approval by an Independent Fiduciary in accordance with the Prohibited Transaction Exemption 2003-39 promulgated by the Department of Labor. Settlement Agmt. ¶ 2.3; *see also* 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended, 75 Fed. Reg. 33,830 (June 15, 2010) ("PTE 2003-39"). PTE 2003-39 applies to ERISA settlements that release claims brought on behalf of an ERISA plan and requires that an independent fiduciary evaluate the settlement terms and determine that they are "reasonable in light of the Plan's likelihood of full

recovery, the risks and costs of litigation, and the value of claims forgone." PTE 2003-39 at 33,836.

Defendants selected and retained an Independent Fiduciary, Fiduciary Counselors, Inc. (a selection Plaintiffs approved), to evaluate the reasonableness of the Settlement. The Independent Fiduciary submitted its Report summarizing its conclusions on October 15, 2026. The report is attached as Exhibit 3. In the Report, the Independent Fiduciary determined, among other things, that "The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award and other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of the claims forgone." Ex. 3 at 1.

The North Highland Defendants, on behalf of themselves and all Defendants, paid the cost of the Independent Fiduciary. *See* Settlement Agmt. § 2.3.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

Rule 23(e) provides that class actions cannot be settled without court approval. To be approved, a settlement must be fair, reasonable, and adequate. Rule 23(e)(2); *Pettway*, 2024 WL 4683657, at *3. The 2018 Amendments to Rule 23 provide direction to courts considering whether to approve such a settlement. Rule 23(e)(2) provides that the court should consider whether:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendments, the Eleventh Circuit traditionally evaluated class action settlements using the six factors outlined in *Bennett v. Behring Corp.* ("*Bennett* factors"):

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

737 F.2d 982, 986 (11th Cir. 1984); *see also Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023). The Eleventh Circuit has noted that the *Bennett* factors complement

the "four core concerns set out in Rule 23(e)(2)." *Ponzio*, 87 F.4th at 495. In light of this, in addition to the Rule 23(e)(2) factors, Plaintiffs will address each of the *Bennett* factors to the extent they are applicable, many of which overlap. In evaluating these factors, there is a strong presumption favoring the settlement of class actions. *Pettway v. R. L. Zigler Co.*, No. 7:23-47, 2024 WL 3656750, at *6 (N.D. Ala. Aug. 2, 2024) (citation omitted). Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). As the court in *In re U.S. Oil & Gas Litig.* noted, "[c]omplex litigation — like the instant [class action] case — can occupy a court's docked for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements…" 967 F.2d 489, 493 (11th Cir. 1992).

**A. Class representatives and Class Counsel have adequately represented the Settlement Class.**

Rule 23e(2)(A), requiring adequate representation by the Plaintiffs and their Counsel was addressed in Section V(A) of Plaintiffs' Preliminary Approval Motion. Dkt. 97 at 16–18. In sum, both Plaintiffs and Plaintiffs' Counsel have effectively and diligently served the Settlement Class. As discussed above, Class Counsel and the

class representatives have pursued this litigation for over a year, through diligent research, motion to dismiss briefing, and an administrative claims process that included production of relevant documents by Defendants. Class Counsel have specialized expertise in ESOP litigation and carefully considered whether and when to engage in settlement conversations in order to secure the maximum recovery for the Class. *See, e.g.*, *Bekker v. Neuberger Berman Group 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 277 (S.D.N.Y. 2020) ("Gregory Y. Porter… and Mark G. Boyko each have extensive experience at the forefront of this area of law. As the result of this case indicates, Class Counsel were able to leverage their expertise and experience with similar matters to achieve a positive, lasting, and meaningful benefit to the Class in this complex case.").

Plaintiffs are exemplary representatives. They have been actively engaged in the litigation since its inception, including by providing documents to counsel used to draft the Complaint and discussing the case and mediation with counsel. Boyko Decl. ¶ 14. If Plaintiffs had not been willing to act as class representatives, there would be no settlement benefits at all for the Class. They have no known conflicts. *Id.* They assert claims on the Plan's behalf and request no individual relief.

As described in the Preliminary Approval Motion at 17–18, the Settlement does not unduly favor the Plaintiffs, does not excessively compensate Class Counsel,

and does not revert to the Defendants. Therefore, the adequacy requirement of Rule 23(e)(2)(A) is met.

**B. The Settlement was negotiated at arm's length.**

Among the criteria for preliminary approval is that the settlement proposal be negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Pettway*, 2024 WL 3656750, at *7 (quoting *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)). "Moreover, the assistance of an experienced mediator in the settlement process confirms that the settlement is noncollusive." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) (internal quotation omitted).

Here, prior to discussing settlement, and as part of the Plan's administrative process, Plaintiffs requested core documents from Defendants, and Defendants produced those documents to Plaintiffs. This included the materials used to find and support the valuation of the ESOP's shares during the transactions. Following Plaintiffs' review, and the review of Plaintiffs' experts, counsel for Plaintiffs and Defendants arranged for mediation with a JAMS mediator with extensive ERISA experience, Stephen P. Lucke, Esq.

Class Counsel was fully aware of this case's strengths and weaknesses when negotiating the Settlement, which supports the Settlement's preliminary approval.

Class Counsel also has in-depth knowledge of the legal framework applicable to this case. Class Counsel have decades of experience prosecuting, settling, and trying ERISA cases on behalf of retirement plan participants, which they used to evaluate and negotiate the Settlement. *See* Boyko Decl. at ¶¶ 10. The Court is entitled to rely on the judgment of counsel, and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); accord *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991). It is Class Counsel's opinion that the proposed Settlement is fair and reasonable, a factor which supports the Settlement's approval. As the court held in *Strube v. Am. Equity Inv. Life Ins. Co.*, "[class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." 226 F.R.D. 688, 703 (M.D. Fla. 2005). Because the Settlement was negotiated by experienced counsel with the aid of a mediator, there is a presumption that it was the product of arm's length negotiations. *Satchell v. Fed. Express Corp.*, No. 03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Because the proposed Settlement is the result of good faith, arms-length negotiations by well-informed and experienced counsel, Rule 23(e)(2)(B) is satisfied.

### C. The Complexity, Expense, and Likely Duration of Litigation Favor Settlement.

Addressing the fourth *Bennett* factor (complexity, expense, and duration of litigation), as well as Rule 23(e)(2)(C)(i) (the costs, risks, and delay of trial and an appeal), the Parties have different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. Plaintiffs' core allegations rest on facts that are strongly contested by Defendants. Despite Plaintiffs' confidence in their case, they face significant hurdles in proving their claims. While "[a] good heart and an empty head are not enough" for defendants to avoid liability (*Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983), *cert denied*, 467 U.S. 1251 (1984)), breach of fiduciary duty claims under ERISA depend heavily on the process by which decisions were made rather than the results of those decisions. *See White v. Chevron Corp.*, No. 16-793, 2017 WL 2352137, at *4 (N.D. Cal. May 31, 2017), *aff'd*, No. 17-16208, 2018 WL 5919670 (9th Cir. Nov. 13, 2018) (finding the "prudence analysis focuses a fiduciary's 'conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.'"); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

Here, the litigation would be lengthy and expensive if this Action were to proceed further. Plaintiffs faced significant risks. Plaintiffs and Defendants had

vastly different views about Defendants' actions, their potential liability, and the likely outcome of the litigation.

These fact intensive inquiries likely would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day. Before the Parties reached trial, they would have to expend substantial time and effort to brief class certification, brief summary judgment motions, prepare the joint pretrial exhibit list, and litigate any motions in limine. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolutions and causing more expense.

Courts have repeatedly recognized that ERISA cases "often lead [] to lengthy litigation." *Krueger v. Ameriprise*, No. 11-2781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). It is not unusual for ERISA cases to last for a decade or longer. *See, e.g.*, *Tussey v. ABB, Inc.*, No. 06-4305, 2017 WL 6343803, at 3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed); *Tibble v. Edison Int'l,* No. 07-5359, 2017 WL 3523727, at *15 (C.D. Cal. Aug. 16, 2017) (outlining issues for trial in a case filed in 2007). The potential for protracted litigation supports the Settlement's approval.

A certain recovery for the class now far outweighs the mere possibility of future relief after years of costly litigation. Considering the costs, risks, and delay of

trial and appeal, the immediate and certain recovery of $2,375,000 outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including summary judgment, trial, post-trial, and post-judgment briefing and appeals—for any judgment to be reduced to actual payments to Plan participants.

### D. The Stage of Proceedings and Amount of Discovery Completed Weigh in Favor of Settlement.

Regarding the sixth *Bennett* factor, the Parties are well informed about the facts of the case. As discussed above, the Parties engaged in over a year of litigation, including the motion to dismiss and compel arbitration, and the completion of an administrative claims process, which included production of relevant documents by Defendants. Plaintiffs retained experts who reviewed the provided documentation including, most importantly, the valuations performed on North Highland as part of the 2016 and 2021 transactions.

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Marcrum v. Hobby Lobby Stores, Inc.*, 2021 WL 3710133, at *4 (N.D. Ala. Aug. 20, 2021) (citation omitted). Here, Plaintiffs had sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation. The stage of proceedings allowed the Parties to fully and fairly assess the

allegations and strengths and weaknesses of their respective positions. The sixth *Bennett* factor supports approval of the Settlement.

### E. The Risks of Establishing Liability, Damages, and Likelihood of Success at Trial Support Settlement.

The first *Bennett* factor and Rule 23(e)(2)(C)(i), account for the risks of establishing liability, establishing damages, and being successful at trial. "The likelihood of success on the merits is weighted against the amount and form of relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). "The Court, however, has neither the duty nor the right to reach any ultimate conclusions on the issues of fact or law which underlie the merits of the dispute." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993).

Here, Plaintiffs faced significant risks. As discussed above in Section IV(C), the Parties have different views about the likely outcome of litigation. Defendants contend that the Plan and its participants were not harmed at all. Plaintiffs, on the other hand, contend that the Plan incurred significant financial loss. That core dispute had not been resolved at the time the Parties reached the Settlement, and the uncertainty put all Parties at great risk. Further, counsel for the Parties, having litigated similar issues extensively in the past (see, e.g., Boyko Decl. ¶ 10), were fully aware of these risks and the possible outcomes, and the Parties were able to reach a settlement that balanced those risks.

### F. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Risks of Litigation Support Settlement.

The second and third *Bennett* factors and Rule 23(e)(2)(C)(i)-(iv) assess the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. The range of possible recovery "spans from a finding of non-liability through varying levels of injunctive relief." *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002). Courts analyze "the range of possible damages that could be recovered at trial and then combine this assessment with plaintiffs' likelihood of prevailing at trial and other relevant factors to determine whether the settlement falls at a point in the range that is fair to the class." *In re Domestic*, 148 F.R.D. at 319. "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality. Moreover, the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323; *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

Here, the Settlement features a monetary payment of $2,375,000. This relief is approximately eight percent of the dilution claim, the most valuable remaining claim following the Court's dismissal of Plaintiffs' claims related to the 2016 Transaction. Boyko Decl. ¶ 11. This percentage, in and of itself, is reasonable and

warrants preliminary approval. *See, e.g.*, *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"). The sixth *Bennett* factor supports approval of the Settlement.

**G. The Method of Distributing Relief to the Class is Effective.**

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing any class member claims. Here, per the Settlement Agreement, no Class Member will be required to do anything to receive a monetary payment from the Settlement. The Plan maintains detailed records of its former participants, which enabled the Settlement Administrator to deliver notices with reasonable confidence and provides that distributions will be being sent to the correct people and the correct addresses. If a participant does not select a rollover of their settlement payment, the participant will automatically receive a check at their last known address. Any portion of the settlement fund that cannot be distributed will be distributed in a *cy pres* payment as determined by Class Counsel with consent of Defense Counsel. No funds will revert to Defendants. Additionally, distributions will be done in a way that minimizes or defers tax consequences, thus adding additional value to the Class.

**H. The Terms of the Proposed Award of Attorneys' Fees are Reasonable.**

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As discussed above and in Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses, Plaintiffs request $791,666 (33% of the value of the cash payment) for attorneys' fees and $17,436.75 in expenses. That amount is consistent with the terms of the Settlement Agreement, which provided that Plaintiffs' Counsel would petition to the Court for an award of attorneys' fees not to exceed $791,666 plus litigation expenses. Settlement Agmt. ¶ 10.1. Plaintiffs' Counsel spent approximately 941.9 hours litigating this case, resulting in a combined lodestar of $1,004,573.50, based on current billing rates. Boyko Decl. ¶ 13. Moreover, a percentage of the Fund is the normal method by which high-stakes ERISA class litigation is funded, and 33% is a reasonable percentage. *See Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*, 2024 WL 4003330, at *1 (N.D. Ala. Jan. 17, 2024) (noting that "the majority of common fund fee awards fall between 20% to 30% of the fund" and awarding 33% of the settlement amount); *Henderson v. Emory Univ.*, No. 16-2920, 2020 WL 9848978, at *2 (N.D. Ga. Nov. 4, 2020) (approving fee award of one third of an ERISA class settlement); *Krueger v. Ameriprise*, No. 11-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (In "ERISA class actions asserting breaches of fiduciary duties…courts have consistently awarded one-third contingent fees").

The Settlement Class has been notified of the maximum amount of fees that could be requested and have had, and will have, the opportunity to object to the fee application. Simpluris Decl. ¶ 9. As the date of this filing, one objection to the Settlement has been received, which Plaintiffs will respond to in a separate filing. *Id.* ¶ 10; Boyko Decl. ¶ 16.

**I. The Settlement Proposal Treats Class Members Equitably.**

Under Rule 23(e)(2)(D), the court must consider whether the settlement proposal treats class members equitably relative to each other. As described above, the Settlement treats each class member equitably. Calculations under the Plan of Allocation are based on the number of shares each Class Member had during the period of time where the Class has viable claims, which is a fair proxy for both the ESOP's alleged dilution over time and the sale price of the 2021 Transaction. As a result, the proposed Settlement has no obvious deficiencies such as preferential treatment to a portion of the Class.

**J. The Substance and Amount of Opposition to the Settlement Favor Settlement.**

"In determining whether a proposed settlement is fair, reasonable, and adequate, the reaction of the class is an important factor." *Marcrum*, 2021 WL 3710133, at *4 (citation omitted). To date, there has been one objection, which the Independent Fiduciary reviewed and disagreed with. Ex. 3 at 3. Plaintiffs will address the objection and any additional objections received before the deadline in

a separate response. None of the other 5,516 Class Members have objected as of the date of this filing. No government entity notified under CAFA objected or sought to participate in the settlement. This lack of opposition "points to the reasonableness of [the] proposed settlement and supports its approval." *Id.* (citation omitted).

### K. Agreements Made in Connection with the Settlement.

Pursuant to Rule 23(e)(3), the Settlement Agreement represents the entire agreement between Plaintiffs and Defendants. Based on the factors above, the Settlement is plainly adequate.

## V. THE CLASS IS APPROPRIATELY CERTIFIED FOR SETTLEMENT PURPOSES

The Court preliminarily certified the Class for settlement purposes when it granted preliminary approval and approved the issuance of the Class Notice. Dkt. 102. For the reasons contained in the brief in support of preliminary approval (Dkt. 97 at 7–15), which have not changed, the Settlement Class meets all the requirements of Rule 23(a) and 23(b)(1).

The Settlement Class is sufficiently numerous because it encompasses approximately 3,543 Class Members.[3] It satisfies commonality because common

[3] Plaintiffs' Motion for Preliminary Approval stated the Plan's 5500 for 2020 indicated 1,566 participants. This number was used before Plaintiffs had access to Plan data. Plan data indicated 5,517 Plan Participants, but upon review there were only 3,543 Class Members as some Plan Participants did not have ESOP Shares, were duplicate accounts, or otherwise were excluded from the Settlement. Joinder of 3,543 members is also "impracticable" and well over the 40 members that courts

questions include, but are not limited to: (1) whether the Defendants are fiduciaries to the Plan; (2) whether the Defendants breached their fiduciary duties; (3) whether Defendants engaged in prohibited transactions with respect to the 2016 and 2021 Transactions; (4) whether the Defendants engaged in prohibited transactions or breaches of fiduciary duty with respect to the dilution of the ESOP's ownership interests between the transactions; (5) whether the Plan suffered losses; (6) how to calculate those losses; and (7) what relief is appropriate. Proof on each of these issues will be proof for the entire Class because the claims center on Defendants' fiduciary obligations to the Plan and on prohibited transactions involving the Plan, with relief incurring to the Plan. The Settlement Class satisfied typicality because Plaintiffs allege that class members have been subjected to the same alleged injury by the same course of conduct by Defendants, and seek to recover, for the Plan's benefit, all of the Plan's damages allegedly caused by such fiduciary misconduct to the Plan as a whole. Finally, Plaintiffs are adequate because they have been engaged in the litigation and have no conflicts with the class. The requirements of Rule 23(b)(1)(A) and (B) are met because prosecuting separate actions would create a risk of inconsistent adjudications, and an individual adjudication would apply to the Plan as a whole.

typically find adequate to meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

## VI. CONCLUSION

For the foregoing reasons, the Settlement Agreement should be finally approved. Plaintiffs respectfully ask the Court to: (1) grant final approval of the Settlement; (2) find that the Class Notice satisfied the requirements of due process and Rule 23; (3) find the Settlement to be fair, reasonable and adequate; (4) dismiss on the merits and with prejudice all claims asserted against Defendants; (5) retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement; (6) approve the awards of Plaintiffs' Counsel's Attorneys' Fees in the amount of $791,666 and Costs and Expenses in the amount of $17,436.75 as requested in their separately filed motion for attorneys' fees and expenses; and (7) approve the settlement administration expenses necessary to effectuate the Settlement. In support of this Motion, Plaintiffs respectfully submit a Proposed Final Approval Order and Judgment, attached as Exhibit 4.

Dated: October 22, 2026 Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Mark G. Boyko*
Mark G. Boyko (*pro hac vice*)
mboyko@baileyglasser.com
Bailey & Glasser LLP
34 N. Gore Ave., Suite 102
Webster Groves, Mo 63119
Telephone: (314) 863-5446
Facsimile: (314)-863-5483

Laura E. Babiak (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
Gregory Y. Porter (*pro hac vice*)
Patrick O. Muench (*pro hac vice*)
lbabiak@baileyglasser.com
rjenny@baileyglasser.com
gporter@baileyglasser.com
pmuench@baileyglasser.com
Bailey & Glasser LLP
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

**EVANGELISTA WORLEY, LLC**
James M. Evangelista (GA Bar No. 707807)
10 Glenlake Parkway
South Tower Ste 130
Atlanta, GA 30328
(404) 205-8400
jim@ewlawllc.com

**IZARD KINDALL & RAABE**
Robert A. Izard (*pro hac vice*)
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
E-mail: rizard@ikrlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date the foregoing document was electronically filed with the Clerk using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.

Dated: October 22, 2026

By: /s/ *Mark G. Boyko*
Mark G. Boyko