# EXHIBIT 3

FIDUCIARY COUNSELORS

# Report of the Independent Fiduciary for the Settlement in *Howell, et al. v. Argent Trust Company, et al.* Regarding the North Highland Company ESOP

October 15, 2026

700 12th Street NW Suite 700 Washington, DC 20005 202-558-5130 www.fiduciarycounselors.com

## TABLE OF CONTENTS


I. Introduction .......... 1

II. Executive Summary of Conclusions .......... 1

III. Procedure .......... 2

IV. Background .......... 2

V. Settlement .......... 3

VI. PTE 2003-39 Determination .......... 8

## I. Introduction

Fiduciary Counselors has been appointed as an independent fiduciary for The North Highland Company Employee Stock Ownership Plan (formerly known as The North Highland Company Employee Stock Ownership and 401(k) Plan) and any trust created under such Plan (the "Plan") in connection with the settlement (the "Settlement") reached in *Phyllis Michele Howell, Simon Reisert, and Carole Speight, on behalf of The North Highland Company Employee Stock Ownership and 401(k) Plan, and on behalf of a class of all other persons similarly situated v. Argent Trust Company, North Highland ESOP Holdings, Inc., The North Highland Company, Inc., The North Highland Company LLC, The North Highland Holding Co., LLC, Dan Reardon, Alex Bombeck, Beth Schiavo, And Lauren Childers*, Case No. 1:22-cv-03959-SDG (the "Litigation" or "Action"), which was brought in the United States District Court for the Northern District of Georgia (the "Court"). Fiduciary Counselors has reviewed over 150 previous settlements involving ERISA plans.

## II. Executive Summary of Conclusions

After a review of key pleadings, decisions and orders, selected other materials and interviews with counsel for the Plaintiffs and counsel for the Defendants, Fiduciary Counselors has determined that:

- The Court has preliminarily certified the Litigation as a class action for settlement purposes, and in any event, there is a genuine controversy involving the Plan.

- The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone.

- The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.

- The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

- The transaction is not described in Prohibited Transaction Exemption ("PTE") 76-1.

- All terms of the Settlement are specifically described in the written settlement agreement and the plan of allocation.

- The Plan is receiving no consideration other than cash in the Settlement.

Based on these determinations about the Settlement, Fiduciary Counselors hereby approves and authorizes the Settlement on behalf of the Plan in accordance with PTE 2003-39.

## III. Procedure

Fiduciary Counselors reviewed key documents, including the First Amended Complaint, the Motion to Dismiss and related papers, the Order Denying in Part and Granting in Part the Motion to Dismiss, the parties' mediation statements, the Settlement Agreement, the Motion for Preliminary Approval and related papers, the Court's Order Preliminarily Approving Settlement, the Plan of Allocation, the Notice and the Motion for Award of Attorneys' Fees and Reimbursement of Expenses and related papers. In order to help assess the strengths and weaknesses of the claims and defenses in the Litigation, as well as the process leading to the Settlement, the members of the Fiduciary Counselors Litigation Committee conducted separate telephone interviews with counsel for Defendants and counsel for Plaintiffs.

## IV. Background

### A. Procedural History of Case

***Litigation.***

Plaintiffs Phyllis Howell, Simon Reisert, and Carole Speight ("Plaintiffs") filed their original Complaint on September 30, 2022. Plaintiffs alleged breaches of fiduciary duty and prohibited transactions with respect to a 2016 reorganization transaction, a 2021 redemption transaction, and the dilution of the ESOP's ownership interest in the enterprise in the period between those transactions. Plaintiffs moved to stay the action while they exhausted administrative remedies under the Plan, and Defendants Argent Trust Company, North Highland ESOP Holdings, Inc., the North Highland Company, Inc., the North Highland Company LLC, the North Highland Holding Co., LLC, Dan Reardon, Alex Bombeck, Beth Schiavo, and Lauren Childers ("Defendants") argued in response that the stay should be denied and the Complaint dismissed because Plaintiffs did not exhaust administrative remedies before it was filed. On September 27, 2023, Plaintiffs filed an Amended Complaint as of right, primarily to add factual allegations regarding the exhaustion of administrative remedies. Defendants moved to dismiss counts concerning the 2016 Recapitalization of North Highland as being untimely, arguing that neither the Original nor Amended Complaint alleged timely pre-suit exhaustion of administrative remedies. Defendants also moved to compel arbitration. The Court ruled that the arbitration clause was not enforceable because its prohibition on recovery of statutorily authorized remedies violates the effective vindication doctrine. However, the District Court also held that the 2016 Recapitalization claims were time-barred because of the failure to exhaust administrative remedies prior to the filing of the original Complaint. Defendants appealed the decision with respect to arbitration.

***Settlement and Preliminary Approval.***

During the pendency of that appeal, the parties conducted a full-day mediation with JAMS Mediator Stephen Lucke on March 27, 2025. While a settlement was not reached during that mediation, subsequent negotiations led to the Settlement Agreement.

Plaintiffs filed a motion seeking preliminary approval of the Settlement on October 17, 2025. The Court granted Plaintiffs' motion on June 29, 2026. The Court's Order (1) preliminarily certified the class for settlement purposes; (2) approved the form and method of class notice; (3) set November 5, 2026 as the date for a Final Fairness Hearing; (4) approved October 6, 2026 as the deadline for objections; and (5) appointed Simpluris as Settlement Administrator.

***Objections.***

October 6, 2026 was the deadline for Class Members to file objections to the Settlement. One Class Member, Chad E. Carmichael, former Chairman of the 401(k)/ESOP Committee, filed an objection to both the amount of the settlement and the requested attorneys' fees. Mr. Carmichael detailed what he believes to be problems with the transactions involving the ESOP, as well as executive compensation arrangements, and issues he believes should be addressed further. We carefully considered his thoughtful, comprehensive objection, but we determined that it does not warrant rejection of the Settlement or reduction of the requested attorneys' fees. Many of his points parallel allegations and arguments by Plaintiffs, but he does not take into account the major limits and risks Plaintiffs' faced absent a settlement, including the impact of the dismissal of the 2016 Recapitalization claims, which removed Plaintiffs' strongest claims and complicated their case with respect to the other claims. For the reasons discussed in more detail in the second bullet of VI below, we disagree with his objection that the amount of the settlement is too low. For the reasons discussed in V.E below, we disagree with his objection to the requested attorneys' fees.

## V. Settlement

### A. Settlement Consideration

The Settlement provides for a Gross Settlement Amount of $2,375,000. After deducting from the Gross Settlement Amount (a) any attorneys' fees and costs awarded by the Court; and (b) all administrative expenses, the remainder (known as the "Net Settlement Amount") will be distributed to the Class Members in accordance with the Plan of Allocation.

### B. Class and Class Period

The Settlement defines the Settlement Class as follows:

> all participants in The North Highland Company Employee Stock Ownership Plan (formerly known as The North Highland Company Employee Stock Ownership and 401(k) Plan), and the beneficiaries of such participants, who held vested shares in the Plan in North Highland ESOP Holdings, Inc. at any time between October 1, 2016 and May 30, 2025. Excluded from the Class are the individual Defendants and their immediate families, and the legal representatives, successors, and assigns of any such excluded persons.

The Court has preliminarily certified the Settlement Class, for settlement purposes only.

## C. The Release

The Settlement defines Released Claims as follows:

> any and all Released Claims (as defined in Section 3.1 of the Settlement Agreement) and shall forever be enjoined from prosecution of any and all such Released Claims against the Released Parties. The Release in Section 3.1 is in addition to the effect of the Final Order to be entered in accordance with this Settlement Agreement. For purposes of this Settlement Agreement, "Released Claims" includes any and all present or past claims, demands, damages, losses, offsets, obligations, liabilities, warranties, costs, fees, fines, penalties, expenses, rights of action, suits, and causes of action of every kind and nature whatsoever, whether under federal, state, local, or foreign law; whether based on contract, statute, regulation, ordinance, common law, or another legal or equitable theory of recovery; whether known or unknown, suspected or unsuspected, existing or claimed, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, in law or in equity; that any of the Releasing Parties has against the Released Parties that:
>
> 1. arise out of, relate to, or are based on the allegations, facts, matters, claims, causes of action, occurrences, or omissions before, up to, and including the Agreement Execution Date and that are set forth in Plaintiffs' Complaint, including but not limited to:
>    a. breach of any duties or obligations (including fiduciary duties and obligations) under ERISA with respect to Plaintiffs, the Plan, the Settlement Class, or any other participants in and beneficiaries of the Plan;
>    b. providing misleading information to Plan participants or beneficiaries related to the ESOP;
>    c. failure to appoint, remove and/or adequately monitor the Plan's fiduciaries;
>    d. violation of ERISA duties related to the reorganization of The North Highland Holding Company, Inc.;
>    e. violation of ERISA duties related to the sale or redemption of Company stock to or by Plaintiffs, the Plan, or the Settlement Class;
>    f. violation of ERISA duties related to the receipt of LLC units of The North Highland Holding Company, LLC;
>    g. breach of ERISA duties in connection with the failure to avoid or resolve conflicts of interest in connection with The North Highland Holding Company, Inc., The North Highland Holding Company, LLC, North Highland ESOP Holdings Inc., or the Plan;
>    h. participation in a breach of fiduciary duty or ERISA prohibited transaction relating to The North Highland Holding Company, Inc.,

The North Highland Holding Company, LLC, North Highland ESOP Holdings Inc., or the Plan;

i. claims for injunctive or equitable relief relating to alleged violations of ERISA; or

j. claims concerning the use or allocation of preferred dividends owed to the Plan;

2. would be barred by principles of *res judicata* had the claims asserted in the Action been fully litigated and resulted in a final judgment or order; or

3. pertain to any conduct related to the direction to calculate, the calculation of, and/or the method or manner of allocation or distribution of amounts from the Qualified Settlement Fund Account to Plaintiffs, the Settlement Class, or the Plan pursuant to the Plan of Allocation.

4. Released Claims specifically excludes any claims for individual benefits under the Plan.

The Released Parties and the Releasing Parties intend and agree that the Releases shall be effective as a bar to the assertion of any and all Released Claims. The Released Parties and the Releasing Parties expressly waive any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction. Section 1542 reads in pertinent part:

> A general release does not extend to claims that the creditor or releasing party does not or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

The Releases are not intended to include the release of any rights or duties arising out of the Settlement Agreement, including the express representations, warranties, and covenants in the Settlement Agreement; provided, however, that the parties and their respective counsel shall have no responsibility or liability whatsoever with respect to the method and manner of allocation of the Qualified Settlement Fund Account, and Defendants and Defendants' Counsel shall have no liability whatsoever with respect to the distribution of the Class Settlement Amount.

The terms of the release, including the provision for the Independent Fiduciary to provide a release of claims by the Plan, are reasonable.

**D. The Plan of Allocation**

The Settlement Administrator shall obtain from Defendants the number of ESOP Shares held by each Plan account for each Settlement Class Member as of the last day of each year from 2016 to 2021. In addition, Defendants will provide the Plan account value for

each Settlement Class Member as of June 30, 2025. The Allocation of payments shall be in proportion to each Settlement Class Member's average year-ending number of shares over the period 2016–2021. Thus, for any year during that period in which a Settlement Class Member did not hold any ESOP Shares, the Settlement Class Member will receive a value of 0 for that period when calculating the Settlement Class Member's average year-ending shares.

The Net Settlement Amount will be allocated as follows:

1. Calculate each Settlement Class Member's proportion of the total year-ending shares of all Settlement Class Members.

2. Allocate to each Settlement Class Member a share of the Net Settlement Amount in proportion to that participant's proportion, where the numerator is the Settlement Class Member's proportion and the denominator is the Net Settlement Amount.

3. The award calculated as set forth in Section 2 above shall be known as a "Settlement Class Member's Entitlement Amount."

Settlement Class Members who are entitled to a distribution of less than $10.00 (combining all Plan accounts if they hold multiple accounts) will receive a distribution of $10.00. Settlement Class Members' awards falling below $10.00 will be increased to $10.00 from the Net Settlement Amount and the Net Settlement Amount will be re-allocated until the lowest participating Settlement Class Member's award is $10.00. This modified award shall be known as a "Settlement Class Member's Modified Entitlement Amount."

As provided in Section 8.4 of the Settlement, for each Rollover-Electing Class Member, the Settlement Administrator shall attempt to effect a rollover of the Class Member's Settlement Credit Amount to the individual retirement account or other eligible employer plan elected by each Rollover-Electing Class Member in their Rollover Form, if the conditions for such rollover are satisfied and adequate paperwork necessary to transfer such Settlement Credit Amount by rollover has been provided. If that is not feasible under criteria specified in Section 8.4, the Class Member will be treated as a Non-Rollover- Electing Class Member.

For each Non-Rollover-Electing Class Member, the Settlement Administrator shall distribute the Class Member's Settlement Credit Amount from the Qualified Settlement Fund by calculating and withholding any taxes required to be withheld and mailing a check for the remainder of the Settlement Credit Amount to the Settlement Class Member. Each check shall be sent to the mailing address determined, in the judgment of the Settlement Administrator, most likely to reach the Settlement Class Member.

The separate Plan of Allocation provides that Active Participants (as defined in the Settlement Agreement), will receive their distribution automatically into their Plan account, provided their Plan account remains open with a positive balance at the time of

distribution. It also provides that Former Participants (as defined in the Settlement Agreement) will receive their distribution in the form of a check made to them, unless they affirmatively opt to have their distribution directly rolled over into another tax-qualified account. Our understanding is that there are no Active Participants, and neither the Settlement nor the Notice describes distributions into Plan accounts. However, the Settlement, the Notice, and the separate Plan of Allocation all provide for rollovers, if practical, to Settlement Class Members who elect rollovers and payment by check to those who do not.

As soon as practicable following the voidance of all outstanding checks from the Initial Distribution, all remaining assets, following the payment of all outstanding costs, shall be distributed in a *cy pres* payment as determined by Class Counsel with consent of Defense Counsel. In no case shall such funds be paid to or for the benefit of any Defendant, or Class Counsel.

We find the Plan of Allocation to be reasonable, including:

1. The *pro rata* distribution of funds based on Class Members' year-end shares as described above;

2. The provision "Settlement Class Members who are entitled to a distribution of less than $10.00 (combining all Plan accounts if they hold multiple accounts) will receive a distribution of $10"; and

3. Distributions by way of rollovers or by check, depending on whether the Settlement Class Member has filed the appropriate form and paperwork for a rollover and the rollover is feasible.

The provisions are cost-effective and fair to Class Members in terms of both calculation and distribution.

**E. Attorneys' Fees, Litigation Expenses and Service Awards**

Class Counsel seek an award of attorneys' fees in the amount of $791,666, which represents one-third of the Settlement Amount of $2,375,000. As of August 24, 2026, the date Class Counsel filed their fee papers, Class Counsel's lodestar was $1,004,573.50, which would result in a lodestar multiplier of 0.79 if the requested $791,666 were awarded. In our experience, the percentage requested and the lodestar multiplier are within the range of attorney fee awards for similar ERISA cases, with the most common award in similar cases equaling one-third of the cash settlement amount. In light of the work performed, the result achieved, the litigation risk assumed by Class Counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable.

Class Counsel request reimbursement of $17,436.75 in litigation expenses, including travel ($6,047.57), delivery and other expenses ($5,782.50) and experts ($2,981.25). Fiduciary Counselors finds the request for expenses to be reasonable.

Class Counsel are not seeking Class Representative awards, which are not permitted in the Eleventh Circuit.

In sum, although the Court ultimately will decide what attorneys' fees and expenses to approve, we find that the requested amounts are reasonable under ERISA.

## VI. PTE 2003-39 Determination

As required by PTE 2003-39, Fiduciary Counselors has determined that:

- **The Court has preliminarily certified the Litigation as a class action for settlement purposes only.** Thus, the requirement of a determination by counsel regarding the existence of a genuine controversy does not apply. Nevertheless, we have determined that there is a genuine controversy involving the Plan. Based on the documents we reviewed and our call with counsel for Plaintiffs, we find that there is a genuine controversy involving the Plan within the meaning of the Department of Labor Class Exemption, which the Settlement will resolve.

- **The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone.** In the Action, the Class Representatives alleged that certain Defendants breached their fiduciary duties under ERISA in connection with transactions involving the Plan, including allegations that the Plan's stock in North Highland ESOP Holdings, Inc. was improperly diluted during, and for a period of time following, an October 2016 recapitalization. Defendants denied all claims and asserted that they have at all times acted prudently and in the best interests of the Plan's participants and beneficiaries.

  In the absence of a settlement, Plaintiffs would have faced significant risks. The Court had dismissed the 2016 Recapitalization claims, which arguably were their strongest claims. They would have faced arguments, among others, that none of the subsequent transactions involved ERISA fiduciary decisions or duties, that all transactions were at fair market value, that the 2021 redemption transaction was supported by the overwhelming vote of ESOP shares by participants who voted, and that the Named Plaintiffs lacked standing to assert claims with respect to the 2021 redemption transaction. They also faced a risk Defendants would prevail in the Eleventh Circuit and force individual arbitrations. Plaintiffs and Defendants had vastly different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. These fact intensive inquiries likely would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day. Before the parties reached trial, they would have to expend substantial time and effort to brief class certification, brief summary judgment motions, prepare the joint pretrial exhibit list, and litigate any motions *in limine*. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolutions and causing more expense.

As stated in the Boyko Declaration in Support of the Motion for Preliminary Approval, Plaintiffs calculated that the maximum damages from the dilution of the ESOP's equity interest and the 2021 Redemption Transaction was $38.0 million. The supporting memorandum states that the $2,375,000 Settlement Amount is approximately eight percent of the dilution claim, the most valuable remaining claim following the Court's dismissal of Plaintiffs' claims related to the 2016 Transaction. Plaintiffs also recognized that some or most of the dilution could have been legally justified, which is why the memorandum in support of attorneys' fees, filed later, says a "best day" recovery could potentially have exceeded $8 million.

Fiduciary Counselors finds that the $2,375,000 Settlement Amount is a fair and reasonable recovery given the potential recovery, the defenses the Defendants would have asserted, the risks involved in proceeding to trial, the possibility of reversal on appeal of any favorable judgment, and the additional costs and delay involved in continued litigation.

Fiduciary Counselors also finds the other terms of the Settlement to be reasonable, including the scope of the release, attorneys' expenses and the Plan of Allocation.

- **The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.** As indicated in the finding above, Fiduciary Counselors determined that Class Counsel obtained a favorable agreement from the Defendants in light of the challenges in proving the underlying claims. The agreement also was reached after arm's-length negotiations supervised by JAMS Mediator Stephen Lucke.

- **The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.** Fiduciary Counselors found no indication the Settlement is part of any broader agreement between the Defendants and the Plan.

- **The transaction is not described in PTE 76-1.** The Settlement did not relate to delinquent employer contributions to multiple employer plans and multiple employer collectively bargained plans, the subject of PTE 76-1.

- **All terms of the Settlement are specifically described in the written settlement agreement and the plan of allocation.**

- **The Plan is receiving no consideration other than cash in the Settlement.** Therefore, conditions in PTE 2003-39 relating to non-cash consideration and extensions of credit do not apply.

- **Acknowledgement of fiduciary status.** Fiduciary Counselors has acknowledged in its engagement letter that it is a fiduciary with respect to the settlement of the Litigation on behalf of the Plan.

- **Recordkeeping**. Fiduciary Counselors will keep records related to this decision and make them available for inspection by the Plan's participants and beneficiaries as required by PTE 2003-39.

- **Fiduciary Counselors' independence**. Fiduciary Counselors has no relationship to, or interest in, any of the parties involved in the litigation, other than the Plan, that might affect the exercise of our best judgment as a fiduciary.

Based on these determinations about the Settlement, Fiduciary Counselors (i) authorizes the Settlement in accordance with PTE 2003-39; and (ii) gives a release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan. Fiduciary Counselors also has determined not to object to any aspect of the Settlement.

Sincerely,

Stephen Caflisch

Stephen Caflisch
Senior Vice President & General Counsel